# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN GERICKE, Individually and on behalf of All Individuals similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>TRUIST D/B/A OR F/K/A BRANCH BANKING AND TRUST COMPANY and JOHN DOES 1-10,<br><br>    Defendants. | Civil Action No. 1:20-cv-03053<br><br>*Motion Returnable: August 17, 2020* |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TRUIST BANKS'S MOTION TO DISMISS

**REED SMITH LLP**
*Formed in the State of Delaware*
Diane A. Bettino, Esq.
David G. Murphy, Esq.
506 Carnegie Center – Suite 300
Princeton, New Jersey 08540
Tel. (609) 514-5947
Fax (609) 951-0824

*Attorneys for Defendant Truist Bank*
*(improperly named Truist d/b/a or f/k/a Branch Banking and Trust Company)*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................1

PROCEDURAL HISTORY AND STATEMENT OF FACTS ..............................2

LEGAL ARGUMENT.........................................................................5

I.     STANDARD OF REVIEW ON A MOTION TO DISMISS.........................5

II.    ISSUANCE OF AN IRS FORM 1099-C DOES NOT RESULT IN
OR REQUIRE THE SATISFACTION OF A JUDGMENT AS A
MATTER OF LAW...................................................................7

      A.    Truist Bank Issued The Form 1099-C In Compliance With
The IRS's 2018 Instructions..................................................9

      B.    The IRS's Removal Of The 36-Month Rule In 2016 Had No
Impact On The Issuance Of The Form 1099-C By Truist. ................12

      C.    The Form 1099-C Does Not Require Release Of The Lien
On Real Estate. ...............................................................15

      D.    The Form 1099-C Does Not Require Forgiveness Of The
Underlying Debt. ..............................................................17

III.    PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF
THE CONSUMER FRAUD ACT...................................................23

      A.    Plaintiff Has Not Pled The Existence of An Unlawful
Practice. .......................................................................24

      B.    Plaintiff Lacks Standing To Assert A CFA Claim Because
He Fails to Allege An Ascertainable Loss. .................................26

      C.    Plaintiff's CFA Claim Fails Because the Alleged
Wrongdoing Was Not Made in Connection with the Sale or
Advertisement of Merchandise. .............................................30

IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF
THE TRUTH IN CONSUMER CONTRACT WARRANTY AND
NOTICE ACT........................................................................32

A.      The Form 1099-C Is Not a "Covered Writing" Under
        TCCWNA..........................................................................................34

B.      The Form 1099-C Does Not Contain A Violation of a
        Clearly Established Right...............................................................35

C.      Plaintiff Is Not An Aggrieved Consumer Under TCCWNA. ............37

CONCLUSION ......................................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ALA, Inc. v. CCAIR, Inc.*,
   29 F.3d 855 (3d Cir. 1994) ...................................................................................6

*Amtrust Bank v. Fossett*,
   224 P.3d 935 (Ariz. Ct. App. 2009) .................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................5, 6

*Byers v. Intuit, Inc.*,
   600 F.3d 286 (3d Cir. 2010) ................................................................................5

*Cannon v. Ashburn Corp.*,
   No. 16-1452, 2016 WL 7130913 (D.N.J. Dec. 7, 2016) ...................................37

*Castro v. NYT Television*,
   370 N.J. Super. 282 (App. Div. 2004) ...............................................................31

*Cox v. Sears Roebuck & Co.*,
   138 N.J. 2 (1994) ...............................................................................................26

*In re Crosby*,
   261 B.R. 470 (Bankr. D. Kan. 2001) .................................................................22

*Debt Buyer's Ass'n v. Snow*,
   481 F. Supp. 2d 1 (D.D.C. 2006) ...............................................10, 21, 25, 29, 30

*Dugan v. TGI Fridays, Inc.*,
   231 N.J. 24 (2017) .........................................................................................33, 37

*Farrey v. Sanderfoot*,
   500 U. S. 291 (1991) ..........................................................................................15

*FDIC v. Cashion*,
   720 F.3d 169 (4th Cir. 2013) ...............................................................18, 19, 20

*Flathead Bank of Bigfork v. Masonry by Muller, Inc.*,
    383 P.3d 215 (Mont. 2016) ...................................................................20

*Franklin Credit Mgmt. Corp. v. Nicholas*,
    812 A.2d 51 (Conn. App. Ct. 2002) ....................................................22

*Friest v. Luxottica Grp. S.P.A.*,
    No. 2:16-cv-3327-SDW-LDW, 2016 WL 7668453 (D.N.J. Dec.
    16, 2016) ...............................................................................................37

*Gennari v. Weichert Co. Realtors*,
    148 N.J. 582 (1997) ..............................................................................31

*Gierbolini v. Banco Popular de Puerto Rico*,
    930 F. Supp. 712 (D.P.R. 1996), *aff'd*, 121 F.3d 695 (1st Cir.
    1997) ..........................................................................................9, 10, 28

*Gonzalez v. Wilshire Credit Corp.*,
    207 N.J. 557 (2011) .................................................................23, 31, 32

*Hassell v. United States*,
    203 F.R.D. 241 (N.D. Tex. 1999) .........................................................28

*Holt v. Davidson*,
    441 F. Supp. 2d 92 (D.D.C. 2006) ........................................................28

*Johnson v. Home State Bank*,
    501 U.S. 78 (1991) ................................................................................15

*Kawa v. Wakefern Food Corp. Shoprite Supermarkets, Inc.*,
    24 N.J. Tax. 444 (App. Div.), *certif. denied*, 200 N.J. 369 (2009)..............27, 28

*Ledin v. Wells Fargo Bank, N.A.*,
    No. 14-12347, 2015 WL 1569742 (Bankr. D. Kan. Mar. 31, 2015) .................16

*Lee v. Carter-Reed Co.*,
    203 N.J. 496 (2010) ..............................................................................23

*Levinson v. D'Alfonso & Stein*,
    320 N.J. Super. 312 (App. Div. 1999) .........................................23, 24

*Long v. Bullard*,
    117 U.S. 617 (1886).........................................................................15

*Owen v. Owen*,
    500 U. S. 305 (1991).........................................................................15

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) ............................................................6

*Pisack v. B&C Towing, Inc.*,
    240 N.J. 360 (2020) ....................................................................34, 35

*Real v. Radir Wheels, Inc.*,
    198 N.J. 511 (2009) ........................................................................26

*In re Reed*,
    492 B.R. 261 (Bankr. E.D. Tenn. 2013) ...........................................22

*Rego Industries, Inc. v. American Mod. Metals Corp.*,
    91 N.J. Super. 447 (App. Div. 1966) ................................................23

*Rickenbach v. Wells Fargo Bank, N.A.*,
    635 F. Supp. 2d 389 (D.N.J. 2009) ....................................................6

*In re Riley*,
    478 B.R. 736 (Bankr. D.S.C. 2012)...................................................20

*Robbins v. Dyck O'Neal, Inc.*,
    __ F. Supp. 3d __, 2020 WL 1320725 (D. Kan. Mar. 20, 2020).......................22

*In re Sarno*,
    463 B.R. 163 (Bankr. D. Mass. 2011) ........................................16, 20

*Shaffer v. Servis One, Inc.*,
    347 F. Supp. 3d 1039, 1047 (M.D. Fla. 2018)...................................18

*Shelton v. Restaurant.com, Inc.*,
    214 N.J. 419 (2013) ....................................................................33, 34

*Simonsen v. Commissioner*,
    150 T.C. 201 (Tax 2018) ...............................................................9, 28

*Somerset Cnty. Country Club v. Midlantic Nat'l Bank S.*,
   223 N.J. Super. 227 (Ch. Div. 1987) .................................................................27

*Spade v. Select Comfort Co.*,
   232 N.J. 504 (2018) .................................................................................34, 38

*Truglio v. Planet Fitness, Inc.*,
   360 F. Supp. 3d 274 (D.N.J. 2018).................................................................38

*Truglio v. Planet Fitness, Inc.*,
   No. CV157959FLWLHG, 2016 WL 4084030 (D.N.J. July 28,
   2016) ........................................................................................................37

*Virginia Beach Fed. v. Bank of N.Y.*,
   299 N.J. Super. 181 (App. Div. 1997) .............................................................32

*Walker v. Ocwen Loan Servicing, LLC*,
   No. 2:16-cv-9157, 2017 WL 2957933 (D.N.J. July 11, 2017)...................*passim*

*Walker v. Ocwen Loan Servicing, LLC*, No. 2:16-cv-9157 (D.N.J.
   Mar. 14, 2018)...............................................................................*passim*

*Watkins v. DineEquity, Inc.*,
   591 F. App'x 132 (3d Cir. 2014) ....................................................................36

*Weinberg v. Sprint Corp.*,
   173 N.J. 233 (2002) ....................................................................................26

*Wells Fargo Bank, N.A. v. Fraze*,
   No. 19-10499-GAO, 2020 WL 1615866 (D. Mass Apr. 2, 2020) .........11, 17, 21

*Wright v. Deutsche Bank Nat'l Tr. Co.*,
   245 So. 3d 786 (Fla. Ct. of App., 4th Dist. 2018) .............................................16

**Statutes**

11 U.S.C. § 522(c)(2)...................................................................................15

26 U.S.C. § 6050P.....................................................................................7, 9

26 U.S.C. § 61 .............................................................................6, 9, 21, 29, 30

26 U.S.C. § 108 ..........................................................................8, 9, 21, 29, 30

26 U.S.C. § 7421 .......................................................................................29

26 U.S.C. § 7433 .......................................................................................28

13 Mertens Law of Fed. Income Tax'n § 48:1 .........................................10

N.J. Stat. Ann. § 56:8-2 ................................................................25, 31, 32

N.J. Stat. Ann. § 56:12-15 ................................................................... 33-35

N.J. Stat. Ann. § 56:12-17 ........................................................................34

**Regulations**

26 C.F.R. § 1.6050P-1.......................................................................*passim*

**Other Authorities**

*2016 Instructions for Forms 1099-A and 1099-C*, Internal Revenue
   Service, *available at* https://www.irs.gov/pub/irs-prior/i1099ac--
   2016.pdf ...............................................................................................13

*2017 Instructions for Forms 1099-A and 1099-C*, Internal Revenue
   Service, *available at* https://www.irs.gov/pub/irs-prior/i1099ac--
   2017.pdf ..........................................................................................12, 13

*2018 Instructions for Forms 1099-A and 1099-C*, Internal Revenue
   Service, *available at* https://www.irs.gov/pub/irs-prior/i1099ac--
   2018.pdf ................................................................................ 7, 9-11, 32

*Topic No. 431 Canceled Debt – Is it Taxable or Not?*, Internal
   Revenue Service, *available at* https://www.irs.gov/taxtopics/tc431.................28

I.R.S. Info. 2005-0207, 2005 WL 3561135 (Dec. 30, 2005)............................19, 20

*Nat'l Taxpayer Advocate's 2019 Annual Report to Congress*, IRS
   Pub. 2104, 2019 WL 88838, at 104 (Dec. 2019)................................20

*Taxpayer Bill of Rights: #5, The Right to Appeal and IRS Decision in
   an Independent Forum*, Internal Revenue Service, *available* at
   https://www.irs.gov/newsroom/taxpayer-bill-of-rights-5-the-right-
   to-appeal-an-irs-decision-in-an-independent-forum-0 .......................29

## PRELIMINARY STATEMENT

Plaintiff John Gericke's ("Plaintiff") putative class action complaint against Truist Bank, formerly known as Branch Banking and Trust Company, as successor by merger to Susquehanna Bank (collectively "Truist Bank" or "Defendant") (improperly named as "Defendant Truist d/b/a or f/k/a Branch Banking and Trust Company") should be dismissed with prejudice. Plaintiff's entire 35-page complaint is premised on his receipt of a Form 1099-C for a 2012 judgment that he has never satisfied. Plaintiff asserts that "[c]reditors . . . should not send borrowers such as plaintiff[s] a 1099-C form unless the debt is really canceled by defendants." Plaintiff's theory is contrary to the majority rule and the IRS regulations controlling the issuance of Forms 1099-C. For this reason, among others, Plaintiff's claims for violation of the New Jersey Consumer Fraud Act ("CFA") and Truth-in-Consumer Contract, Warranty, and Notice Act ("TCCWNA") must be dismissed with prejudice.

Contrary to Plaintiff's conclusory contention, the issuance of the Form 1099-C did not result in cancellation of Plaintiff's *in personam* debt obligation. Rather, Truist Bank was required to issue the Form 1099-C because an identifiable event occurred which triggered issuance of the Form. Moreover, even if the *in personam* debt were deemed "cancelled," that would not result in a discharge or release of the judgment to the extent it is secured by Plaintiff's real property. That was made

- 1 -

clear to Plaintiff by Truist Bank when it confirmed that it was not intending to release the judgment.

Accordingly, there is no basis to conclude that Truist Bank violated any IRS regulations, the CFA, or TCCWNA by issuing the Form 1099-C.  Moreover, as set forth in detail below, even if there was a question whether Truist Bank violated an IRS regulation, of which there is not, Plaintiff's CFA and TCCWNA claims still fail. Indeed, Plaintiff fails to plead the basic elements of a viable CFA or TCCWNA claim, and Plaintiff cannot maintain that he has any ascertainable loss or is an aggrieved consumer based on unrealized and seemingly excludable tax liability.  The Complaint should therefore be dismissed with prejudice as amendment would be futile.

## **PROCEDURAL HISTORY AND STATEMENT OF FACTS**

On or about February 17, 2012, Susquehanna Bank obtained a judgment in the amount of $244,248.49 against Plaintiff and his wife, Barbara Gericke (the "Judgment").  Certification of Diane A. Bettino, Esq. ("*Bettino Cert.*"), *Ex. 1*.[1]  The Judgment was indexed under judgment number J-062680-12, and levied against Plaintiff and Barbara Gericke's personal and real property, including Plaintiff's

---

[1] The following facts are taken from the allegations and attachments in Plaintiff's pleadings as well as the publicly-available documents that are not in dispute, and which are considered true for purposes of this motion.

property located at 248 Hampshire Drive, Deptford, New Jersey (the "Property"). *Bettino Cert., Exs. 2, 3*.

Effective August 1, 2015, Susquehanna Bank merged with Branch Banking and Trust Company ("BB&T"). *Bettino Cert., Ex. 4*. On December 7, 2019, Truist Bank was formed by the merger of SunTrust Bank into BB&T. *See Bettino Cert., Exs. 5, 6*.

After years without a satisfaction of the Judgment, failed settlement negotiations and pursuant to established business practices, on or about January 10, 2018, Defendant issued a 2018 Form 1099-C to Plaintiff. *Bettino Cert., Ex. 7 (Compl., Ex. 1)*. As set forth on the Form 1099-C, Defendant indicated that $199,427.80 was the "[a]mount of debt discharged" due under "[i]dentifiable event code G." *Id.* As set forth in the instructions on the Form 1099-C, "identifiable event code G" corresponded to a "[d]ecision or policy to discontinue collection." *Id.*

Between August 16, 2018 and June 26, 2019, Plaintiff, through the assistance of counsel, and Defendant exchanged correspondence through which Plaintiff attempted to settle the Judgment for far less than what was owed. *Id. (Compl., Exs. 2 through 7)*. Plaintiff also inquired, after receipt of the 2018 Form 1099-C, whether the Judgment should be released and/or marked satisfied with respect to the Property. *Id. (Compl., Ex. 3)*. By letter dated April 26, 2019, Defendant advised Plaintiff that the debt had not been forgiven, nor was the Judgment voided, by

issuance of the Form 1099-C.  *Id. (Compl., Ex. 4)*.  Specifically, Defendant explained that the "1099-C was filed in accordance with IRS regulations (IRS code section 6050P) to report unpaid debt as income.  The bank's filing of the 1099-C in compliance with IRS regulations does not release [Truist Bank's] judgment as it has not been settled or paid."  *Id.*  Plaintiff, through counsel, disputed Defendant's interpretation, and attached a blog article concerning an inapplicable provision of the IRS regulations.  *Id. (Compl., Ex. 5)*.

On January 27, 2020, Plaintiff filed the Complaint against Truist Bank in the Superior Court of New Jersey, Gloucester County, under docket number L-112-20. *Bettino Cert., Ex 7 (Compl.)*.  In the Complaint, Plaintiff alleges, on behalf of a putative class of "New Jersey citizens who have received loans held by defendants that were the subject of judgments entered against those citizens and who received from defendants a 1099-c form regarding the judgment," that Truist Bank violated the CFA and TCCWNA.  *Id. (Compl. at ¶ 84)*.  Specifically, Plaintiff alleges that Defendant issued the Form 1099-C but "took the position that plaintiffs still owe defendants a substantial debt, failing to confirm for plaintiffs that the debt is forgiven and failing to rescind the 1099-C form," thereby violating the CFA and TCCWNA. *Id. (Compl. at ¶ 40)*.  The Complaint contains three counts:  Count I, Violation of the CFA, seeking treble damages, attorneys' fees, and litigation costs; Count II, Violation of the CFA, seeking equitable relief in the form of canceling the debts and

judgments, with attorneys' fees and litigation costs; and Count III, Violation of TCCWNA, statutory damages, reasonable attorneys' fees, litigation costs, and "terminating/voiding of the contract." *Id. (Compl. at pp. 30-35)*.

On March 19, 2020, Truist Bank removed this action to this Court. *Bettino Cert., Ex. 7.* Truist Bank now moves to dismiss the Complaint with prejudice.

## LEGAL ARGUMENT

## I. STANDARD OF REVIEW ON A MOTION TO DISMISS

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). The complaint must be construed in the "light most favorable to the plaintiff." *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010) (citation and internal quotations omitted). However, "'labels and conclusions' [and] 'naked assertion[s]' devoid of 'further factual enhancement'" are not entitled to the presumption of truthfulness. *Iqbal*, 556 U.S. at 678 (citations

omitted).  Ultimately, if the factual allegations fail "to raise a right to relief above the speculative level," the reviewing court must dismiss the claim. *Twombly*, 550 U.S. at 555.

A court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "'Where there is a disparity between a written instrument annexed to a pleading an allegation in the pleading based thereon, the written instrument will control.'" *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 398 (D.N.J. 2009) (quoting *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994)).

Here, the authenticity of the publicly-recorded documents, written agreements, and documentary evidence appended to this motion are not in dispute. Moreover, Plaintiff's claims are entirely based on documentary evidence, such as the documents attached to the Complaint and the Judgment against him. Accordingly, this Court may consider these documents in connection with this motion.

## II.   ISSUANCE OF AN IRS FORM 1099-C DOES NOT RESULT IN OR REQUIRE THE SATISFACTION OF A JUDGMENT AS A MATTER OF LAW

Plaintiff's Complaint is premised on an incorrect legal proposition: "Creditors such as defendant[s] should not send borrowers such as plaintiff[s] a 1099-C form unless the debt is really canceled by defendants.  If, after issuing a 1099-C form, creditors such as defendant[] fail to confirm for debtors such as plaintiff[] that the debt is forgiven, they should rescind the 1099-C form.  Otherwise, the unrescinded [1]099-C form violates applicable federal regulations (e.g., 26 CFR Part 1; 26 U.S.C. § 6050P)."  *Bettino Cert., Ex. 7 (Compl. at ¶ 16)*.

Plaintiff's theory is wrong and contrary to the majority rule from courts that have addressed this issue.  Indeed, Plaintiff's claims hinge on the argument that the IRS's removal of what was known as the "36-month Rule" prohibited Defendant from issuing a 1099-C for any reason. *Id.* at ¶ 15.  Plaintiff overextends this argument to claim that the issuance of the IRS Form 1099-C amounts to CFA and TCCWNA violations.  Plaintiff's claims are incorrect and Plaintiff does not have any valid theory for relief based on the issuance of the Form 1099-C.[2]

---

[2] To the extent Plaintiff alleges that the issuance of two forms 1099-C amounted to some sort of error, Plaintiff once again ignores the instructions issued by the IRS. Indeed, "[i]f there are multiple owners of undivided interests in a single loan . . . only one form *for each borrower* must be filed on behalf of all owners with respect to the loan."  2018 Instructions at 1, 2, 5 ("File Form 1099-C, Cancellation of Debt for each debtor for whom you canceled a debt owed to you for $600 or more . . . ."

In reality, the issuance of the 1099-C here had nothing to do with the 36-month Rule. Prior to 2017, when the 36-month Rule was still in force, expiration of the 36 non-payment testing period would be coded with the letter "H" in Box 6 of the 1099-C. Here, the 1099-C was coded with letter "G," which, in accordance with the IRS's instructions, is used when a debt is discontinued by a creditor's decision or policy to discontinue active collection. To be clear, a creditor is *required* to issue a 1099-C in such circumstances. As supported by relevant IRS guidance and case law, the issuance of a 1099-C does *not* require a creditor to discharge an underlying judgment, especially where that judgment is also secured by real estate, and certainly does not mean that the unpaid debt is forgiven. Simply, the IRS required the filing of the Form 1099-C because an identifiable event had occurred, and Truist Bank, as a matter of law, lacks the discretion to account for Plaintiff's individual tax situation, *i.e.*, whether Plaintiff would be able to avail himself of various exceptions to a determination of whether he has incurred income, per 26 U.S.C. §108 of the Internal Revenue Code (the "IRC"). The IRC requires issuance of an information return, *i.e.* a Form 1099, and "[t]he purpose . . . is to help the

_____

and "[f]or debts of $10,000 or more . . . that involve debtors who are jointly and severally liable for the debt, you must report the entire amount of the canceled debt on each debtor's Form 1099-C."); 26 C.F.R. 1.6050P-1(e). Two forms were issued, one for Plaintiff and one for his spouse, who is a co-debtor on the judgment.

government locate and check upon recipients of income and amounts they receive." *Gierbolini v. Banco Popular de Puerto Rico*, 930 F. Supp. 712, 716 (D.P.R. 1996), *aff'd*, 121 F.3d 695 (1st Cir. 1997).  "The person or entities [issuing the return] have no discretion, and should not evaluate the taxpayer's tax obligation," because "[t]heir only duty is to report, leaving it to the government and the taxpayer to sort out their differences as to the taxable status of any income in any particular tax year." *Id.*; *see also Simonsen v. Commissioner,* 150 T.C. 201, 207 (Tax 2018) (citing § 61 and § 108 of the IRC, and discussing how "[cancellation of indebtedness] income is often not taxable").

For these reasons, as explained in detail below, the Complaint must be dismissed with prejudice, as amendment would be futile.

## A.   Truist Bank Issued The Form 1099-C In Compliance With The IRS's 2018 Instructions.

Issuance of a Form 1099-C is governed by 26 U.S.C. § 6050P, and its related regulations 26 C.F.R. § 1.6050P-1.  The IRS also provides instructions for creditors and debtors, which are available in part on the form sent to the debtor and its website.  To be clear, the Form 1099-C is a document written entirely by the IRS, except for certain boxes that the creditor fills in before issuance.  The Form 1099-C that is used by all creditors, including Truist Bank, is available on the IRS's website, https://www.irs.gov/pub/irs-pdf/f1099c.pdf.

As set forth in the IRS's instructions, a Form 1099-C must be filed if: "1. You are an entity described under *Who Must File* . . . and 2. An identifiable event has occurred. It does not matter whether the actual cancellation is on or before the date of the identifiable event." *2018 Instructions for Forms 1099-A and 1099-C*, Internal Revenue Service, at 2-3, *available at* https://www.irs.gov/pub/irs-prior/i1099ac--2018.pdf (hereafter "2018 Instructions") (attached to *Bettino Cert.* as *Exhibit 8*); 26 C.F.R. § 1.6050P-1(a). A Form 1099-C was required here ("A financial institution described in section 581 or 591(a)[,] such as a domestic bank . . ."). 2018 Instructions at 3; 26 U.S.C. § 6050P(a)(2)(A). Failure to issue a Form 1099-C can result in penalties and, as previously stated, "[t]he person or entities [issuing the return] **have no discretion, and should not evaluate the taxpayer's tax obligation**." *Gierbolini*, 930 F. Supp. at 716 (emphasis supplied); 2018 Instructions at 3; 26 C.F.R. 1.6050P-1(g); 13 Mertens Law of Fed. Income Tax'n § 48:1 ("Failure to make the required filings results in penalties. The Form 1099-C, Cancellation of Indebtedness, return is required to be filed."); *see also Debt Buyer's Ass'n v. Snow*, 481 F. Supp. 2d 1, 9 (D.D.C. 2006) (applying Anti-Injunction Act to bar creditors' lawsuit because "in asking the Court to enjoin Defendants from enforcing . . . § 1.6050P-2(e), Plaintiff is effectively asking the Court to enjoin Defendants from assessing any penalties related to Plaintiff's non-compliance with the regulation.").

An "identifiable event," thereby requiring a creditor to file a Form 1099-C, includes "a decision or a defined policy of the creditor to discontinue collection activity and cancel the debt."  2018 Instructions at 4, ¶ 7; 26 C.F.R. § 1.6050P-1(b)(2)(G).  In relevant part, 26 C.F.R. § 1.6050P-1(b)(2)(G) defines the identifiable event as "[a] discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt."  When this identifiable event occurs, creditors place the code "G" in Box 6 of the Form 1099-C, which is what occurred here.  2018 Instructions at 4, ¶ 7; 26 C.F.R. § 1.6050P-1(b)(2)(G); *Bettino Cert., Ex. 7 (Compl., Ex. 1)*.  The 2018 Instructions further elaborate that "[a] creditor's defined policy can be in writing or an established business practice of the creditor," and "[a] creditor's established practice to stop collection activity and abandon a debt when a particular nonpayment period expires is a defined policy."  2018 Instructions at 4, ¶ 7; 26 C.F.R. § 1.6050P-1(b)(2)(G)(iii).  As explained in detail below, the issuance of a Form 1099-C under code "G" does not require an actual discharge of the debt at issue.  *Wells Fargo Bank, N.A. v. Fraze*, No. 19-10499-GAO, 2020 WL 1615866, at *2 (D. Mass Apr. 2, 2020) (attached to *Bettino Cert., Ex. 11*).

Here, the Form 1099-C issued to Plaintiff was coded with identifiable event "G" in compliance with the IRS Code and regulations.  Plaintiff does not dispute the existence of the Judgment against him in favor of Defendant since 2012, that he has

made small payments to release portions of the Judgment in connection with the sale of other parcels of his real estate, nor that he has not satisfied the Judgment. Plaintiff does not, because he cannot, point to anything that is wrong with the Form 1099-C, which was issued because, as code "G" makes clear, in light of Plaintiff's failure to pay the Judgment for so long, the failed settlement discussions and Truist Bank's decision to cease active collection activity.

**B.    The IRS's Removal Of The 36-Month Rule In 2016 Had No Impact On The Issuance Of The Form 1099-C By Truist Bank.**

Plaintiff spends a significant amount of time in the Complaint discussing the abrogation of the 36-month Rule, even though it has no application to this case whatsoever. The 36-month Rule, which was formerly coded "H" on the Form 1099-C, was removed in 2016. Effective for 2017 tax filings, the IRS "remove[d] the rule that a deemed discharge of indebtedness for which a Form 1099-C must be filed occurs at the expiration of a 36-month nonpayment testing period." *2017 Instructions for Forms 1099-A and 1099-C*, Internal Revenue Service, *available at* https://www.irs.gov/pub/irs-prior/i1099ac--2017.pdf (hereafter "2017 Instructions") (attached to *Bettino Cert.* as *Ex. 9*).

The removal of the 36-month Rule had no impact on how a creditor must report identifiable event "G" for "discontinue[d] collection activity" through a "creditor's defined policy" or "established business practice." *Compare* 2017

Instructions at 4, ¶ 7, *with 2016 Instructions for Forms 1099-A and 1099-C*, Internal

Revenue Service, *available at* https://www.irs.gov/pub/irs-prior/i1099ac--2016.pdf,

at 4, ¶ 7 (hereafter "2016 Instructions") (attached to *Bettino Cert.* as *Ex. 10*).  Rather,

the removal of the 36-month Rule removed code "H" for Box 6, which had applied

"when the creditor has not received a payment on the debt during the testing period[:]

. . . a 36-month period ending on December 31. . . ."  2016 Instructions at 4, ¶ 8.[3]

As is clear from the IRS regulations, the removal of the 36-month Rule has

nothing to do with Plaintiff's Form 1099-C, and certainly cannot support Plaintiff's

claims against Truist Bank.  This Court has already recognized that CFA claims

premised on changes to the 36-month Rule fail as a matter of law, especially where

the 1099-C was issued by the creditor for an unrelated reason.  *See Walker v. Ocwen*

*Loan Servicing, LLC*, No. 2:16-cv-9157 (D.N.J. Mar. 14, 2018), and *Walker v.*

*Ocwen Loan Servicing, LLC*, No. 2:16-cv-9157, 2017 WL 2957933 (D.N.J. July 11,

2017) (unpublished opinions attached to *Bettino Cert.* as *Exs. 12 & 13*).  In *Walker*,

the creditor issued a 1099-C due to a partial resolution for less than full

consideration, and not expiration of the 36-month non-testing period.  *Bettino Cert.,*

*Ex.* 13 at 2.  The debtors argued that the issuance of the 1099-C was misleading and

---

[3] Starting in 2017, code "H" was changed to "an[y] other actual discharge before one of the identifiable events listed above."  2017 Instructions 4, ¶ 8.

unlawful, in violation of the CFA, because the underlying debt was not actually discharged. *Id.* at 3. This Court held "that there is no unlawful practice here, so it ends its analysis at the first element [of the CFA]." *Id.*

Specifically, the Court held that "the IRS require[d] Ocwen to file a Form 1099-C to disclose that the parties reached an agreement to forgive the debt, even though the debt was not yet forgiven." *Id.* at 4. "Since the Walker's theory of liability stems solely from the fact that Ocwen filed the Form 1099-C, but Ocwen was required by law to file it, Ocwen did not commit an 'unlawful practice' under the NJCFA." *Id.* With respect to the specific allegation that IRS Bulletin 2016-48, which was published in November 2016, requires a creditor to "rescind the Form 1099-C," the Court noted that the bulletin only applied to subsection H of the controlling regulation, § 1.6050P-1, relating to the expiration of the 36-month nonpayment testing period. *Bettino Cert., Ex. 12* at 1. The Court flatly rejected the Walkers' contention that the change to the 36-month Rule had any impact on the Walkers' claim, holding "[the] 36-month non-payment period . . . [was] not the basis on which Defendant filed the Form 1099-C," thus the Walkers "are unable to state a claim upon which relief may be granted." *Id.* at 1-2.

This Court's analysis in *Walker* squarely applies here and Plaintiff's claims should be rejected.

**C.    The Form 1099-C Does Not Require Release Of The Lien On Real Estate.**

Regardless of whether Plaintiff's *in personam* debt obligation was discharged, an *in rem* debt obligation (here the Judgment lien) may remain as a valid and enforceable interest on the collateral.  Contrary to Plaintiff's assertion, the issuance of a Form 1099-C with respect to the amount of the debt owing under the Judgment does not require or result in the Judgment being released as a lien on the Property. Accordingly, Plaintiff fails to state a claim and the Complaint must be dismissed with prejudice.

Generally, a discharge of a personal obligation to pay back a loan does not extinguish a lien on the collateral securing that obligation.  *See, e.g.*, *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (citing *Long v. Bullard*, 117 U.S. 617 (1886); 11 U.S.C. § 522(c)(2); *Owen v. Owen*, 500 U.S. 305, 308-309 (1991); *Farrey v. Sanderfoot*, 500 U. S. 291, 297 (1991)) ("[T]he Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy.").  As the Supreme Court of the United States has explained:

> Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property.  Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a 'right to an equitable remedy' for the debtor's default on the underlying obligation.  Either way, there can be no doubt that the surviving mortgage interest corresponds to an 'enforceable obligation' of the debtor.

> The Court of Appeals thus erred in concluding that the discharge of petitioner's personal liability on his promissory notes constituted the complete termination of the Bank's claim against petitioner. Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim -- namely, an action against the debtor *in personam* -- while leaving intact another -- namely, an action against the debtor *in rem*.

*Id.* at 84-85.

This distinction between *in personam* debts and *in rem* liens applies with respect to the issuance of Form 1099-C cancellations of debt. *See, e.g., Ledin v. Wells Fargo Bank, N.A.*, No. 14-12347, 2015 WL 1569742, at *1 (Bankr. D. Kan. Mar. 31, 2015) (discussing state judgment "finding that the mortgage remained a valid and enforceable lien on his property, notwithstanding that [a 1099-C notice had been issued and] the underlying personal indebtedness had been cancelled") (attached to *Bettino Cert.* as *Ex. 14*); *Wright v. Deutsche Bank Nat'l Tr. Co.*, 245 So. 3d 786, 787 (Fla. Ct. of App., 4th Dist. 2018) (affirming final summary judgment foreclosing on mortgage and rejecting argument that Form 1099-C discharged mortgage because foreclosure is an *in rem* remedy); *In re Sarno*, 463 B.R. 163, 167 (Bankr. D. Mass. 2011) (rejecting debtors' argument that mortgagee "should be deprived of a claim secured by their home . . . based on [the mortgagee] issuing an Internal Revenue Service form 1099–C in connection with the debtors' loan").

In *Fraze*, the District of Massachusetts recognized this distinction in awarding the United States Department of Housing and Urban Development ("HUD") surplus funds following both the issuance of a Form 1099-C under Code "G" to the borrower and the sheriff sale of the subject property.  2020 WL 1615866, at *2.  The court determined that the issuance of the 1099-C did nothing to disturb HUD's superior lien interest on the subject property.  *Id.*  Specifically, the court held that the 1099-C "does not operate to legally discharge or otherwise cancel the underlying debt, but rather is simply the fulfillment of a reporting requirement to the IRS," and "[w]ithout evidence of an actual discharge of the HUD debt, [HUD] stands as the junior lienholder of record, has an equitable lien against the surplus funds, and thus holds a superior interest to Fraze."  *Id.*

Here, consistent with the well-recognized and established distinction between *in personam* and *in rem* debt obligations, this Court should reject Plaintiff's assertion that issuance of the 1099-C requires a discharge of the Judgment secured on Plaintiff's Property.

### D.     The Form 1099-C Does Not Require Forgiveness Of The Underlying Debt.

While in some instances a Form 1099-C may be issued because an underlying debt has *actually* been canceled, that is not the case here, as a Form 1099-C was issued only because Plaintiff was deficient in paying the underlying Judgment for so long that, according to Defendant's decision and business practices, the Judgment

was deemed inappropriate for continued pursuit for active collection within its collection process after the settlement discussions failed.  So much was made clear to Plaintiff in the letter dated April 26, 2019, in which it stated that the Form 1099-C "does not release the client's judgment as it has not been settled or paid." *Bettino Cert., Ex. 7 (Compl., Ex. 4)*.  In this scenario, the issuance of the Form 1099-C cannot, as a matter of law and equity, require an actual discharge of the Judgment. Truist Bank was required to issue a Form 1099-C by IRS regulations, but the underlying Judgment was not paid, satisfied, or forgiven.

This Court recognized in *Walker* that the issuance of a Form 1099-C does not equate to actual cancellation of the debt.  In *Walker,* this Court relied on the Fourth Circuit's decision in *FDIC v. Cashion*, 720 F.3d 169, 178 (4th Cir. 2013), which provided a guide to interpreting 26 C.F.R. § 1.6050P-1, and explained that when an identifiable event occurs, "and when a creditor files the [1099-C] form, [it is] satisfying an IRS reporting obligation, but [it is] not necessarily discharging the debt." *Bettino Cert., Ex. 12* at 5 (quoting *Cashion*, 720 F.3d at 178-79); *see also Shaffer v. Servis One, Inc.*, 347 F. Supp. 3d 1039, 1047 (M.D. Fla. 2018) ("[T]he filing of a 1099-C and its delivery to the borrower are required when a lender writes off a debt as a loss for accounting purposes.").  "Consistent with that reading, the IRS has explained that it 'does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection.'" *Id.*

(quoting *Cashion*, 720 F.3d at 179 (quoting I.R.S. Info. 2005-0207, 2005 WL 3561135 (Dec. 30, 2005))).

In light of the IRS and Fourth Circuit's guidance, this Court held that the issuance of the 1099-C for a debt that was "not actually canceled and . . . still owe[d]" did not result in an actionable theory under the CFA. *Id.* at 5. Rather, an identifiable event occurred, thus "§ 1.6050P-1(a) required Ocwen to file the Form 1099-C to *report the event, even though the debt was not discharged at that moment[,] [a]nd Ocwen was still allowed to collect on the deferred balance after filing the Form 1099-C*." *Id.* at 5-6 (citing I.R.S. Info. 2005-0207) (emphasis added). Thus "Ocwen's Form 1099-C was not false, inaccurate, or misleading. It was a required business practice." *Id.* at 5-6. The Court elaborated that the IRS instructions "contemplate[] a situation where a creditor could list an amount in the Form 1099–C but that amount would not yet count as taxable income to the debtor . . . . [and] warning [the debtor] that [his or her] debt may not have been forgiven yet." *Id.* at 6. At bottom, the "Walker[s'] overpayment of income tax did not flow from anything Ocwen did. Rather, it flows from the complicated rules of the [IRS] Code and the IRS regulations, and the Walkers' misreading of the instructions on the Form 1099-C itself. Their mistake is understandable, but it is not actionable under the NJCFA." *Id.* at 7.

This Court's decision in *Walker* is squarely in line with the majority of courts around the country. Indeed, the majority rule is that "filing a Form 1099–C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of debt, nor is it required only where an actual discharge has already occurred." *Cashion*, 720 F.3d at 179; *see also In re Riley*, 478 B.R. 736, 744 (Bankr. D.S.C. 2012); *Flathead Bank of Bigfork v. Masonry by Muller, Inc.*, 383 P.3d 215, 217-19 (Mont. 2016); *Sarno*, 463 B.R. at 168.

The majority view is supported by the IRS itself. *See, e.g.*, I.R.S. Info. Letter, 2005-0207, 2005 WL 3561135 (Oct. 7, 2005) ("The Internal Revenue Service does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection. Section 1.6050P-1(a) of the regulations provides that, solely for purposes of reporting cancellation of indebtedness, a discharge of indebtedness is deemed to occur when an identifiable event occurs whether or not an actual discharge of indebtedness has occurred on or before the date of the identifiable event.") (attached to *Bettino Cert.* as *Ex. 15*); *Nat'l Taxpayer Advocate's 2019 Annual Report to Congress*, IRS Pub. 2104, 2019 WL 88838, at 104 (Dec. 2019) ("The issuance of a Form 1099-C is not dispositive of whether or when the debt is actually discharged. A debt is deemed to have been discharged for purposes of information reporting, and a Form 1099-C is required, if and only if, an

'identifiable event' has occurred.") (relevant pages attached to *Bettino Cert.* as *Ex. 16*).

Indeed, the IRS has also affirmatively argued that issuance of a 1099-C does not result in an *actual* discharge of the debt.  *Snow*, 418 F. Supp. 2d at 13 (highlighting the Commissioner of Internal Revenue's argument that creditors "are free to include in their statement to a debtor text noting '(1) that they are issuing a 1099 because *one or more* of the circumstances in . . . § 1.6050P-1 have been met, (2) that the business intends to, or may, continue collecting the debt until barred by state or federal law governing debt collection, and (3) that the recipient should consult with a tax advisor if he or she does not know whether income arises under 26 U.S.C. §§ 61(a)(12) and 108 in his or her particular circumstances'") (emphasis added).  The United States Government, on behalf of HUD, has also advocated for the majority view.  *Fraze*, 2020 WL 1615866, at *2 (adopting the government's argument that the issuance of the Form 1099-C under identifiable event "G" "was filed to conform with IRS regulations, in satisfaction of a reporting requirement for tax purposes that arose regardless of whether 'an actual discharge of indebtedness [had] occurred[,]'" and "[t]here is no other evidence offered that HUD 'actually' cancelled or discharged Fraze's debt.").

Only a minority of courts around the country have held that a 1099-C is *prima facie* evidence of a discharge of a debt.  *See Robbins v. Dyck O'Neal, Inc.*, __ F.

Supp. 3d __, 2020 WL 1320725, at *4 (D. Kan. Mar. 20, 2020) (citing *Amtrust Bank v. Fossett*, 224 P.3d 935, 937 (Ariz. Ct. App. 2009); *Franklin Credit Mgmt. Corp. v. Nicholas*, 812 A.2d 51, 63 (Conn. App. Ct. 2002); *In re Crosby*, 261 B.R. 470, 474 (Bankr. D. Kan. 2001)).  These decisions are in the minority because, as other courts have recognized, they "refuse to consider IRS opinion letters." *Id.* (citing *In re Reed*, 492 B.R. 261, 270 (Bankr. E.D. Tenn. 2013)) (attached to *Bettino Cert.* as *Exhibit 17*).  Even within this minority of decisions, courts are not concluding, as a matter of law, that the debt is actually forgiven or discharged: "while issuance of a Form 1099-C may be prima facie evidence of cancellation of a debt, the lender may rebut that evidence by showing that when it issued the form it did not intend to forgive the obligation." *Fossett*, 224 P.3d at 935.

Here, consistent with this Court's decision in *Walker*, the issuance of the Form 1099-C did not result in cancellation of Plaintiff's *in personam* debt obligation. Rather, Truist Bank was required to issue the Form 1099-C because an identifiable event occurred, i.e. non-payment of the Judgment debt for so long, thereby activating a business practice to report the debt was not being actively collected.  Defendant made clear in its correspondence with Plaintiff that his Judgment was not released and that there was no payment or settlement of the debt. *Bettino Cert., Ex. 7 (Compl., Ex. 4)*.  Moreover, even if the *in personam* debt were deemed "cancelled," this would not result in a discharge or release of the Judgment to the extent it is secured by

Plaintiff's real property.  *See § II.C., supra.*  That was also made clear to Plaintiff by Truist Bank when it confirmed in writing that it was not intending to release the Judgment.  *Bettino Cert., Ex. 7 (Compl., Ex. 4).*

Accordingly, there is no basis to conclude that Defendant had any obligation to rescind the Form 1099-C, as Plaintiff demands, nor is there any basis to conclude that Truist Bank violated any IRS regulations, the CFA, or TCCWNA by issuing the Form 1099-C.  The Complaint should therefore be dismissed with prejudice.

## III.   PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE CONSUMER FRAUD ACT

Against the backdrop, law, and IRS guidance set forth above, Plaintiff's CFA claim fails as a matter of law and must be dismissed with prejudice.  A claim under the CFA consists of three elements: "(1) an unlawful practice, (2) an 'ascertainable loss,' and (3) 'a causal relationship between the unlawful conduct and the ascertainable loss.'"  *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011) (quoting *Lee v. Carter-Reed Co.*, 203 N.J. 496, 521 (2010)).

Allegations of fraud must be pled with particularity.  *See R.* 4:5-8(a); *see also Levinson v. D'Alfonso & Stein*, 320 N.J. Super. 312, 315 (App. Div. 1999).  Mere conclusory statements are insufficient to satisfy the particularity requirement.  *See Rego Industries, Inc. v. American Mod. Metals Corp.*, 91 N.J. Super. 447, 456 (App. Div. 1966).  To satisfy the heightened pleading standard, Plaintiff's CFA claim must state the "particulars of the wrong, with dates and items if necessary."  *R.* 4:5-8.  A

court may dismiss a counterclaim alleging fraud if the allegations are not set forth with specificity.  *See Levinson*, 320 N.J. Super. 312.

Plaintiff's CFA claim fails for several reasons: Plaintiff has not and cannot plead the elements necessary to maintain a CFA claim; Plaintiff lacks standing to assert a CFA claim; the CFA claim is not pled in accordance with *Rule* 4:5-8; and the CFA is inapplicable because the alleged wrongdoing was not in connection with the sale or advertisement of merchandise.  Accordingly, Plaintiff's CFA claim must be dismissed with prejudice.

## A.      Plaintiff Has Not Pled The Existence of An Unlawful Practice.

Plaintiff's CFA claim fails as a matter of law because Plaintiff has not pled the elements necessary to maintain a claim under the CFA.  Critically, Plaintiff has not and cannot plead that Truist Bank committed an "unlawful practice."  The CFA defines an "unlawful practice" as:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby.

N.J.S.A. § 56:8-2.

While Plaintiff refers to and parrots the CFA statutory language, Plaintiff has not alleged any *specific* unlawful practice by Truist Bank.  In support of Plaintiff's claim that Truist Bank violated the CFA, Plaintiff implies, but does not directly allege, that the issuance of the Form 1099-C, "and/or the [failure to] issu[e] a corrective or explanation notice," constitutes an "unlawful practice."  *Bettino Cert., Ex. 7 (Compl. at ¶¶ 33, 43, 96, 126)*.  As explained in detail above, as the Court held in *Walker v. Ocwen Loan Servicing, LLC*, No. 2:16-cv-9157 (D.N.J. Mar. 14, 2018), and *Walker v. Ocwen Loan Servicing, LLC*, No. 2:16-cv-9157, 2017 WL 2957933 (D.N.J. July 11, 2017), the issuance of a Form 1099-C, and any alleged overpayment of taxes by Plaintiff, "is not actionable under the NJCFA."  *Bettino Cert., Ex. 13* at 7.

Like the Court in *Walker*, the Court need not venture past this point.  Indeed, Plaintiff does not and cannot plead that Truist Bank committed any "unlawful practice" through issuance of the Form 1099-C.  Rather, as Plaintiff admits, he was notified through the April 26, 2016 letter to Plaintiff that "[t]he bank's filing of the 1099-C . . . does not release the client's judgment as it has not been settled or paid." *Bettino Cert., Ex. 7*; *see Snow*, 481 F. Supp. 2d at 14 ("[A] notice to the debtor that a Debt Buyer plans to continue debt collection activities . . . . would not falsely represent the status of the debt recorded on a 1099-C Form.").  Accordingly, Plaintiff's CFA claim must be dismissed with prejudice.

**B.    Plaintiff Lacks Standing To Assert A CFA Claim Because He Fails to Allege An Ascertainable Loss.**

Plaintiff does not have standing to bring a CFA claim.  To have the requisite standing, Plaintiff must allege that he "suffer[ed] a definite, certain and measurable loss, rather than one that is merely theoretical." *Weinberg v. Sprint Corp.,* 173 N.J. 233 (2002).  "'[A]scertainable loss' within the meaning of the CFA means one that 'is quantifiable or measurable' and that '[a]n estimate of damages, calculated within a reasonable degree of certainty will suffice to demonstrate an ascertainable loss.'" *Real v. Radir Wheels, Inc.,* 198 N.J. 511, 518 n. 4 (2009) (quoting *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 22 (1994)).

Here, Plaintiff has not alleged that he suffered any ascertainable loss in connection to any action taken by Truist Bank.  Rather, Plaintiff merely suggests (and does not directly allege) in conclusory terms that the issuance of the Form 1099-C resulted in Plaintiff's "owing a fraudulent debt" and incurring "out-of-pocket loss" by paying taxes to the federal government.  *Bettino Cert., Ex. 7 (Compl. at ¶¶ 48, 49, 120).*  The Court should reject Plaintiff's conclusory and irrelevant allegations.

First, Plaintiff's conclusory allegation about "owing a fraudulent debt" has nothing to do with the issuance of the Form 1099-C.  As explained above, the Form 1099-C was issued under code "G" and not because the underlying Judgment was found to be fraudulent or defective in any fashion.  To the extent the Plaintiff is now

trying to argue that the 2012 Judgment is somehow fraudulent, that would be nothing more than an untimely and improper collateral attack on a judgment that has been undisputed and recorded since 2012.   Indeed, by paying small portions of the Judgment, Plaintiff has also ratified his debt.  *See Somerset Cnty. Country Club v. Midlantic Nat'l Bank S.*, 223 N.J. Super. 227, 236 (Ch. Div. 1987) ("When a claim consists of a fixed amount known to both parties, a payment on account necessarily recognizes the total claim.").   Plaintiff cannot plausibly claim that the debt is "fraudulent" in any way, and the Court should reject Plaintiff's baseless and conclusory allegation.

Second, as for Plaintiff's suggestion that he *may* have to pay taxes to the federal government based on the notices he received, thereby satisfying the "ascertainable loss" requirement, courts uniformly reject CFA claims premised on taxes paid to government entities.  *See, e.g.*, *Kawa v. Wakefern Food Corp. Shoprite Supermarkets, Inc.*, 24 N.J. Tax. 444, 450-51 (App. Div.), *certif. denied*, 200 N.J. 369 (2009).   In *Kawa*, the Tax Court dismissed CFA claims against a private supermarket for allegedly overcharging sales taxes, which were remitted by the supermarkets to the New Jersey Division of Taxation.   24 N.J. at 447-48.   The plaintiff failed to state a claim for violation of the CFA because, among other things, the showing of an "ascertainable loss" was "incompatible" with the legislative

scheme in place for obtaining refunds from the New Jersey Division of Taxation. *Id.* at 450-51.

*Kawa* squarely applies here, and even more forcefully because the additional step of the defendant supermarkets in overcharging sales taxes and remitting payments to the Division of Taxation is absent.  Here, Plaintiff is required to report and pay his federal income taxes directly to the IRS.  Like the state-legislative regime at play in *Kawa*, Plaintiff's "exclusive remedy for recovering damages in connection with the collection of federal taxes is to file a civil action for damages against the United States." *Holt v. Davidson*, 441 F. Supp. 2d 92, 97 (D.D.C. 2006) (citing 26 U.S.C. § 7433; *Hassell v. United States*, 203 F.R.D. 241, 244 (N.D. Tex. 1999)). Indeed, as set forth in the Taxpayer Bills of Rights, Plaintiff, should he dispute his tax bill and/or the application of certain exclusions,[4] has the right to appeal the IRS's

---

[4] Truist Bank does not take any position or provide any advice to Plaintiff with respect to his tax liability or the exceptions that Plaintiff might be able to invoke to lessen or eliminate any tax liability under §108 of the IRC, such as the exceptions for mortgage debt forgiveness or insolvency.  Indeed, if Plaintiff has any questions about tax liability, the IRS recommends that he speak with a tax professional or attorney. *See Topic No. 431 Canceled Debt – Is it Taxable or Not?*, Internal Revenue Service, available at https://www.irs.gov/taxtopics/tc431 (listing exceptions to cancellation of debt income and exclusions from gross income); *see also Gierbolini*, 930 F. Supp. at 716; *Simonsen*, 150 T.C. 201 (discussing process of submitting a Form 982 for determining gross income and income from discharge of indebtedness under § 61 and § 108).  Plaintiff currently has at least two law firms representing him and who have been involved in his debt issues for the past few years.

decision and bring a claim in the Tax Court. *Taxpayer Bill of Rights: #5, The Right to Appeal and IRS Decision in an Independent Forum*, Internal Revenue Service, *available* at https://www.irs.gov/newsroom/taxpayer-bill-of-rights-5-the-right-to-appeal-an-irs-decision-in-an-independent-forum-0.

And, to the extent Plaintiff is seeking to effectively have this Court adjudicate Plaintiff's tax liability by demanding a retraction of the 1099-C, such relief and cause of action are barred by the Anti-Injunction Act (the "AIA"), 26 U.S.C. § 7421 ("[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."); *see also Snow*, 481 F. Supp. 2d at 8-9 (holding "any action that hinders the IRS in determining the accuracy of such income will in fact hinder the assessment and collection of taxes from debtors and thus fall within the auspices of the AIA."). Plaintiff's mere disagreement with his potential tax liability to the IRS, which he might not even owe, is not itself an ascertainable loss under the CFA as concerns Truist Bank.

Even if unwanted tax liability were actionable under the CFA, the Complaint fails to set forth that Plaintiff actually incurred and/or paid additional liability as a result of the Form 1099-C that was issued by Truist Bank. Even if this Court were to depart from *Walker* and adopt the minority view, Plaintiff's claims still fail. Plaintiff attached a December 2, 2019 IRS bill to the Complaint, which indicates that

for the tax year 2018, Plaintiff owed $51,381.00 in taxes, had only paid $6,245.00 in taxes, and otherwise owed more than $13,000.00 for "failure to pay" penalties and interest charges. *Bettino Cert., Ex. 7 (Compl., Ex. 9)*. The Complaint does not allege, nor does the attached IRS bill show, that the Form 1099-C had any impact on Plaintiff's tax liability or that Plaintiff attempted to avail himself of any exceptions to tax liability. *See Snow*, 481 F. Supp. 2d at 13 (highlighting Commissioner of Internal Revenue's argument that "issuance of a 1099 is not a declaration by the issuer that the recipient debtor actually has received taxable income, since under 26 C.F.R. § 1.6050P-1, 'discharged indebtedness must be reported regardless of whether the debtor is subject to tax on the discharged debt under sections 61 and 108'").

Since Plaintiff does not, and cannot, plead any ascertainable loss in connection the issuance of the Form 1099-C, Plaintiff's CFA claim must be dismissed with prejudice.

### C. Plaintiff's CFA Claim Fails Because the Alleged Wrongdoing Was Not Made in Connection with the Sale or Advertisement of Merchandise.

Plaintiff does not make any allegation that Truist Bank committed any wrongdoing in connection with the sale or advertisement of merchandise, thus Plaintiff's CFA claim fails as a matter of law. Indeed, any claim related to the issuance of the Form 1099-C is not alleged to be in connection with the sale or

advertisement of any merchandise.   Simply, the CFA is inapplicable to all of Plaintiff's claims.

The plain language of the statute requires that, in order to state a claim for violation of the CFA, a plaintiff must allege misrepresentations or omissions "in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. § 56:8-2.  "To satisfy this requirement, '[t]he misrepresentation has to be one which is material to the transaction . . . made to induce the buyer to make the purchase.'"  *Castro v. NYT Television*, 370 N.J. Super. 282, 294 (App. Div. 2004) (quoting *Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 607 (1997)).  The farthest the Court will extend the CFA is discussed by the Supreme Court in *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557 (2011).  In *Wilshire*, the Supreme Court held that post-judgment forbearance agreements constituted "the extension of credit, or a new loan, and . . . collection activities [that] may be characterized as 'subsequent performance' in connection with the extension of credit."  *Id.* at 581 (quoting N.J.S.A. § 56:8-2).

Plaintiff makes no allegations concerning this key phrase, "in connection with the sale or advertisement of any merchandise or real estate," which is a prerequisite to the application of the CFA to any claim.  Indeed, the allegations in the Complaint go well beyond any extension of credit activities or "subsequent performance in connection with the extension of credit."  Plaintiff had a mortgage loan that, in 2012,

became the Judgment.  Generally, once reduced to a judgment, the mortgage merges with the judgment and no longer exists.  *See, e.g., Virginia Beach Fed. v. Bank of N.Y.*, 299 N.J. Super. 181, 188 (App. Div. 1997); *Gonzalez*, 207 N.J. at 580-81. Unlike *Gonzalez*, where the parties entered into "post-judgment agreements [that] treated the initial loan as a continuing debt to be collected," here the issuance of the 1099-C was due to "[a] creditor's established practice to stop collection activity and abandon a debt when a particular nonpayment period expires is a defined policy." 2018 Instructions at 4, ¶ 7; 26 C.F.R. § 1.6050P-1(b)(2)(G)(iii).  Truist Bank's action in issuing the 1099Cs falls well-beyond the reach of the CFA.

Accordingly, Plaintiff fails to allege that Truist Bank's allegedly unlawful actions were made in connection with the sale or advertisement of credit.  Therefore, Plaintiff's CFA claim must be dismissed with prejudice.

## IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE TRUTH IN CONSUMER CONTRACT WARRANTY AND NOTICE ACT

Like his CFA claim, Plaintiff's TCCWNA claim fails as pled and must be dismissed with prejudice.  TCCWNA does not "recognize any new consumer rights but merely impose[s] an obligation on sellers to acknowledge clearly established consumer rights and provided remedies for posting or inserting provisions contrary to law."  *Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 68 (2017) (quoting *Shelton v.*

*Restaurant.com, Inc.*, 214 N.J. 419, 432 (2013)).  TCCWNA provides, in relevant part:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. § 56:12-15.

A "consumer" is defined as "any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes." *Id.*  To assert a claim under TCCWNA, a consumer must establish:

> first, that the defendant was a "seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid";
>
> second, that the defendant offered or entered into a "written consumer contract or [gave] or display[ed] any written consumer warranty, notice or sign";
>
> third, that at the time that the written consumer contract is signed or the written consumer warranty, notice or sign is displayed, that writing contains a provision that "violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee" as established by State or Federal law;
>
> and finally, that the plaintiff is an "aggrieved consumer."

*Spade v. Select Comfort Co.*, 232 N.J. 504, 516 (2018) (quoting N.J.S.A. §§ 56:12-15, -17).

While TCCWNA, as remedial legislation, is "entitled to a broad interpretation," there are limits. *Pisack v. B&C Towing, Inc.*, 240 N.J. 360, 382 (2020) (quoting *Shelton*, 214 N.J. at 442-43) (curtailing interpretation of post-payment list of charges to be actionable "notices" as "quite expansive" and beyond the reach of TCCWNA). In this case, Plaintiff does not (and cannot) plausibly plead the second, third, and fourth elements of a viable TCCWNA claim.

## A.  The Form 1099-C Is Not a "Covered Writing" Under TCCWNA.

For the second element, a claimant must plead the existence of a "covered writing," meaning a document that is exchanged between the consumer and the creditor that has a prospective impact on the underlying transaction. *See Pisack*, 240 N.J. at 378-79. In *Pisack*, the Supreme Court held that the plaintiffs failed to state a claim under TCCWNA because the writing at issue was a "bill" that was generated for vehicle owners "after they paid to retrieve their cars." The Supreme Court held that the "after-the fact 'bill[]' . . . cannot . . . constitute a contract or notice to plaintiffs when plaintiffs had already paid the amount demanded to recover their cars." *Id.* at 382-83

Here, the federally-mandated Form 1099-C issued to Plaintiff is not a contract or notice that is actionable under TCCWNA. The Form 1099-C is not a contract that

is signed, nor is it a warranty, notice, or sign that is displayed.  N.J.S.A. § 56:12-15.

Rather, it is a legally-required form that was drafted by the IRS and must be issued,

in accordance with the Code and IRS Regulations, when an identifiable event occurs.

And, like *Pisack*, it was not a prospective document.  Rather, it was issued to the

Plaintiff to denote that a decision from Truist Bank was made, in accordance with a

defined policy or established business practice, to discontinue collection activity.

Simply, the Form 1099-C is not a covered writing.

Since Plaintiff fails to plead the existence of a covered writing, Plaintiff's

TCCWNA claim must be dismissed with prejudice.

## B.    The Form 1099-C Does Not Contain A Violation of a Clearly Established Right.

For the third element, as set forth in Section II and Section III.A above, there

is nothing unlawful or incorrect in the Form 1099-C.  Although Plaintiff does not

actually identify the alleged TCCWNA violation, Plaintiff seems to suggest there is

a regulatory error with respect to the Form 1099-C based on the abrogation of the

36-month Rule, but that was not even the basis for the issuance of the Form 1099-

C.  As outlined above, the issuance of the Form 1099-C was proper.  Nothing in the

Form 1099-C Truist issued can be said to violate a "clearly established legal right"

of Plaintiff, nor could it as a federally-created and mandated document.

Moreover, to the extent Plaintiff attempts to pivot his claims to suggest that

Truist Bank has an obligation to issue a corrective 1099-C or include additional

information, it is well established that "mere omission" of allegedly required terms in a covered writing does not result in a TCCWNA violation. *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 136-37 (3d Cir. 2014).   As courts in New Jersey have uniformly recognized, the "plain wording of . . . TCCWNA . . . provides, in relevant part, that '[n]o seller . . . shall . . . give or display any written consumer warranty, notice, or sign . . . which *includes* any provision that violates any clearly established right of a consumer or responsibility of a seller.'"   *Friest v. Luxottica Grp. S.P.A.*, No. 2:16-cv-3327-SDW-LDW, 2016 WL 7668453, at *11-12 (D.N.J. Dec. 16, 2016) (emphasis in original) (dismissing TCCWNA claim where defendant optometrists omitted notices required by New Jersey Administrative Code) (attached to *Bettino Cert.* as *Ex. 17*); *Cannon v. Ashburn Corp.*, No. 16-1452 (RMB/AMD), 2016 WL 7130913, at *12 (D.N.J. Dec. 7, 2016) (dismissing TCCWNA claim because "only Defendants' alleged conduct, namely the failure to provide a bottle with the advertised original price, . . .  may give rise to liability -- not the contracts' provisions."); *Truglio v. Planet Fitness, Inc.*, No. CV157959FLWLHG, 2016 WL 4084030, at *8 (D.N.J. July 28, 2016) ("[T]he "mere omission" of required terms in a consumer contract (or other covered writing) does not result in liability under the TCCWNA.") (each of these opinions are attached to the *Bettino Cert.* as *Exs. 18, 19,* and *20*).

Accordingly, Plaintiff fails to state a claim for violation of TCCWNA.  If a claimant cannot prove that he received a writing covered by TCCWNA that included information that violated clearly established law, his claim fails as a matter of law. *Dugan*, 231 N.J. at 72.

## C.     Plaintiff Is Not An Aggrieved Consumer Under TCCWNA.

Under the fourth element, "[i]n the absence of evidence that the consumer suffered adverse consequences as a result of the defendant's regulatory violation, a consumer is not an 'aggrieved consumer' for purposes of the TCCWNA." *Spade*, 232 N.J. at 524.  The Supreme Court explicitly differentiates between "consumers who have suffered harm because of a violation . . . from those who have merely been exposed to unlawful language in a contract or writing, to no effect." *Id.*  While the requirement does not impose a showing of pecuniary harm, a claimant must show "adverse consequences" attributable to the unlawful writing.  *Id.* at 524; *see also Truglio v. Planet Fitness, Inc.*, 360 F. Supp. 3d 274, 279 (D.N.J. 2018) ("Plaintiff, whose only alleged harm was entering into a gym membership contract containing an allegedly unlawful cancellation provision, is not an 'aggrieved consumer' capable of obtaining relief under the TCCWNA.").

Plaintiff is not an "aggrieved consumer," as he fails to allege any actual harm or adverse consequences as a result of the issuance of the Form 1099-C.  Rather, Plaintiff claims, in conclusory fashion, that Form 1099-C resulted in Plaintiff's

"owing a fraudulent debt" and incurring "out-of-pocket loss" by paying taxes to the federal government. *Bettino Cert., Ex. 7 (Compl. at ¶¶ 48, 49, 120).* Plaintiff, in legitimately owing on the Judgment since 2012, was not adversely affected by the Form 1099-C. Indeed, the issuance of the Form 1099-C denotes the opposite – that collection activity is ceasing. While Truist Bank informed Plaintiff that it was not cancelling the judgment, at worst for Plaintiff is maintenance of the *status quo* and not an adverse consequence.

To the extent that Plaintiff may or may not have to pay taxes to the federal government in accordance with federal law depending on whether certain exceptions apply, that is not an adverse consequence either. Rather, any tax consequences (if Plaintiff actually pled and was able to show that he incurred additional tax liability) it is merely a product of Plaintiff being required to pay taxes on a benefit, *i.e.* the discontinuance of the collection of a debt. Truist Bank is required to issue the Form 1099-C as a result of the identifiable event, and Plaintiff (in turn) is required, under federal law, to include the Form 1099-C with his tax return and then to make whatever appropriate arguments he has concerning whether or not there are any taxes are actually due and owing to the IRS. The requirement to pay taxes, in accordance with federal law, is not and cannot be an "adverse consequence" within the meaning of TCCWNA.

## <u>CONCLUSION</u>

For all of the reasons stated herein, Truist Bank respectfully requests that the

Court grant its Motion to Dismiss the Complaint with Prejudice.

**REED SMITH LLP**

*/s/ Diane A. Bettino*
Diane A. Bettino, Esquire

*Attorneys for Defendant*
*Truist Bank*

Dated:  July 13, 2020