# EXHIBIT 13

<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EMMETT WALKER and JANNETTE WALKER,** <br><br> *Plaintiffs*, <br><br> v. <br><br> **OCWEN LOAN SERVICING, LLC, et al.,** <br><br> *Defendants*. | **Civil Action No. 16-9157** <br><br> **OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Defendant Ocwen Loan Servicing, LLC's, ("Ocwen") motion to dismiss <u>pro se</u> Plaintiffs Emmet and Jannette Walker's ("the Walkers") Complaint. ECF No. 7. For the reason explained below, the motion is **GRANTED**.

**I.   BACKGROUND**

Nine years ago, the Walkers took out a mortgage of around $290,000 to buy their house in Union, New Jersey. Compl. ¶¶ 3, 9. The mortgage was eventually transferred to Ocwen. <u>Id.</u> ¶ 9. In April 2012, the Walkers modified their mortgage loan, which raised their principal to around $322,000 and contained a deferred principal balance of $134,068.89. <u>Id.</u> ¶ 11.

The Walkers attached the loan modification agreement (the "Agreement") to the Complaint. <u>See</u> Compl. Ex. 1, Agreement, ECF No. 1-1. The Agreement explains that it is a "Shared Appreciation Modification," which allows debtors to make payments on the amount their home is actually worth and possibly forgive the rest of their debt—this remainder is called the "Deferred Principal Balance." <u>See</u> Agreement § 2(A)-(B). In exchange, the debtor will pay the creditor up to 25% of any increase in the house's value from the date of the modification to the date of maturity or when a refinance or sale occurs. <u>Id.</u> § 3(A). So for example, if a loan is

modified to $150,000 and the debtor sells the house for $200,000, then the creditor will receive 25% of $50,000. See Offer Letter at 2, ECF No. 1-1. The Agreement also explains that the Deferred Principal Amount can be completely forgiven in one-third installments over three years as long as the debtor stays current on their payments. Agreement § 2(C). The Agreement provided by the Walkers corroborates the figures for the modified principal and deferred amount stated in the Complaint. See id. § 2(A), (B).

In 2013, Ocwen filed an IRS Form 1099–C, Cancellation of Debt, reporting a cancellation of $134,068.89. Id. ¶ 12. The Walkers allege that Ocwen's filing of the Form 1099–C "require[ed] [the Walkers] to include this alleged loss in [the Walkers'] 2012 income." Id. The same thing happened in 2015: Ocwen again reported a "cancellation" for $134,068.89 and filed another Form 1099–C, which "requir[ed]" the Walkers to include that amount in their income. Id. ¶ 13.

The Walkers allege, however, that Ocwen did not cancel the Walker's debt. That means, they claim, the reported cancellations were false and misleading because they still have to pay the deferred balance. Id. ¶¶ 12-13. They also allege that they were harmed because they were "wrongly subject to federal tax liability in the amount of $134,068.99," they "satisf[ied] their federal tax obligations pursuant to the cancellation of debt reported by [Ocwen]," and they were "subjected to a higher income from which [they] did not actually derive any benefit." Id. ¶¶ 16, 18.

In December 2016, they filed a three-count Complaint against Ocwen for (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), (2) fraud, and (3) misrepresentation.

II.   LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty.

of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  Dismissal is inappropriate "merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id.  The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.  Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In addition, where the plaintiff is proceeding pro se, the Court construes the pleadings liberally and holds them to a less stringent standard than those filed by attorneys.  Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009) (citing Haines v. Kemer, 404 U.S. 519, 520-21 (1972)).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

**III. ANALYSIS**

Ocwen asserts first that the NJCFA claim fails, and argues that the same reasons preclude the other claims too.  "To state a cause of action under the CFA, a plaintiff must allege: (1) an unlawful practice by the defendants; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements . . . ."  Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494, 499 (D.N.J. 2009).

Ocwen argues that none of the three elements is met.  The Court agrees that there is no unlawful practice here, so it ends its analysis at the first element.

The NJCFA defines "unlawful practice" as an "unconscionable commercial practice, deception, fraud, false pretense, false promise, [or] misrepresentation . . . ."  N.J.S.A. § 56:8–2.

3

Where, as here, the alleged violation involves an affirmative act, "intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." Cox v. Sears Roebuck & Co., 138 N.J. 2, 17-18 (1994) (citation omitted). Ultimately, a practice is actionable if it is "misleading and . . . outside the norm of reasonable business practice in that it will victimize the average consumer . . . ." New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 13 (App. Div. 2003) (citation and quotes omitted).

The Walkers claim that it was an unlawful practice for Ocwen to report cancellations of debt on the Form 1099–Cs. It was unlawful, they contend, because Ocwen did not actually cancel the debt and the amount is still due. See, e.g., Compl. ¶ 15. Their theory fails to state a claim. As explained below, the IRS requires Ocwen to file a Form 1099–C to disclose that the parties reached an agreement to forgive the debt, even though the debt was not yet forgiven. Since the Walker's theory of liability stems solely from the fact that Ocwen filed the Form 1099–C, but Ocwen was required by law to file it, Ocwen did not commit an "unlawful practice" under the NJCFA.

The Court's finding requires discussion of the Internal Revenue Code's (the "Code") reporting requirements and the IRS regulations behind the Form 1099–C. Thankfully, the Court of Appeals for the Fourth Circuit has already explicated the issue, see F.D.I.C. v. Cashion, 720 F.3d 169, 178 (4th Cir. 2013), so the Court need not enter this thicket alone. In Cashion, the Fourth Circuit explained as follows: The Code sets forth certain reporting requirements to the IRS, 26 U.S.C. § 6050P, which the IRS regulations have implemented through the Form 1099–C filing requirement:

> any applicable entity . . . that discharges an indebtedness of any person . . . must file an information return on Form 1099–C with the Internal Revenue Service. Solely for purposes of the reporting requirements of [the applicable statute and this regulation], a discharge of indebtedness is deemed to have occurred . . . if and only if there has occurred an identifiable event described in paragraph

> (b)(2) of this section, *whether or not an actual discharge of indebtedness has occurred* on or before the date on which the identifiable event has occurred.

26 C.F.R. § 1.6050P–1(a) (emphasis added). Subsection (b)(2) of 26 C.F.R. § 1.6050P–1 lists eight "identifiable events" that trigger the reporting obligation. One of the identifiable events is discharge by agreement of the parties at less than full consideration. § 1.6050P–1(b)(2)(i)(F).[1]

There are three main takeaways from these regulations: a creditor "must" file a Form 1099–C when one of several events occur; one of those events is an agreement between the parties to discharge the debt at some point in the future; and when a creditor files the form, they are satisfying an IRS reporting obligation, but they are not necessarily discharging the debt. Cashion, 720 F.3d at 178-79. Consistent with that reading, the IRS has explained that it "does not view a Form 1099–C as an admission by the creditor that it has discharged the debt and can no longer pursue collection." Id. at 179 (quoting I.R.S. Info. 2005–0207, 2005 WL 3561135 (Dec. 30, 2005)).

Here, the Walkers claim that Ocwen's filings of the Form 1099–Cs were "false, inaccurate, misleading, and illegal . . . ." Compl. ¶ 15. They claim so because the deferred principal amount was not actually canceled and they still owe it. Based on Cashion's discussion of the regulations, however, neither theory is actionable. In their Agreement, Ocwen promised to forgive the Walker's deferred balance over three years as long as they were up to date on their payments. As such, one of the "identifiable events" in the regulation occurred—i.e., an agreement to discharge a debt at less than full consideration. Since one of the events occurred, section 1.6050P–1(a) required Ocwen to file the Form 1099–C to report the event, even though the debt was not

---

[1] There are seven events that exempt a creditor from filing a Form 1099–C, see 26 C.F.R. § 1.6050P-1(d)(1)-(7), but none appears relevant. The events include, for example, discharge of investment debt, discharge of interest alone, and release of a co-obligor. Id.

5

discharge at that moment. And Ocwen was still allowed to collect on the deferred balance after filing the Form 1099–C. See I.R.S. Info. 2005–0207. Based on these requirements, Ocwen's Form 1099–C was not false, inaccurate, or misleading. It was a required business practice.

That is not to say that these technical rules are easily understood by the common consumer. But the Form 1099–C tries to mitigate the confusion. In particular, it contains an instructions section that attempts to decipher the rules. The one-page form Ocwen sent to the Walkers contains a section marked "Instructions for Debtor." Compl. Ex. 3. The section states, "You received this form because . . . an applicable financial entity (a creditor) has discharged (canceled or forgiven) a debt you owed, or because an identifiable event has occurred that either is or is deemed to be a discharge of a debt of $600 or more." Id. It then explains when the debtor does and does not have to report the discharged amount as income: "If a creditor has discharged a debt you owed, you are required to include the discharged amount in your income," but "you may not have to include all of the canceled debt in your income . . . If an identifiable event has occurred but the debt has not actually been discharged, then include any discharged debt in your income in the year that it is actually discharged . . . ." Id. Thus, the form contemplates a situation where a creditor could list an amount in the Form 1099–C but that amount would not yet count as taxable income to the debtor. In other words, it attempts to avoid the exact misunderstanding that befell the Walkers by warning them that their debt may not have been forgiven yet.

Importantly, there does not appear to be any surrounding circumstances that could have misled the Walkers into thinking their debt was actually discharged and no longer owed. There are no allegations that Ocwen had any other contact with the Walkers about the discharge beyond the Agreement itself. And the Agreement's explanation of the discharge is relatively clear and concise. The Agreement and the FAQ section discuss the deferred principal, explain that it could

be forgiven, and say how that could happen. See Agreement § 2(c); FAQ at 2. The documents also explain that the forgiveness would not occur right away, but over three years. Moreover, none of the documents discusses early forgiveness of the debt. So when the Walkers received the first Form 1099–C in 2013—only a year after they signed the Agreement—it was not possible for the entire debt to be forgiven. Yet they claimed the full amount as income. See Compl. ¶ 12.

In their brief, the Walkers concede that the Form 1099–C does not say that the creditor actually canceled the debt. They argue instead that the form evidenced Ocwen's fraudulent intent. They state, "though it is true that a debt does not have to be discharged to be reported on a 1099C [sic], there has to be some *intention* to discharge on the creditor's part. Ocwen clearly does not have any intention to cancel the debt." Opp'n Br. at 4 (original emphasis), ECF No. 9. There are two problems with their argument. First, it is a different theory from the one in their Complaint. Whereas the Complaint states that the Form 1099–C was false because the debt was not canceled, the brief states that it was false because Ocwen will not honor its agreement to discharge the debt in the future. The Court's review is limited to the allegations in the Complaint; it cannot consider new theories that are raised for the first time in opposition briefs. Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988). Second, nothing in the Complaint or brief suggest that Ocwen intends to renege on its promise to discharge the debt if the Walkers satisfy their payment obligations.

In sum, it appears that Walker's overpayment of income tax did not flow from anything Ocwen did. Rather, it flows from the complicated rules of the Code and the IRS regulations, and the Walkers' misreading of the instructions on the Form 1099–C itself. Their mistake is understandable, but it is not actionable under the NJCFA.

For the same reasons, the Walker's fraud and misrepresentation claims fail. Under New Jersey law, both causes of action require some form of misrepresentation or incorrect statement. Kaufman v. i-Stat Corp., 165 N.J. 94, 109 (2000) (citing elements for both claims). Since Ocwen's Form 1099–C contains neither a misrepresentation nor incorrect statement, those counts are dismissed as well.

IV. CONCLUSION

For the reasons set forth herein, the motion to dismiss is **GRANTED**. The Complaint is **DISMISSED WITHOUT PREJUDICE**.

Date: July 11, 2017         /s Madeline Cox Arleo
                            **Hon. Madeline Cox Arleo**
                            **United States District Judge**