# EXHIBIT 17

2020 WL 1320725
Only the Westlaw citation is currently available.
United States District Court, D. Kansas.

Stephen ROBBINS, Plaintiff,
v.
DYCK O'NEAL, INC., Defendant.

Case No. 18-2623-DDC-TJJ
|
Signed 03/20/2020

**Attorneys and Law Firms**

Mark Everett Parrish, Boyd, Kenter, Thomas & Parrish, LLC, Joshua A. Sanders, Independence, MO, Keith N. Williston, The Williston Law Firm, LLC, Blue Springs, MO, for Plaintiff.

Anna Wlodek Moncrief, Louis J. Wade, McDowell, Rice, Smith & Buchanan, PC, Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

Daniel D. Crabtree, United States District Judge

 *1 This matter comes before the court on defendant Dyck O'Neal, Inc.'s Motions to Dismiss or in the alternative, for Judgment on the Pleadings on Counts I (Doc. 53) and II (Doc. 34) of Plaintiff's Amended Complaint. Plaintiff filed a Response to each motion (Docs. 42 & 56), and defendant filed a Reply to each of plaintiff's Responses (Docs. 48 & 57). The court considers both motions and the parties' various arguments below and, for reasons explained by this Order, denies defendant's motions.

### I. Factual Background

When considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c),[1] the court accepts the well-pleaded factual allegations in the complaint as true and views them in the light most favorable to plaintiff. *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000). The court applies this standard to the following facts asserted in plaintiff's Amended Complaint (Doc. 31).

Plaintiff is an individual residing in Olathe, Kansas. Doc. 31 at 2. Plaintiff took out a loan secured by a mortgage with TruHome Solutions, LLC ("TruHome"). *Id.* at 8. TruHome foreclosed on the mortgage (after plaintiff defaulted). *Id.* The Federal Home Loan Mortgage Corporation ("Freddie Mac") then issued a Form 1099-C for the mortgage. *Id.* at 9. A Form 1099-C contains several important fields that lenders or assignees complete to provide information to the IRS and taxpaying consumers. *Id.* at 6. The 1099-C issued by Freddie Mac identified the taxable event as a category "D"—*i.e.*, a foreclosure election event. *Id.* at 9. Plaintiff asserts that Freddie Mac had released him from liability to repay the deficiency balance as evidenced by the 1099-C's identification of a taxable event. *Id.* After receiving the 1099-C, plaintiff reported the income to the IRS and paid income tax on it. *Id.*

Defendant is a debt collector who purchases debts that are in default, including debts involving foreclosed mortgages, with the intent to enforce the alleged debts. *Id.* at 3. Defendant buys or collects on defaulted mortgage debt from the Federal National Mortgage Association ("Fannie Mae") and Freddie Mac. *Id.* at 5. In 2017, defendant notified plaintiff that he still owed a deficiency on his mortgage. *Id.* at 9. Plaintiff alleges the debt was cancelled when the Form 1099-C was issued, and that defendant wrongfully is pursuing the debt. *Id.* at 6, 9–10.

Count I of plaintiff's Amended Complaint alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x. Count II alleges violations of the Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623–50-643. Defendant moves to dismiss both counts under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The court's analysis identifies some additional facts alleged to support these claims.

### II. Legal Standard

 *2 Courts evaluate a Rule 12(c) motion using the same standard used to evaluate a motion to dismiss under Rule 12(b)(6).[2] *Borde v. Bd. of Cty. Comm'rs*, 514 F. App'x 795, 799 (10th Cir. 2013) (citing *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000)). The court can grant a motion for judgment on the pleadings only when the factual allegations in the complaint fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,' " it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' " which, as the Supreme Court explained, " 'will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

"Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.' " *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)). Although the court must assume that the complaint's factual allegations are true, it is " 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Id.* at 1263 (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). " 'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' " to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

### III. Analysis

Defendant asks the court to dismiss the claims asserted by Counts I and II of plaintiff's Amended Complaint. The court addresses the two claims separately, below. Both claims implicate a common dispositive issue: Has plaintiff alleged sufficiently that his debt was discharged?

#### A. Count I: Fair Credit Reporting Act

Count I of plaintiff's Amended Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"). "Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007). Among other things, the FCRA imposes various obligations on "furnishers"—the term the act uses to define persons who provide financial and credit information to "credit reporting agencies," called CRAs in this Order. *Brunson v. Provident Funding Assocs.*, 608 F. App'x 602, 611 (10th Cir. 2015); 15 U.S.C. § 1681s-2.

More specifically, 15 U.S.C. § 1681s-2(b)(1) imposes certain requirements on furnishers of information who receive notice of a consumer dispute from a CRA. This provision requires the furnisher to:

> (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1178–79 (10th Cir. 2013) (quoting *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009)); *see also* 15 U.S.C. § 1681s-2(b)(1)(A)–(E) (describing the general duties of furnishers once they receive notice of a dispute). If a furnisher fails to comply with these obligations, the FCRA authorizes a consumer to bring a private suit. *Pinson*, 316 F. App'x at 751. As the Tenth Circuit has explained:

> **\*3** The furnisher's duty to investigate arises only after a CRA notifies the furnisher of a dispute and, conversely, does not arise when notice is provided directly from a consumer. Thus, a consumer cannot recover under § 1681s-2(b) if [he does] not initiate the process for recovery by notifying a CRA of the dispute.

*Willis v. Capital One Corp.*, 611 F. App'x 500, 502 (10th Cir. 2015) (internal citations & quotation marks omitted).

When a furnisher receives notice of a dispute from a CRA, it must make a " 'reasonable' investigation" of the dispute. *Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016). The Tenth Circuit has defined a " 'reasonable'

investigation" as " 'one that a reasonably prudent person would undertake under the circumstances.' " *Id.* (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014)). Whether an investigation qualifies as a reasonable one under the FCRA "turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute." *Id.* (internal citations and quotation marks omitted). The Tenth Circuit has recognized that " '[w]hether a defendant's investigation is reasonable is a factual question normally reserved for trial....' " *Id.* (quoting *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

Plaintiff's Amended Complaint alleges that when defendant began trying to collect debt from plaintiff, plaintiff filed a dispute with a CRA (Experian) because Freddie Mac previously had released plaintiff from liability. Doc. 31 at 9. In his dispute, plaintiff included notice that he had received a 1099-C. *Id.* at 12. Even after notifying defendant—a furnisher—of the dispute, plaintiff alleges he continued to receive notice that a balance was due. *Id.* at 9. Defendant contacted plaintiff's counsel asking for more information "to be reviewed by 'the committee' " but, to date, still claims that plaintiff owes a debt. *Id.* at 9. Plaintiff claims that defendant reported the debt inaccurately and failed to conduct a reasonable investigation as the FCRA requires. *Id.* at 12. Specifically, plaintiff asserts that defendant failed to perform a reasonable investigation because it did not review any tax reporting information for the alleged debt. *Id.* Plaintiff alleges defendant did not contact Freddie Mac to determine if the debt was cancelled and a 1099-C issued. *Id.* Plaintiff asserts that defendant's actions further violated the FCRA by continuing to report and pursue the debt. *Id.* at 12–13.

Defendant claims that it deserves judgment on the pleadings because defendant never reported inaccurate data. Doc. 53 at 1. Defendant argues the Amended Complaint gives the court no reason to believe defendant is liable, because receipt of a 1099-C does not mean plaintiff's debt was discharged. So, defendant asserts, plaintiff has not alleged properly the debt was discharged and thus fails to state a claim for relief because he cannot show that defendant's reporting was inaccurate. Defendant also contends that plaintiff's sole allegation of discharge is the filing of a 1099-C. Doc. 48 at 5; *see* Doc. 57 at 1 ("Plaintiff asserts no new or different analysis in relation to his FCRA claim than those addressed in Defendant's Motion to Dismiss [Count II].... Defendant ... incorporates by this reference its briefing on [Count II]."). And, defendant argues that a Form 1099-C, standing alone, is insufficient to allege a debt is discharged. Doc. 57 at 1.

**\*4** Our Circuit hasn't specifically addressed whether issuing a 1099-C creates, in and of itself, prima facie evidence that a debt has been discharged. However, as the parties pointed out in their briefs on both Counts I and II, there is a well-developed majority and minority approach on this issue among other jurisdictions.

The majority approach concludes that a Form 1099-C alone is insufficient evidence to show a debt was discharged. *See, e.g.*, *FDIC v. Cashion*, 720 F.3d 169, 178 (4th Cir. 2013) (finding the majority approach "ultimately more persuasive," relying "principally on the language of the IRS regulations and the purpose of a Form 1099-C"); *In re Riley*, 478 B.R. 736, 744 (Bankr. D.S.C. 2012) (finding that the 1099-C was "not dispositive" and that there was no evidence the debt had been satisfied); *Flathead Bank of Bigfork v. Masonry by Muller, Inc.*, 385 Mont. 214, 383 P.3d 215, 217–19 (2016). This majority approach considers a Form 1099-C merely as an IRS reporting requirement but "not a means of accomplishing an actual discharge of the debt." *Cashion*, 720 F.3d at 178–79. Courts adopting this majority view cite and rely on the regulation's plain language and IRS information letters, which provide that a 1099-C is issued to comply with an IRS reporting requirement and is required even when the debt is not discharged. *See In re Sarno*, 463 B.R. 163, 168 (Bankr. D. Mass. 2011) ("It is apparent from [the IRS] regulation that a form 1099-C is 'informational' and that it must be filed 'whether or not an actual discharge of indebtedness has occurred.' ").

In contrast, a minority of courts have found that a Form 1099-C alone is prima facie evidence of a discharge of debt. *See, e.g.*, *Amtrust Bank v. Fossett*, 223 Ariz. 438, 224 P.3d 935, 937 (Ariz. Ct. App. 2009). Courts adopting the minority position do so largely because of equitable concerns. *See Franklin Credit Mgmt. Corp. v. Nicholas*, 73 Conn.App. 830, 812 A.2d 51, 63 (2002) ("[I]t would be inequitable for the defendant to incur tax consequences as a result of the form 1099-C and to permit the plaintiff to continue to hold him liable for the debt."); *In re Crosby*, 261 B.R. 470, 474 (Bankr. D. Kan. 2001) ("The ... tax consequences of the form make it inequitable to allow the Credit Union to enforce its claims against the debtors. Until the Credit Union corrects or withdraws the 1099-C it mistakenly filed about each debtor, it cannot enforce its claim against that debtor...."). Courts embracing this approach reason that it is inequitable to "permit a creditor to collect the debt after having received the benefit of the 'charge-off' of the debt from filing the

Form 1099-C." *Cashion*, 720 F.3d at 178 (collecting cases). Also, courts following the minority approach often refuse to consider IRS opinion letters, noting that these letters are not entitled to "*Chevron*-style deference." *See, e.g.*, *In re Reed*, 492 B.R. 261, 270 (Bankr. E.D. Tenn. 2013) (finding that interpretations in agency opinion letters "lack the force of law" and do not warrant *Chevron*-style deference; rather, opinion letters are "entitled to respect" under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), "but only to the extent that those interpretations have the power to persuade" (internal citations and quotation marks omitted)).

Predictably, each party urges the court to adopt the view favoring its side of the issue. But the court concludes that it need not determine which approach to follow at this stage. All the cases cited above considered the issue at the summary judgment stage. Here, defendant moves for judgment on the pleadings under Rule 12(c). This increment in the pleadings requires the court to decide only whether plaintiff plausibly has stated a claim upon which relief can be granted based on the facts alleged in the Amended Complaint. *Silver v. Glass*, 459 F. App'x 691, 695–96 (10th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). At this stage, then, the question is whether plaintiff plausibly has alleged his debt was discharged—and not whether plaintiff can muster evidence to support his claim. *See Springer v. Albin*, 398 F. App'x 427, 431 (10th Cir. 2010).

**\*5** Under the pleading standard set out in Federal Rule of Civil Procedure 8(a)(2), plaintiff plausibly has stated a claim. Specifically, plaintiff asserts that defendant is a "furnisher" as the FCRA defines that term. Doc. 31 at 12. Plaintiff also asserts that he notified a CRA of the allegedly inaccurate reporting, including that he had received a 1099-C. *Id.* And, plaintiff alleges that defendant failed to perform a reasonable investigation after defendant learned of the dispute and the existence of the Form 1099-C. *Id.* Plaintiff specifically points out that the 1099-C was marked with the identifiable event "D." *Id.* at 6, 9. According to the IRS, an identifiable event "D" marked on a Form 1099-C is "[a] cancellation or extinguishment when the creditor elects foreclosure remedies that by law extinguish or bar the creditor's right to collect the debt." 2020 IRS Instructions for Forms 1099-A and 1099-C, at 4, https://www.irs.gov/pub/irs-pdf/i1099ac.pdf; *see also* Doc. 31 at 6. Plaintiff asserts that despite Freddie Mac's identification of event "D," and the cancelled debt, defendant wrongfully continues pursuing the debt. *Id.* at 6, 9–10.

At least one other court has held that the identifiable events marked within a Form 1099-C plausibly alleges discharge, even if merely filing the form does not. *See Baker v. Am. Fin. Servs. Inc.*, No. 3:16-CV-00065-GNS, 2016 WL 4030964, at \*3 (W.D. Ky. July 26, 2016) ("The parties urge the Court to adopt one of two views regarding the legal effect of a Form 1099-C ... [but] it [is] unnecessary to adopt either view in this case. The Court considers only whether [plaintiff] has plausibly stated a claim.... [A]t this stage the Court finds Plaintiff's allegation of discharge is plausible.") (internal citations omitted). Here, though discovery ultimately may prove plaintiff's debt was not discharged the court, at this stage of the proceedings, can draw a reasonable inference from plaintiff's allegations that the debt was discharged. Consequently, the court concludes that the facts alleged in plaintiff's Amended Complaint state a plausible claim that defendant's actions did not comport with the obligations placed on it by the FRCA. The court thus denies defendant's Motion for Judgment on the Pleadings on Count I.

**B. Count II: Kansas Consumer Protection Act**
Count II alleges violations of the Kansas Consumer Protection Act ("KCPA"). This act prohibits suppliers in the state of Kansas from engaging in deceptive or unconscionable acts or practices "in connection with" consumer transactions. Kan. Stat. Ann. §§ 50-626(a), 50-627(a). To bring a cause of action under the KCPA, a plaintiff must allege that the parties meet the KCPA's definitions of "consumer"[3] and "supplier,"[4] that the consumer and supplier were involved in a "consumer transaction,"[5] that the consumer sustained an injury from the supplier's alleged violations,[6] and that the supplier's actions were deceptive[7] or unconscionable.[8]

**\*6** Kan. Stat. Ann. § 50-626(b) lists several examples of conduct that is deceptive per se. Plaintiff explicitly relies on subsection (b)(2), which prohibits "willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact." Kan. Stat. Ann. § 50-626(b)(2). The Kansas Supreme Court has reasoned that the word "willful" means something more than "intentional;" it must include an "intent to harm the consumer." *Unruh v. Purina Mills, LLC*, 289 Kan. 1185, 221 P.3d 1130, 1139 (2009) (internal citation and quotation marks omitted).

K.S.A 50-627(b) likewise provides a list of examples of unconscionable conduct. The cited examples are not intended to identify every act that will qualify as unconscionable.

Plaintiff specifically relies on subsections (b)(1) and (6), which state that the "supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor," and that the "supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment[.]" Kan. Stat. Ann. § 50-627(b)(1), (6).

Plaintiff contends that defendant's actions are deceptive under Kan. Stat. Ann. § 50-626 and unconscionable under Kan. Stat. Ann. § 50-627. Doc. 31 at 15. He alleges that defendant forged a 1099-C and filed it with the IRS to deceive plaintiff into paying defendant amounts that were discharged. Doc. 31 at 11. Plaintiff also asserts that defendant acted deceptively and unconscionably when it continued collection efforts despite having no legal right to collect and without first acquiring sufficient documentation to know if plaintiff indeed owed the debt. *Id.* More specifically, plaintiff asserts that defendant failed to provide accurate information to the IRS and violated the duty of good faith and fair dealing by asserting that plaintiff still owed a debt when defendant lacked sufficient documentation or evidence to know whether the debt was discharged. And, plaintiff alleges, defendant subjected plaintiff to "foreseeable inconsistent adjudications of the status of [his] debts: the IRS considers them 'waived' or 'canceled,' but [defendant] seeks to treat these debts as 'still owed.'" *Id.*

Defendant moves for judgment on the pleadings against the KCPA claim, making the same argument that it made against plaintiff's FCRA claim. Doc. 34 at 1. Defendant asserts that plaintiff's KCPA claim fails as a matter of law because he "relies solely upon his allegation that [defendant] attempted to collect upon a debt after the issuance of a 1099-C." Doc. 48 at 1; *see also* Doc. 34 at 1. Defendant argues that the facts alleged in plaintiff's Amended Complaint solely consist of "unsupported assumptions," because plaintiff relies only on the Form 1099-C to demonstrate that his debt was discharged. Doc. 48 at 1. Thus, defendant asserts that plaintiff's Amended Complaint fails to allege any facts showing actual discharge or cancellation of the debt. Doc. 34 at 3–6.

As discussed above, at this juncture the court declines to adopt either of the two positions deciding the legal significance of a Form 1099-C. At this stage, the court finds plaintiff's factual allegations support the necessary elements of a KCPA claim. Specifically, plaintiff's Amended Complaint pleads facts sufficient to allege that he qualifies as a "consumer" capable of bringing a cause of action against defendant, a "supplier" under the KCPA. *See* Doc. 31 at 14. Plaintiff states a plausible claim that the debt was part of a consumer transaction, that his debt was discharged as manifested by the identifiable event "D" marked on the Form 1099-C, and that defendant wrongfully is pursuing the allegedly discharged debt by false representations to the IRS/CRAs that the debt is still owed. Plaintiff also properly asserts that defendant's actions have aggrieved him, alleging he has sustained monetary damage such as "financial loss, expenditure of significant time, energy and out-of-pocket costs...." *Id.* at 16. Specifically, plaintiff reported the discharged debt as income to the IRS after receiving the Form 1099-C, and afterward paid taxes on this income. *Id.* at 9. Plaintiff also asserts he has sustained emotional harm, including "considerable distress, mental anguish, worry, frustration, fear and embarrassment...." *Id.* at 16. These facts suffice to state a plausible claim that plaintiff was aggrieved and sustained injury from defendant's alleged KCPA violations. Assuming these allegations are true, plaintiff plausibly has alleged that defendant's actions were deceptive under Kan. Stat. Ann. § 50-626 and unconscionable under Kan. Stat. Ann. § 50-627. Thus, the court denies defendant's Motion for Judgment on the Pleadings on Count II.

**\*7** **IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motions for Judgment on the Pleadings on Counts I (Doc. 53) and II (Doc. 34) of Plaintiff's Amended Complaint are denied.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2020 WL 1320725

Footnotes

1. The court construes defendant's two motions as motions for judgment on the pleadings because defendant filed the motions (Docs. 34 & 53) after filing its Answer (Doc. 32). *See* Borde v. Bd. of Cty. Comm'rs, 514 F. App'x 795, 799 n.5 (10th Cir. 2013). Thus, the pleadings had closed when defendant filed the motions. Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.").

2   Again, the court considers both of defendant's motions as ones seeking judgment on the pleadings, *supra* note 1.

3   Kan. Stat. Ann. § 50-624(b) defines a consumer as "an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultural purposes."

4   Kan. Stat. Ann. § 50-624(l) defines a "supplier" as "a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer."

5   Kan. Stat. Ann. § 50-624(c) defines a "consumer transaction" as "a sale, lease, assignment or other disposition for value of property or services within this state ... to a consumer...."

6   To recover damages under the KCPA provisions, the consumer must be "aggrieved." *See* Kan. Stat. Ann. §§ 50-634(b) & 50-636(a); *see also Queen's Park Oval Asset Holding Tr. v. Belveal*, Nos. 114,849, 115,246, 2017 WL 2001609, at *4 (Kan. Ct. App. May 12, 2017) (explaining that "[t]he requirement that the party be aggrieved is mandatory" and to be aggrieved a plaintiff must show "a causal connection between the KCPA violation and the plaintiff's alleged damage" (internal quotations and citation omitted)); *Schneider v. Liberty Asset Mgmt.*, 45 Kan.App.2d 978, 251 P.3d 666, 671 (2011). A consumer is "aggrieved" when his "legal right is invaded by an act complained of or [his] pecuniary interest is directly affected by the [court's] order. This term refers to a substantial grievance, a denial of some personal or property right, or the imposition upon a party of some burden or obligation." *Finstad v. Washburn Univ.*, 252 Kan. 465, 845 P.2d 685, 691 (1993) (internal quotations and citations omitted).

7   Kan. Stat. Ann. § 50-626.

8   Kan. Stat. Ann. § 50-627.

---

**End of Document**    © 2020 Thomson Reuters. No claim to original U.S. Government Works.