# EXHIBIT 19

Case 1:20-cv-03053-RMB-AMD   Document 16-21   Filed 07/13/20   Page 2 of 12 PageID: 319

Cannon v. Ashburn Corporation, Not Reported in Fed. Supp. (2016)
2016 WL 7130913

2016 WL 7130913
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey,
Camden Vicinage.

Kyle CANNON, Lewis Lyons, and Dianne Lyons, individually and on behalf of all others similarly situated, Plaintiffs,
v.
ASHBURN CORPORATION, et al., Defendants.

Civil No. 16-1452 (RMB/AMD)
|
Signed 12/07/2016

**Attorneys and Law Firms**

James E. Cecchi, Esq., Lindsey H. Taylor, Esq., Carella Byrne Cecchi Olstein Brody & Agnello, P.C., 5 Becker Farm Road, Roseland, NJ 07021, Attorneys for Plaintiffs Kyle Cannon, Lewis Lyons, and Dianne Lyons, individually and on behalf of all others similarly situated.

James M. McClammer, Esq., Nicole R. Moshang, Esq., Suzanne Ilene Schiller, Esq., Manko Gold Katcher & Fox LLP, 401 City Avenue, Suite 901, Bala Cynwyd, PA 19004, Attorneys for Defendants Ashburn Corporation and Wines 'Til Sold Out (WTSO.com).

**OPINION**

BUMB, UNITED STATES DISTRICT JUDGE:

*1 THIS MATTER having come before the Court upon the Motion to Dismiss or, in the alternative, to Strike by Defendants Ashburn Corporation d/b/a Wines 'Til Sold Out and WTSO.com (together, the "Defendants") [Docket No. 14]. Defendants seek the dismissal of the Complaint [Docket No. 1] filed by Plaintiffs Kyle Cannon, Lewis Lyons, and Dianne Lyons, on behalf of themselves and all others similarly situated (collectively, the "Plaintiffs"), for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Alternatively, Defendants request that the Court strike Plaintiffs' class allegations. For the reasons set forth below, the Defendants' Motion will be granted, in part, and denied, in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**[1]

This dispute stems from an allegedly fraudulent scheme by Defendants to "advertise false original prices and false discounts for wines sold on the WTSO.com website in order to induce consumers to purchase certain wines." Compl. ¶ 2. Plaintiffs claim that "Defendants misrepresented the existence, nature and amount of price discounts to consumers on the WTSO.com website by purporting to offer specific percentage discounts from expressly referenced but false former original prices for the wine products at issue." Compl. ¶ 3.

Defendants operate WTSO.com, a "wine flash-site" that sells bottles of wine on the internet, which are often advertised at steep discounts. Compl. ¶¶ 22-23. Plaintiffs are individuals who have purchased wine from Defendants via WTSO.com. Compl. ¶¶ 16-18, 40-42.

On WTSO.com, each bottle of wine offered for sale is accompanied by an "Original Price", a "Best Web Price (with Shipping)", and "Our Price (Delivered)," as well as the percentage discount at which the wine is purportedly being offered. Compl. ¶ 23. At times, however, the "Best Web Price (with Shipping)" is listed as "$N/A" because the wine in question is not available elsewhere. Compl. ¶ 25(b). Accordingly, in Plaintiffs' view, the original prices listed and the purported percentage discounts for these wines are false or fabricated, as "there is, in reality, no 'Original Price' because there can be, *a fortiori*, no discount from a non-existent original price." Compl. ¶¶ 29-33. Plaintiffs provide thirty examples of wines offered pursuant to this alleged fraudulent scheme. Compl. ¶ 28, 33. According to the Complaint, Plaintiffs have personally purchased many, but not all, of these wines. Compl. ¶¶ 40-42.

For example, Plaintiffs describe a 2013 Castlebank Vineyards Vivian's Vineyard Dry Creek Valley Cabernet Sauvignon offered for sale by Defendants. The original price for this bottle was listed $35 and the bottle was offered at the price of $13.99, a purported 60% discount. Plaintiffs allege, however, that this wine is only offered on WTSO.com and, therefore, has no original price aside from the $13.99 price. Compl. ¶ 26.

*2 "On other occasions, and as part of a separate but equally deceptive and misleading scheme, research, including inquiry of the winemaker and/or the winery, or pricing history, demonstrates that the true and real 'Original Price' is significantly lower than the 'Original Price' advertised and

Case 1:20-cv-03053-RMB-AMD   Document 16-21   Filed 07/13/20   Page 3 of 12 PageID: 320

Cannon v. Ashburn Corporation, Not Reported in Fed. Supp. (2016)
2016 WL 7130913

cited by Defendants." Compl. ¶ 35. For these wines, the actual retail prices are lower than the value advertised by Defendants. For example, Defendants offer for sale a 2007 Clarendon Hills Astralis Syrah, valued at $350, for the price of $119.99, a purported 66% discount. Plaintiffs, however, allege that, according to two reputable wine magazines, the Astralis wine is valued at $225 per bottle, not $350 as stated by Defendants. Compl. ¶ 36. Additionally, Defendants offered a bottle of Mer Soleil Santa Barbara County Reserve Chardonnay 2012 by Caymus Vineyards, purportedly valued at $44.99, for the price of $27.99. However, according to Plaintiffs, the original price of this bottle is $32, not $44.99. Compl. ¶ 36.

Based upon these allegations of fabricated or inflated original prices and discounts, Plaintiffs filed the instant putative class action suit on behalf of themselves and others who have purchased wines from the Defendants that were offered with fabricated or inflated original prices. Plaintiffs claim that they would not have purchased the wines in question in the absence of Defendants' alleged misrepresentations regarding the original prices of the wines and the purported discounts. The Complaint sets forth the following counts: (I) violation of New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("NJCFA"); (II) unjust enrichment; (III) fraud; (IV) breach of contract; (V) violation of New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14, et seq. ("TCCWNA").

## II. MOTION TO DISMISS STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, a district court should conduct a three-part analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Third, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal citations, quotations, and modifications omitted) (quoting *Iqbal*, 556 U.S. at 675, 679).

Rule 12(b)(6) requires the district court to "accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." *Bistrian*, 696 F.3d at 358 n. 1. Only the allegations in the complaint and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994) (citing *Chester Cty. Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990)). A court may also "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

**\*3** Finally, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). As such, the permissible role of a plaintiff's opposition brief is merely to explain the "legal theories ... that [ ] find support in the allegations set forth in the complaint." See id.

## III. LEGAL ANALYSIS

### A. Standing

Case 1:20-cv-03053-RMB-AMD   Document 16-21   Filed 07/13/20   Page 4 of 12 PageID: 321

Cannon v. Ashburn Corporation, Not Reported in Fed. Supp. (2016)
2016 WL 7130913

In the Complaint, Plaintiffs allege that they have purchased certain bottles of wine from Defendants, "to name as examples only some of the wine that were deceptively advertised and offered for sale by Defendants and purchased by" each Plaintiff. Compl. ¶¶ 40-42. These wines were sold pursuant to the first allegedly fraudulent scheme, wherein wines that have no original price because they are sold exclusively on WTSO.com are advertised at a fabricated value. Plaintiffs, however, do not specifically allege that they have personally purchased each wine sold as part of the alleged scheme. Additionally, Plaintiffs have not alleged that they have purchased any wines sold pursuant to the second allegedly fraudulent scheme involving inflated or exaggerated prices.

Defendants argue that, as a result, Plaintiffs do not have standing to bring claims regarding any wines that they did not personally purchase. Plaintiffs respond that "this is a question for class certification" and that it would be premature to resolve the question at the pleadings stage. Pls. Opp. Br. at 15 [Docket No. 20].

Article III of the United States Constitution requires that a plaintiff have standing to bring a suit in federal court. To establish standing, a plaintiff must show (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 455 (3d Cir. 2003). Additionally, "[i]t is well settled that 'to be a class representative on a particular claim, the plaintiff himself must have a cause of action on that claim.'" *Monaco v. Mitsubishi Motors Credit of Am., Inc.*, 34 Fed.Appx. 43, 45 (3d Cir. 2002) (quoting *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987)). The United States Supreme Court, however, has recognized that "there is clearly an inherent tension between the issues of standing and adequate representation for class certification." *Durso v. Samsung Elecs. Am., Inc.*, 2013 WL 5947005, at *5–6 (D.N.J. Nov. 6, 2013) (citing *Gratz v. Bollinger*, 539 U.S. 244, 263 n. 15 (2003) ("Although we do not resolve here whether such an inquiry in this case is appropriately addressed under the rubric of standing or adequacy, we note that there is a tension in our prior cases in this regard.")).

Accordingly, "[i]n the class action context ... traditional notions of standing are not completely informative of what claims may be asserted." *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005) (citing *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1088-89 (3d Cir. 1975) (holding that plaintiff could assert claim on behalf of class even though she lacked standing to assert that claim because she had standing to assert two other closely related direct claims against defendant)). The Supreme Court has counseled that, because the resolution of class certification issues "is logically antecedent to the existence of any Article III issues, it is appropriate to reach them first." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 612 (1997).

**\*4** In addressing whether a plaintiff may assert claims in a putative class action regarding products the plaintiff did not personally purchase or use, courts in this District generally hold that "the standing issue becomes ripe only in the context of a motion for class certification." *Burke v. Weight Watchers Int'l, Inc.*, 983 F. Supp. 2d 478, 482 (D.N.J. 2013); accord *Luppino v. Mercedes-Benz USA, LLC*, 2013 WL 6047556, at *5–6 (D.N.J. Nov. 12, 2013); *Durso*, 2013 WL 5947005, at *5–6 (finding "dismissal of Plaintiffs' claims related to products Plaintiffs did not purchase or defects Plaintiffs did not suffer would be premature" on motion to dismiss); *Stewart v. Smart Balance, Inc.*, 2012 WL 4168584, at *16 (D.N.J. June 26, 2012) (holding that "even though [plaintiffs] do not have standing to challenge [products they did not purchase] themselves, dismissal is inappropriate at this stage of the litigation because whether they may represent a class of plaintiffs who do have standing is not before the Court.").

Additionally, a plaintiff may have standing to assert claims on behalf of putative class members regarding products they did not personally purchase where (1) the basis of the claims is the same, (2) the products are closely related, and (3) the claims are against the same defendants. *Stewart*, 2012 WL 4168584, at *15-16 (citing *Haas*, 526 F.2d at 1088-89). Several courts have followed the reasoning set forth in Stewart and Haas. See, e.g., *Bedi v. BMW of N. Am., LLC*, 2016 WL 324950, at *7 (D.N.J. Jan. 27, 2016); *Cox v. Chrysler Grp., LLC*, 2015 WL 5771400, at *14–15 (D.N.J. Sept. 30, 2015); *In re Gerber Probiotic Sales Practices Litig.*, 2014 WL 5092920, at *4-6 (D.N.J. Oct. 10, 2014) ("by following the same approach this Court took in Stewart which was based on the Third Circuit's ruling in Haas, the Court finds dismissal of Plaintiff's claim, based upon a failure to name a Plaintiff who personally bought one of the products at issue, inappropriate at this stage of the litigation."); *In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig.*, 2013 WL 6450701, at *4 (D.N.J. Dec. 9, 2013); *Durso*, 2013 WL 5947005, at *5-6; Burke, 983 F. Supp. 2d at 482; see also *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012) ("When a class includes purchasers of a variety of different products, a named plaintiff

Case 1:20-cv-03053-RMB-AMD   Document 16-21   Filed 07/13/20   Page 5 of 12 PageID: 322

Cannon v. Ashburn Corporation, Not Reported in Fed. Supp. (2016)
2016 WL 7130913

that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types."). The Court is persuaded by the reasoning of these courts.

As to all of the wines that allegedly are sold only by Defendants and which, therefore, have no actual original price distinct from the sale price, the basis of Plaintiffs' claims is the same. Plaintiffs allege that Defendants sold several wines pursuant to a fraudulent scheme in which Defendants advertised that the wines were valued and sold elsewhere at a certain amount and that the wines were not, in fact, worth or sold at that price. All these products are closely related as they are bottles of wine sold by the Defendants that are not sold elsewhere. Finally, the claims are all asserted against the same Defendants, regardless of the particular wine.

Accordingly, the Court finds that dismissal of any claims under this theory for lack of standing is inappropriate at this early stage. It is undisputed that the Plaintiffs have standing to bring claims regarding the wines with no original price that they have themselves purchased. Whether Plaintiffs also have standing to pursue claims regarding other wines is a question not yet ripe for resolution. The Court will consider this at the class certification stage, if necessary.

Plaintiffs, however, also allege "a separate but equally deceptive and misleading scheme," wherein Defendants offer wines, which are sold elsewhere, with an inflated or exaggerated original price. Compl. ¶ 35 (emphasis added). According to the language in the Complaint, this is a distinct basis or theory of liability. Wines sold as part of this scheme cannot be grouped together with those sold in the first scheme. Plaintiffs, however, have not alleged that they have purchased any wines sold pursuant to this theory. Therefore, as currently pled, Plaintiffs do not have standing to pursue claims regarding any wines sold pursuant to this "separate but equally deceptive and misleading scheme," as the allegations do not establish that they themselves have purchased any such wines. Any claims premised on this theory of liability are dismissed without prejudice. The Court, however, will allow Plaintiffs to amend their pleadings to cure this deficiency. [2]

### B. Failure to State a Claim

#### i. Fraud and New Jersey Consumer Fraud Act

*5 Plaintiffs bring both a common law fraud claim and a claim under the NJCFA. Under New Jersey Law, "[a] plaintiff seeking to recover for fraud must allege five elements: (1) material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Williams v. BASF Catalysts LLC, 765 F.3d 306, 317 (3d Cir. 2014) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005)).

To state a claim under the NJCFA, the Plaintiffs must establish three elements: (1) unlawful conduct by the Defendants; (2) an ascertainable loss by Plaintiffs; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. Ciser v. Nestle Waters N. Am. Inc., 596 Fed.Appx. 157, 160 (3d Cir. 2015) (citing Zaman v. Felton, 219 N.J. 199, 222 (2014)).

Defendants argue that Plaintiffs' fraud and NJCFA claims must be dismissed for two reasons, which the Court will address in turn.

#### 1. Heightened Pleading

First, Defendants contend that Plaintiffs have not complied with the heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b). Defendants complain that Plaintiffs only provide examples of the wines that Defendants allegedly sold pursuant to fraudulent schemes and the wines that Plaintiffs have purchased. In Defendants' view, this is insufficient to put Defendants on notice of the "precise misconduct" with which they are charged, as required by Rule 9(b). See Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). Plaintiffs, in turn, argue that Rule 9(b)'s heightened pleading requirements are relaxed in circumstances such as these where the bulk of the facts are within the Defendants' sole knowledge or possession. As a result, Plaintiffs claim they are not required to allege all the wines at issue and that examples suffice at this stage. Pls. Opp. Br. at 7-8.

Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement applies to fraud claims as well as NJCFA claims that sound in fraud. Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 526 (D.N.J. 2008); see also Frederico, 507 F.3d at 200, 202-03. To satisfy this standard a plaintiff must plead with particularity the circumstances constituting a fraud. Fed. R. Civ. P. 9(b). "[A] plaintiff alleging fraud must state the

Case 1:20-cv-03053-RMB-AMD   Document 16-21   Filed 07/13/20   Page 6 of 12 PageID: 323

**Cannon v. Ashburn Corporation, Not Reported in Fed. Supp. (2016)**
2016 WL 7130913

circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged." *Frederico*, 507 F.3d at 200 (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)). This can be accomplished by pleading "the date, time and place of the alleged fraud or otherwise inject[ing] precision or some measure of substantiation into a fraud allegation." *Hlista v. Safeguard Properties, LLC*, 649 Fed.Appx. 217, 221 (3d Cir. 2016) (quoting *Frederico*, 507 F.3d at 200).

The "rigid requirements of Rule 9(b) may be relaxed" where "it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)). Additionally, "courts in this District have held that 'when the transactions are numerous and take place over an extended period of time, less specificity in pleading fraud is required[.]' " *S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 385 (D.N.J. 2007) (quoting *Kronfield v. First Jersey Nat'l Bank*, 638 F. Supp. 1454, 1465 (D.N.J. 1986)). This relaxation, however, is not license for a plaintiff to rely upon boilerplate and conclusory allegations. *Rockefeller*, 311 F.3d at 216 (citing *Burlington*, 114 F.3d at 1418).

**\*6** Plaintiffs explain that they "have alleged two types of offerings. First, WTSO sells wines that are unavailable anywhere but at WTSO.com with a fabricated original price and discount...." Pls. Opp. Br. at 8. As to this alleged scheme, Plaintiffs have sufficiently pled the nature of the alleged fraud or deceptive practice, as required by Rule 9(b). Plaintiffs have alleged that certain wines are sold exclusively by Defendants on WTSO.com and, therefore, do not have an "original price" that is distinct from the sale price, contrary to Defendants' offers. Compl. ¶¶ 25-33. Additionally, the Complaint references, as examples, thirty categories of wine allegedly sold by Defendants pursuant to this scheme. Compl. ¶¶ 28, 33. As Plaintiffs point out, "[t]he full list of wines at issue is in the possession of WTSO." Pls. Opp. Br. At 8. In light of this, the Court will relax the "rigid requirements of Rule 9(b)." *In re Rockefeller*, 311 F.3d at 216. Accordingly, the Court finds that, insofar as Plaintiffs' fraud and NJCFA claims are premised upon this first scheme, the claims are pled with sufficient particularity and comply with the pleading requirements set forth in Rule 9(b).

The second type of offering alleged by Plaintiffs is one in which "WTSO misrepresents the original (or release) price for 'real' wines that are sold elsewhere." Pls. Opp. Br. at 8. The Complaint alleges in detail that, for certain wines, "the true and real 'Original Price' is significantly lower than the 'Original Price' advertised and cited by Defendants." Compl. ¶ 35. Additionally, Plaintiffs provide two examples of wine allegedly sold pursuant to this admittedly separate scheme, as well as excerpts of Defendants' offers regarding these wines, and the various prices listed. Compl. ¶ 36.

However, as explained above, Plaintiffs do not have standing to pursue claims under this theory because they have not alleged that they purchased either of these two wines or any other wines allegedly sold with an inflated or exaggerated original price. See supra Section III.A. at 12-13. This deficiency is fatal not only to Plaintiffs' standing to pursue these claims, but also to Plaintiffs' ability to establish the necessary elements of the fraud and NJCFA claims. For this reason, the Court finds that Plaintiffs' fraud and NJCFA claims are dismissed without prejudice to the extent the claims are premised upon this second scheme involving inflated or exaggerated original prices. Plaintiffs, however, will have an opportunity to amend the pleadings to cure this deficiency. [3]

### 2. Ascertainable Loss and Damages

Defendants next argue that Plaintiffs have not adequately pled an ascertainable loss, as required to establish a claim under the NJCFA, or resulting damages, as required to establish a fraud claim. Specifically, Defendants argue that "the failure to receive a purported discount, even if true, does not constitute an 'ascertainable loss.' " Defs. Br. at 9 [Docket No. 14-2] (citing *Waldron v. Jos. A. Bank Clothiers, Inc.*, 2013 U.S. Dist. LEXIS 189191 (D.N.J. Jan. 28, 2013)).

"The plain language of the [NJCFA] unmistakably makes a claim of ascertainable loss a prerequisite for a private cause of action." *D'Agostino v. Maldonado*, 216 N.J. 168, 185 (2013). An "ascertainable loss" is "either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measureable." *Marcus*, 687 F.3d at 606 (quoting *Thiedemann v. Mercedes-Benz U.S.A., LLC*, 183 N.J. 234, 248 (2005)). An ascertainable loss is one that is not "hypothetical or illusory." *D'Agostino*, 216 N.J. at 185. "Put differently, a plaintiff is not required to show monetary loss, but only that he purchased something and received 'less than what was promised.' " *Marcus*, 687 F.3d at 606 (quoting *Union Ink Co., Inc. v.*

Case 1:20-cv-03053-RMB-AMD   Document 16-21   Filed 07/13/20   Page 7 of 12 PageID: 324

**Cannon v. Ashburn Corporation, Not Reported in Fed. Supp. (2016)**
2016 WL 7130913

*AT&T Corp.*, 352 N.J. Super. 617, 646 (App. Div. 2002)). The NJCFA "does not, however, 'require that the loss be monetary [ ] or that it must be pled beyond a reasonable degree of certainty.'" *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 335 (D.N.J. 2014) (quoting *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 300 (D.N.J. 2009)).

**\*7** "There are at least three recognized theories of ascertainable loss that may apply to a NJCFA claim." *Truglio v. Planet Fitness, Inc.*, 2016 WL 4084030, at \*6 (D.N.J. July 28, 2016) (quoting *Hammer v. Vital Pharm., Inc.*, 2012 WL 1018842, at \*8 (D.N.J. Mar. 26, 2012)). A plaintiff can either allege an out-of-pocket loss, a demonstration of loss in value, or a nominal overcharge for which the plaintiffs have not made a pre-suit demand for a refund. Id. (quoting *Hammer*, 2012 WL 1018842, at \*8).

Here, Plaintiffs clearly rely upon the loss-in-value theory. "Under the loss-in-value theory, also known as the benefit-of-the-bargain theory, a plaintiff must allege that she was 'misled into buying a product that is ultimately worth less than the product that was promised.'" Id. (quoting *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015)). To adequately plead ascertainable loss under the benefit-of-the-bargain theory, a plaintiff must allege "(1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one received can be reasonably quantified." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011). "[T]here is no requirement that the product actually be defective or deficient in any way other than that it is not what was promised." Id. (internal citations omitted).

Defendants contend that, because "Plaintiffs did in fact receive the exact merchandise that they bargained and paid for, and have not alleged that the bottles of wine they received were 'less than what was promised,' ... Plaintiffs have not alleged sufficient facts to support a finding of 'quantifiable or measureable loss' and thus an 'ascertainable loss' necessary to support [ ] either the NJCFA or common law fraud claims." Defs. Br. at 12.

Plaintiffs argue that, at this juncture, under the benefit-of-the-bargain theory, they are required to plead simply that they "received something less than or different from what they reasonably expected in view of defendant's presentations," and that they have done so. Pls. Opp. Br. at 10 (citing *Dzielak v. Whirlpool, Inc.*, 2014 WL 2748746, at \*20 (D.N.J. June 16, 2014)). Plaintiffs contend that they "have alleged a loss that can be quantified: the difference between the promised value of the wine and the actual value of the wine." Id. at 11.

The Court agrees. Under the benefit-of-the-bargain theory, Plaintiffs are required to show "nothing more than that the consumer was misled into buying a product that was ultimately worth less to the consumer than the product he was promised." *Hoffman v. Nutraceutical Corp.*, 2013 WL 2650611, at \*2 (D.N.J. June 10, 2013) (quoting *Smajlaj*, 782 F. Supp. 2d at 99; *Henderson v. Hertz Corp*, 2005 WL 4127090, at \*7 (N.J. Super. Ct. App. Div. June 22, 2006)). Plaintiffs have done so, albeit narrowly. For example, Plaintiffs have alleged that they were offered a $35 bottle of 2013 Castlebank Vineyards Vivian's Vineyard Dry Creek Valley Cabernet Sauvignon for the price of $13.99, but that the bottle they received was actually valued at some amount less than advertised—namely $13.99, as it is not sold anywhere else besides WTSO.com—and that they would not have purchased that bottle if not for the purported discount. Compl. ¶¶ 25, 43. Plaintiffs also allege that Defendants offered a $350 bottle of Clarendon Hills Astralis Syrah 2007 for the price of $119.99, but that the bottle was actually valued at $225. Compl. ¶ 36.[4]

**\*8** The Court reiterates that the Plaintiffs are not required to allege that the bottles of wine were defective or deficient. Rather, the Plaintiffs must allege that the bottles they received were not the bottles that were promised to them. Plaintiffs have alleged that the bottles they received were of lesser value than the bottles advertised and, therefore, that they did not receive the value of the wine promised.[5] Additionally, the fact that Defendants dispute the actual value of the various wines does not mean that the Plaintiffs' alleged ascertainable loss is not quantifiable at a later stage. Discovery will elucidate the amount of the Plaintiffs' alleged ascertainable loss, if any. Accordingly, the Court finds that, by a slim margin, Plaintiffs have adequately pled ascertainable loss and damages for purposes of the NJCFA and fraud claims.

### ii. Breach of Contract

To establish a breach of contract claim, the Plaintiffs must allege (1) a contract between the parties; (2) a breach of that contract by the Defendants; (3) damages flowing therefrom; and (4) that Plaintiffs performed their own contractual obligations. *Frederico*, 507 F.3d at 203; *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016).

Case 1:20-cv-03053-RMB-AMD   Document 16-21   Filed 07/13/20   Page 8 of 12 PageID: 325

Cannon v. Ashburn Corporation, Not Reported in Fed. Supp. (2016)
2016 WL 7130913

Defendants contend that Plaintiffs' breach of contract claim must be dismissed because Plaintiffs have failed to allege that Defendants did not perform their obligations under the contracts for sale/purchase of wine and that any alleged breach resulted in damages.

As to the second element of the claim, Defendants argue that "the inescapable reality of this case is that Plaintiffs in fact received the exact bottles of wine they ordered from WTSO, and whether they allegedly should or should not have been sold at a different price is of no legal relevance to a breach of contract claim." Defs. Br. at 13. This, however, misses the point. As the Court explained above in addressing the fraud and NJCFA claims, Plaintiffs have adequately pled that they did not receive the exact bottles of wine they ordered. Although the bottles of wine Plaintiffs received may have been, for example, a 2013 Castlebank Vineyards Cabernet Sauvignon, as advertised, the allegations in the Complaint establish that the bottles were not valued at the amount advertised. Just because the Plaintiffs allege that they received the type of wine offered for the price offered does not mean that they received exactly what was offered.[6]

*9 The Court recognizes that Defendants disagree with Plaintiffs' theory of the case and contest the actual value of the bottles of wine in question. Again, that is not an argument for the pleading stage. On a motion to dismiss, the facts as alleged by Plaintiffs must be accepted as true. Read generously, those facts establish that Defendants offered certain bottles of wines, valued at certain amounts, at purportedly discounted prices, but that the Plaintiffs did not receive what was offered —instead, Plaintiffs received bottles of wine of lower value than advertised. Accordingly, the Court finds that, at this juncture, Plaintiffs have adequately pled a breach of contract by Defendants.

As to damages, Defendants contend that Plaintiffs fail to allege an out-of-pocket loss or demonstration of loss in value as a result of any alleged breach of contract by the Defendants. Plaintiffs recognize that, at this juncture, there are factual questions regarding the nature and value of the bottles of wine purchased. Pls. Opp. Br. at 12. Yet, as alleged in the Complaint, Plaintiffs received an item of lesser value than offered. Their damages are the difference in the value advertised compared with the value received. At this stage, this is sufficient to plead damages.

### iii. Unjust Enrichment

"A cause of action for unjust enrichment requires proof that defendants received a benefit and that retention of that benefit without paying would be unjust." *Ciser*, 596 Fed.Appx. at 160 (quoting *Goldsmith v. Camden Cty. Surrogate's Office*, 408 N.J. Super. 376, 382 (App. Div. 2009)). In New Jersey, "[u]njust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability." Id. Furthermore, "[t]he unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Amgro, Inc. v. Lincoln Gen. Ins. Co.*, 361 Fed.Appx. 338, 346 (3d Cir. 2010) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)).

Defendants urge the Court to dismiss the unjust enrichment claim for two reasons. First, Defendants contend that Plaintiffs have not alleged any retention of benefit without payment or that they sought remuneration from the Defendants. Second, Defendants argue that the unjust enrichment claim cannot stand since Plaintiffs have alleged the existence of a valid contract between the parties. In response, Plaintiffs readily admit that the "unjust enrichment claim is pleaded in the alternative to their breach of contract claim" and state that "[i]f and when WTSO admits that a valid contract exists (in its Answer to the Complaint), the unjust enrichment claim can be dismissed." Pls. Opp. Br. at 12-13. Defendants clearly "do[ ] not deny that contracts for the purchase and sale of wine between the parties exist." Defs. Br. at 15.

"[W]here the pleading supports the existence of a valid contract, which has not been called into question, an unjust enrichment claim cannot stand where there is also a breach of contract claim." *MZL Capital Holdings, Inc. v. TD Bank, N.A.*, 2015 WL 4914695, at *9 (D.N.J. Aug. 18, 2015) (citing *RD Legal Funding, LLC v. Cohen*, 2013 WL 4039020, at *9 (D.N.J. Aug. 7, 2013); *Goldsmith*, 408 N.J. Super. at 382). While pleading in the alternative is permissible, where a plaintiff "concedes that its relationship is governed—in its entirety—by a valid and binding contract, Plaintiff has failed to state a facially plausible claim of unjust enrichment under New Jersey law." *RD Legal*, 2013 WL 4039020, at *9 (citing *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982)).

Case 1:20-cv-03053-RMB-AMD   Document 16-21   Filed 07/13/20   Page 9 of 12 PageID: 326

Cannon v. Ashburn Corporation, Not Reported in Fed. Supp. (2016)
2016 WL 7130913

**\*10** The parties readily concede that the relationships between the Plaintiffs and the Defendants are governed by contracts for the purchase and sale of wine. Additionally, the parties do not contest the validity of the underlying contracts. As such, the Court will grant the Defendants' motion to dismiss the Plaintiffs' unjust enrichment claim with prejudice.

### iv. New Jersey Truth-in-Consumer Contract Warranty and Notice Act

Defendants argue that Plaintiffs' claim under the TCCWNA fails for two reasons. First, Defendants contend that Plaintiffs have not identified a provision that violates a "clearly established legal right" that gives rise to a TCCWNA violation. Defendants also claim that Plaintiffs are not "aggrieved consumers" under the TCCWNA and, therefore, do not have a private cause of action under the statute.[7]

The TCCWNA provides in relevant part:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. 56:12-15.

To set forth a violation of the TCCWNA, a plaintiff must allege the following elements: (1) plaintiff is a consumer; (2) defendant is a seller; (3) the seller offers a consumer contract or gives or displays any written notice or sign; and (4) the contract, notice, or sign <u>includes a provision</u> that violates a legal right of the consumer or responsibility of the seller. *Watkins v. DineEquity, Inc.*, 591 Fed.Appx. 132, 135 (3d Cir. 2014) (emphasis added) (citing *Bosland v. Warnock Dodge, Inc.*, 396 N.J. Super. 267, 278 (App. Div. 2007)); accord *Ensey v. Gov't Employers Ins. Co.*, —— Fed.Appx. ——, 2016 WL 6407379, at \*4 (3d Cir. Oct. 31, 2016) ("To prevail on her TCCWNA claim, [plaintiff] must allege that [defendant] <u>included a provision</u> in its contracts that violates state or federal law.") (emphasis added).

The "TCCWNA does not establish consumer rights or seller responsibilities. Rather, the statute bolsters rights and responsibilities established by other laws.... The rights and responsibilities to be enforced by TCCWNA are drawn from other legislation. One such piece of legislation is the CFA." *Watkins*, 591 Fed.Appx. 132, 134 (3d Cir. 2014) (internal citations omitted).

The TCCWNA does not define what constitutes a violation of such a right. The statute's legislative history, however, provides several examples of the types of provisions that the legislature believed violated clearly established rights:

> Examples of such provisions are those that deceptively claim that a seller or lessor is not responsible for any damages caused to a consumer, even when such damages are the result of the seller's or lessor's negligence. These provisions provide that the consumer assumes all risks and responsibilities, and even agrees to defend, indemnify and hold harmless the seller from all liability. Other provisions claim that a lessor has the right to cancel the consumer contract without cause and to repossess its rental equipment from the consumer's premises without liability for trespass. Still other provisions arbitrarily assert the consumer cannot cancel the contract for any cause without punitive forfeiture of deposits and payment of unfounded damages. Also, the consumer's rights to due process is often denied by deceptive provisions by which he allegedly waives his right to receive legal notices, waives

Case 1:20-cv-03053-RMB-AMD   Document 16-21   Filed 07/13/20   Page 10 of 12 PageID: 327

**Cannon v. Ashburn Corporation, Not Reported in Fed. Supp. (2016)**
2016 WL 7130913

process of law in the repossession of merchandise and waives his rights to retain certain property exempted by State or Federal law from a creditor's reach.

**\*11** *McGarvey v. Penske Auto Grp., Inc.*, 486 Fed.Appx. 276, 280 n. 5 (3d Cir. 2012) (quoting Statement, Bill No. A1660, 1981 N.J. Laws, Chapter 454, Assembly No. 1660, page 2–3).

These examples illustrate that the provisions prohibited by the TCCWNA are those which explicitly contravene established law. The statutory language and history make clear that, through the TCCWNA, the legislature sought to regulate the actual <u>terms and provisions included in consumer contracts</u>, rather than the conduct of parties, which is already governed by other laws, such as the NJCFA or state contract law. See *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 930 (3d Cir. 2015) (purpose of TCCWNA is "to prevent deceptive practices in consumer contracts by prohibiting <u>the use of illegal terms or warranties</u> in consumer contracts") (emphasis added) (quoting *Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 428 (2013)); *Watkins*, 591 Fed.Appx. at 135 ("A plain reading of the phrase, 'which includes any provision,' indicates that the New Jersey legislature intended TCCWNA to cover <u>only the inclusion of illegal provisions</u>, and not omissions.") (emphasis added).

Here, as alleged by Plaintiffs, it is only Defendants' alleged <u>conduct</u>, namely the failure to provide a bottle with the advertised original price, which may give rise to liability—not the contracts' provisions. The inclusion of an original price in the contract does not, by that contract's own terms, violate any clearly established legal rights. Accordingly, the Court finds that Plaintiffs have not identified any <u>provisions</u> included in the contracts for the sale and purchase of wine that violate a clearly established legal right. For this reason, the TCCWNA claim is dismissed without prejudice. [8]

**IV. MOTION TO STRIKE CLASS ALLEGATIONS**
Defendants argue, in the alternative, that Plaintiffs' class action allegations should be stricken pursuant to Federal Rule of Civil Procedure 12(f). Specifically, Defendants contend that Plaintiffs' proposed class constitutes "an impermissible failsafe class because it requires the Court to make a determination on the merits by deciding which, if any, of the wines were marketed with a 'fictional, fabricated, or inflated' original price." Defs. Br. at 23-24. Defendants also challenge Plaintiffs' ability to satisfy the typicality, predominance, and superiority requirements of Rule 23(b).

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "A court has 'considerable discretion' in deciding a Rule 12(f) motion." *McPeak v. S-L Distribution Co.*, 2014 WL 4388562, at \*3 (D.N.J. Sept. 5, 2014) (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)). Motions to strike, however, are "disfavored and usually will be denied unless 'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.' " Id. (quoting *Eisai Co. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 425 (D.N.J. 2009) (citing *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002))).

**\*12** "In a putative class action suit, a plaintiff is generally entitled to discovery information relevant to Rule 23's class certification requirements." Id. Accordingly, a court should only grant a motion to strike class allegations "if the inappropriateness of class treatment is evident from the face of the complaint and from incontrovertible facts." Id. (citing *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n. 30 (3d Cir. 2011)).

Plaintiffs argue that Defendants' motion to strike the class allegations at this early stage in the litigation is premature. The Court agrees. Presumably, as Plaintiffs aver, discovery will establish which wines are part of Defendants' alleged schemes and, therefore, will clarify the scope of the class —purchasers of those specific wines. [9] While Defendants' argument "may ultimately prove persuasive, the Court declines to address issues of class certification at the present time. Piece-meal resolution of issues related to the prerequisites for maintaining a class action do not serve the best interests of the court or parties." *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at \*7 (S.D. Cal. May 22, 2009).

Accordingly, this Court will follow the majority of courts in this District and deny the Defendants' motion to strike the class allegations without prejudice as premature. See, e.g., *Freed v. Metro Mktg. Inc.*, 2013 WL 5466637, at \*3 (D.N.J. Sept. 30, 2013) (denying motion to strike class allegations as premature); *Greene v. BMW of N. Am.*, 2013 WL 5287314, at \*7 (D.N.J. Sept. 17, 2013) (same); *Ehrhart v. Synthes*

Case 1:20-cv-03053-RMB-AMD Document 16-21 Filed 07/13/20 Page 11 of 12 PageID: 328

Cannon v. Ashburn Corporation, Not Reported in Fed. Supp. (2016)

2016 WL 7130913

*(USA)*, 2007 WL 4591276, at *4-5 (D.N.J. Dec. 28, 2007) (denying motion to strike class allegations as premature prior to discovery and motion for class certification, reasoning that "dismissal of class allegations at this stage should be done rarely ... the better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery.' ") (quoting *Gutierrez v. Johnson & Johnson, Inc.*, 2002 U.S. Dist. LEXIS 15418, at *16, 2002 WL 34717245 (D.N.J. 2002)); *Myers v. MedQuist, Inc.*, 2006 WL 3751210, at *5 (D.N.J. Dec. 20, 2006). Defendants, however, may raise these challenges and others, if appropriate, at the class certification stage.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is granted, in part, and denied, in part. Plaintiffs may amend their pleadings within thirty (30) days of the entry of this Opinion to cure the deficiencies identified herein, if they choose to do so. The Defendants' alternative Motion to Strike the class allegations is denied without prejudice to Defendants raising the arguments in opposition to a future motion for class certification. An appropriate Order shall issue on this date.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 7130913

Footnotes

1. The facts recited herein are derived from the Plaintiffs' Complaint. The Court will and must accept Plaintiffs' well-pled allegations as true for purposes of this motion to dismiss. See *Bistrian v. Levi*, 696 F.3d 352, 358 n. 1 (3d Cir. 2012). Additionally, as the Court writes primarily for the parties, it assumes the reader's familiarity with the facts and recites only those relevant to the decision herein.

2. Assuming that Plaintiffs are able to cure this defect and have in fact purchased wine with allegedly inflated original prices, Plaintiffs will have standing to pursue claims on behalf of the putative class regarding all wines sold pursuant to this allegedly fraudulent scheme, for the reasons explained herein. As noted above, the Court will further consider the question of standing at the class certification stage, if necessary.

3. In the Complaint, Plaintiffs allege that "the sales price itself, despite Defendants' purported discount, still does not reflect a reasonable price" and that certain undisclosed wines "have a lesser value than the price at which they were purchased." Compl. ¶¶ 3, 60. It is unclear whether Plaintiffs claim this is a third fraudulent scheme or whether Plaintiffs seek to pursue this theory of liability. See, e.g., Pls. Opp. Br. at 8 ("Plaintiffs have alleged two types of offerings.") (emphasis added). The Complaint contains no allegations regarding any wines that were actually valued at an amount less than the sales price or the price paid by Plaintiffs. Moreover, Plaintiffs do not plead that they purchased any wines allegedly valued below the price paid. To the extent that Plaintiffs seek to pursue any claims premised upon this purported scheme, Plaintiffs have not adequately pled these claims under Rule 12(b)(6), let alone Rule 9(b). Plaintiffs may amend their pleadings to address this deficiency, if they so choose.

4. The Court has dismissed claims related to this wine and other wines sold at allegedly inflated prices without prejudice. If Plaintiffs choose to amend the Complaint and allege that they purchased this wine, the remaining allegations would be sufficient to plead ascertainable loss.

5. Defendants argue that "the failure to receive a purported discount, even if true, does not constitute an 'ascertainable loss,' " relying primarily upon *Waldron*, 2013 U.S. Dist. LEXIS 189191, at *10-11. Defs. Br. at 9. The Court first notes that it is not bound by the Waldron decision. Moreover, the decision is distinguishable. The Waldron court held that the plaintiffs had failed to adequately plead an ascertainable loss because they "allege[d] only that the 'ascertainable loss suffered by Plaintiffs is the difference between what the regular price actually was and what the discount price should have been' yet have failed to provide this Court with even a vague estimate of that figure or facts suggesting one exists.' " 2013 U.S. Dist. LEXIS 189191, at *10. Yet, Plaintiffs in this action have provided the Court with allegations as to the actual values of the wines in question, as well as facts suggesting that actual retail prices exist for certain of the wines at issue. See, e.g., Compl. ¶¶ 29-36. While Plaintiffs may have oversimplified the matter in stating that "wine is not a suit," the Court recognizes and agrees that "wine is unique in that purchasers rely on the original price," meaning the actual retail value, "and independent reviews to determine the value of a wine." Pls. Opp. Br. at 11. Plaintiffs did just that and, as a result, decided to purchase a purportedly $35 bottle of wine for $13.99. Yet, as alleged, Plaintiffs received a bottle of wine valued significantly below $35, i.e. at $13.99. At this stage, this is sufficient to establish a quantifiable and ascertainable, as opposed to hypothetical and speculative, loss.

Case 1:20-cv-03053-RMB-AMD   Document 16-21   Filed 07/13/20   Page 12 of 12 PageID: 329

**Cannon v. Ashburn Corporation, Not Reported in Fed. Supp. (2016)**
2016 WL 7130913

6      The Court reiterates that Plaintiffs' claims premised upon inflated or exaggerated original prices are dismissed without prejudice because Plaintiffs have not alleged that they purchased any wines with inflated or exaggerated original prices. See supra Section III.A. at 12-13. To the extent that Plaintiffs' breach of contract claim is also premised upon such wines, the claims fail for the same reason. The existence of a valid contract between the parties is an essential element of a breach of contract claim. Yet, Plaintiffs have not alleged that they entered into a contract with Defendants for the purchase of wines that have allegedly inflated original prices.

7      Because the Court finds that Plaintiffs have not pled a provision that violates a clearly established legal right, the Court does not reach the issue of whether Plaintiffs are "aggrieved consumers" under the TCCWNA.

8      Based upon the TCCWNA's legislative history and purpose, as well as the limited case law interpreting the statute, it appears that Plaintiffs cannot state a viable claim under the TCCWNA. The Court, however, recognizes that Defendants only thoroughly addressed this argument in their Reply Brief [Docket No. 22 at 9], to which Plaintiffs did not have an opportunity to respond. Therefore, in an abundance of caution, the Plaintiffs will have an opportunity to amend their pleadings to set forth a provision that violates a clearly established right, if they choose to pursue this claim.

9      Defendants have expressed concerns that Plaintiffs will seek to engage in a "fishing expedition" that will result in costly and overly burdensome discovery obligations for Defendants. See Defs. Reply Br. at 6, 10, 12 n. 8. The Court understands Defendants' concerns. The parties are reminded that discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court encourages the parties to cooperate with one another throughout the discovery process.

---

**End of Document**      © 2020 Thomson Reuters. No claim to original U.S. Government Works.