## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN GERICKE, Individually and on behalf of All Individuals similarly situated, | Civil Action No. 1:20-cv-03053 |
| | *Oral Argument: March 17, 2021* |
| Plaintiffs, | |
| v. | |
| TRUIST D/B/A OR F/K/A BRANCH BANKING AND TRUST COMPANY and JOHN DOES 1-10, | |
| Defendants. | |

## SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT TRUIST BANK'S MOTION TO DISMISS

**REED SMITH LLP**
*Formed in the State of Delaware*
Diane A. Bettino, Esq.
David G. Murphy, Esq.
506 Carnegie Center – Suite 300
Princeton, New Jersey 08540
Tel. (609) 514-5947
Fax (609) 951-0824

*Attorneys for Defendant Truist Bank*
*(improperly named Truist d/b/a or f/k/a Branch Banking and Trust Company)*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................1

LEGAL ARGUMENT ......................................................................4

I.      "DISCHARGE" IN 26 C.F.R. § 1.6050P-1(b)(2)(i)(G) MEANS
        THAT TRUIST BANK CEASED COLLECTION ACTIVITY
        AND DEEMED PLAINTIFF'S *IN PERSONAM* OBLIGATION
        UNLIKELY TO EVER BE REPAID, BUT DOES NOT REQUIRE
        TRUIST BANK TO "ACTUALLY DISCHARGE" THE
        JUDGMENT ..........................................................................4

        A.      Section 1.6050P-1 Expressly Distinguishes Between
                "Discharge," "Cancellation," And "Extinguishment" Versus
                "Actual Discharge" ...............................................................6

        B.      The IRS Instructions To Taxpayer Confirms That While A
                Creditor Has A Reporting Obligation From The Occurrence
                Of An Identifiable Event, A Taxpayer Must Indicate When
                An "Actual Discharge" Has Occurred As Part Of His Or Her
                Own Tax Situation ..............................................................11

        C.      As Defined By The United States Tax Court, "Discharge"
                Occurs When There Is Certainty That The Debt Will Not Be
                Repaid ..............................................................................14

CONCLUSION ..............................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bank of America, N.A. v. Rolf*,
 188 A.D.3d 770 (2d Dep't 2020) ........................................................................10

*Brountas v. Comm'nr*,
 74 T.C. 1062 (1980) ...........................................................................................14

*Cozzi v. Comm'nr*,
 88 T.C. 435 (1987) ..........................................................................1, 3, 4, 14

*Dimas v. JPMorgan Chase Bank, N.A.*,
 2018 WL 809508 (N.D. Cal. Feb. 9, 2018) ........................................................12

*F.D.I.C. v. Cashion*,
 720 F.3d 169 (4th Cir. 2013) ........................................................................2, 3, 9

*Gierbolini v. Banco Popular de Puerto Rico*,
 121 F.3d 695 (1st Cir. 1997) ..............................................................................13

*In re Kaiser Aluminum Corp.*,
 456 F.3d 328 (3rd Cir. 2006) ..............................................................................4

*Owens v. Comm'nr*,
 67 F. App'x 253 (5th Cir. 2003) ...............................................................2, 14, 15

*U.S. v. S.S. White Dental Mfg. Co.*,
 274 U.S. 398 (1927) .......................................................................................3, 4, 14

*Walker v. Ocwen Loan Servicing, LLC*,
 2017 WL 2957933, at *5 (D.N.J. July 11, 2017) ................................................9

*Wells Fargo Bank, N.A. v. Fraze*,
 2020 WL 1615866, at *2 (D. Mass. Apr. 2, 2020) ...........................................8, 9

**Statutes**

26 U.S.C. § 108 ...................................................................................................5, 13

26 U.S.C. § 108(a)(1) ...................................................................5

26 U.S.C. § 108(f)(1) ...................................................................5

Plaintiff's Consumer Fraud Act .......................................................3

Truth-in-Consumer, Warranty, and Notice Act ....................................3

**Regulations**

26 C.F.R. § 1.6050P-1 .............................................................4, 6, 7

26 C.F.R. § 1.6050P-1(a) ...............................................................1

26 C.F.R. § 1.6050P-1(a)(1) .....................................................*passim*

26 C.F.R. § 1.6050P-1(b)(2) ......................................................2, 3, 7

26 C.F.R. § 1.6050P-1(b)(2)(i) ..............................................2, 8, 11, 14

26 C.F.R. § 1.6050P-1(b)(2)(i)(F) ...................................................9

26 C.F.R. § 1.6050P-1(b)(2)(i)(G) ............................................*passim*

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ...............................................4

## PRELIMINARY STATEMENT

On February 23, 2021, the Court requested that the parties submit additional briefing regarding Defendant Truist Bank's ("Truist Bank") pending Motion to Dismiss Plaintiff John Gericke's ("Plaintiff") putative class action complaint. *DE 19*. Specifically, the Court seeks additional briefing and argument on the definition of the word "discharge" in 26 C.F.R. § 1.6050P-1(b)(2)(i)(G):

> First, the Court notes that the Form 1099-C in question here was allegedly issued in accordance with 26 C.F.R. § 1.6050P-1(b)(2)(i)(G). Subsection G calls for the issuance of a Form 1099-C when there is "[a] discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity <u>and</u> discharge debt." 26 C.F.R. § 1.6050P-1(b)(2)(i)(G) (emphasis added). Neither party has adequately addressed the definition of "discharge," as used in the statute. From this Court's research, "discharge" is undefined in the statute, but the Court notes that "discharge" must mean more than simply discontinuing collection activities, since Subsection G requires "discharge" in addition to discontinuing collection activities. The parties are requested to address these issues with citations to any source that would assist the Court in interpreting the statute, including its legislative history.

*Id*.

In direct response to the Court's question, "discharge" means that "it becomes clear that the debt will never be repaid." *Cozzi v. Comm'nr*, 88 T.C. 435, 445 (1987). The definition of "discharge" *is* included directly within 26 C.F.R. § 1.6050P-1(a). That section specifically states that "[a] discharge of indebtedness is deemed to have occurred, except as provided in paragraph (b)(3) of this section, if and only if there has occurred an identifiable event described in paragraph (b)(2) of this section,

- 1 -

whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred."  Thus, the discharge, in and of itself, is one of the identifiable events listed in 26 C.F.R. § 1.6050P-1(b)(2).  As the Tax Court has routinely recognized, a "discharge" may occur in connection with an identifiable event, but it is not dispositive of an intent to cancel indebtedness. *Owens v. Comm'nr*, 84 T.C.M. (CCH) 419, T.C. Memo. 2002-253 (2002), *aff'd in part, rev'd in part and remanded*, 67 F. App'x 253 (5th Cir. 2003).  In other words, the "discharge" is one of the identifiable events contained within 26 C.F.R. § 1.6050P-1(b)(2)(i)(G), but does not necessarily mean an "actual discharge."  26 C.F.R. § 1.6050P-1(a)(1); *See F.D.I.C. v. Cashion*, 720 F.3d 169, 178-179 (4th Cir. 2013) ("Tracking the plain language of the regulation, a creditor may be obligated to file a Form 1099-C even though an actual discharge of indebtedness has not yet occurred or is not contemplated.  Moreover, the identifiable event triggering the obligation may not involve an actual discharge of debt; rather, the event may be *deemed* to constitute a 'discharge' '[s]olely for purposes of' determining the Form 1099-C reporting obligation.").

As set forth in detail below, 26 C.F.R. § 1.6050P-1(b)(2)(i)(G), in using the word "discharge," does not require "actual discharge" for issuance of a Form 1099-C.  The term "<u>actual</u> discharge," as used in the regulation and confirmed by case law, is not required for any of the identifiable events listed in § 1.6050P-1(b)(2)(i),

whether they call for "discharge," or "cancellation," or "extinguishment."  *See, e.g.*, 26 C.F.R. § 1.6050P-1(a)(1) (emphasis added); § 1.6050P-1(b)(2); *See Cashion*, *supra*, 720 F.3d at 179 ("The plain language of the regulation leads us to conclude that filing a Form 1099-C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of debt, nor is it required only where an actual discharge has already occurred.").  So, from the perspective of the creditor issuing the Form 1099-C, the inquiry is when the creditor's loss, due to a debt not being repaid, becomes "fixe[d] . . . with certainty," but not when the obligation itself is no longer viable.  *Cozzi*, 88 T.C. at 445 (citing *U.S. v. S.S. White Dental Mfg. Co.*, 274 U.S. 398 (1927)).  The inquiry is *not* whether the obligation, from the perspective of the debtor, no longer exists.  *See id.*

This definition of "discharge," and the critical modification of "actual" or "actually" discharging a debt, is recognized by courts interpreting how the issuance of a 1099-C impacts whether an underlying debt has been *actually* discharged.  At bottom, Truist Bank's issuance of the Form 1099-C cannot serve as the basis for Plaintiff's Consumer Fraud Act ("CFA") and Truth-in-Consumer, Warranty, and Notice Act ("TCCWNA") claims.

For these reasons, as well as those fully set forth in Truist's initial brief (*DE 16*) and reply brief (*DE 18*), Truist's Motion to Dismiss should be granted, and Plaintiffs' putative class action complaint should be dismissed with prejudice.

## LEGAL ARGUMENT

I.   **"DISCHARGE" IN 26 C.F.R. § 1.6050P-1(b)(2)(i)(G) MEANS THAT TRUIST BANK CEASED COLLECTION ACTIVITY AND DEEMED PLAINTIFF'S *IN PERSONAM* OBLIGATION UNLIKELY TO EVER BE REPAID, BUT DOES NOT REQUIRE TRUIST BANK TO "ACTUALLY DISCHARGE" THE JUDGMENT**

Traditionally, with respect to debt, "discharge" usually means "pay" – "[a]ny method by which a legal duty is extinguished; esp[ecially], the payment of a debt or satisfaction of some other obligation."  Black's Law Dictionary (11th ed. 2019) (emphasis added).  Indisputably, Plaintiff has not paid the Judgment, and there has never been an intention by Truist Bank to forgive Plaintiff's obligation.  "A basic principle of statutory construction is that [the Court] should avoid a statutory interpretation that leads to absurd results," *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 330 (3rd Cir. 2006), thus, the Court should interpret the word "discharge," as used in 26 C.F.R. § 1.6050P-1(b)(2)(i)(G), in a manner most consistent with the Internal Revenue Code and the parties' reasonable expectations.

Accordingly, in the taxation context, the term "discharge" is nuanced, and from the perspective of the creditor, sometimes refers to situations where the debt is a "bad debt" due to continual non-payment by the debtor.  Specifically, "[d]ischarge of a debt occurs when it becomes clear that the debt will never be repaid," and the Tax Court will "look for any identifiable event which fixes the loss with certainty." *Cozzi*, 88 T.C. at 445 (citing *S.S. White Dental Mfg.*, 274 U.S. 398).  So, while 26

- 4 -

C.F.R. § 1.6050P-1 does not define "discharge," the Tax Court has defined "discharge" to include a situation where a creditor (like Truist Bank) has determined that the debt is not likely to be repaid by the debtor. Thus, the creditor – in deeming it unlikely that the debtor (here Plaintiff) will make good on his *in personam* debt and ceasing collection activity in accordance was an internal policy – has a reporting obligation to the IRS, but is not required to "actually discharge" the debt, either as an *in personam* obligation nor as a lien on collateral.

In addition, the Tax Code itself is informative. Section 108 of the Tax Code provides, "[g]ross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge (***in whole or in part***) of indebtedness of the taxpayer…" 26 U.S.C. § 108(a)(1). Thus, by including the modifier "in whole or in part", the Tax Code itself contemplates that "discharge" does not refer to the entire debt. The Tax Code includes that modifier again in the same section concerning student debt, "[i]n the case of an individual, gross income does not include any amount which (but for this section) would be includible in gross income by reason of the discharge (***in whole or in part***) of any student loan…" 26 U.S.C. § 108(f)(1). Implicit within the term "discharge" itself under the Tax Code then is the notion that there are varying degrees; i.e., in whole or in part, as well as "discharge" and "actual discharge."

Here, Truist Bank made the determination that Plaintiff was unlikely to repay the Judgment, as he admittedly has not made payments for years and attempted to settle the Judgment for *de minimis* amounts in an attempt to have the Judgment removed as a lien from his property.[1]  In making this determination, a "discharge" within the meaning of 26 C.F.R. § 1.6050P-1(b)(2)(i)(G) has occurred, which is different from an "actual discharge," as provided for in 26 C.F.R. § 1.6050P-1(a)(1). Accordingly, to meet its reporting obligations to the IRS, Truist Bank issued the Form 1099-C, even though an "actual discharge" has not occurred.  There is nothing unlawful about Truist Bank complying with its obligations by issuing a Form 1099-C in these circumstances.

For this reason (and those in Truist's initial brief and reply brief in support of its Motion to Dismiss), Plaintiff cannot support his CFA and TCCWNA claims on any argument that the 1099-C was issued in contravention to federal regulations.

### A. Section 1.6050P-1 Expressly Distinguishes Between "Discharge," "Cancellation," And "Extinguishment" Versus "Actual Discharge"

The Tax Court's definition of discharge is consistent with the language of the regulation.  As the Court notes, 26 C.F.R. § 1.6050P-1 does not expressly define the

---

[1] As set forth in detail in Truist Bank's initial brief, even if Plaintiff's *in personam* obligation to pay the Judgment were actually discharged, Truist Bank's interest in the Judgment as a lien on Plaintiff's property would still remain valid and enforceable. *See DE 16 at pp. 15-17.*

term "discharge."  However, the regulation does state that a discharge is one of the

enumerated identifiable events contained within 26 C.F.R. § 1.6050P-1(b)(2), and

also expressly distinguishes between "actual discharge," on one hand, and when a

"discharge" is "deemed to have occurred," on the other hand:

> [A]ny applicable entity (as defined in section 6050P(c)(1)) that
> discharges an indebtedness of any person (within the meaning of
> section 7701(a)(1)) of at least $600 during a calendar year must file an
> information return on Form 1099–C with the Internal Revenue Service.
> Solely for purposes of the reporting requirements of section 6050P and
> this section, a discharge of indebtedness is deemed to have occurred,
> except as provided in paragraph (b)(3) of this section, if and only if
> there has occurred an identifiable event described in paragraph (b)(2)
> of this section, whether or not an actual discharge of indebtedness has
> occurred on or before the date on which the identifiable event has
> occurred.

26 C.F.R. § 1.6050P-1(a)(1) (emphasis added).

Case law further confirms the distinction between "discharge" and "actual

discharge," as there is no requirement that a debt cease to exist following a

"discharge" or "cancellation" or "extinguishment" for purposes of an identifiable

event for issuance of a Form 1099-C.  Each of the identifiable events listed in

§ 1.6050P-1 rely on varying terminology, with only subsections A, F, and G using

the term "discharge":

> (2) Identifiable events—(i) In general. — An identifiable event is—
>
> (A) A discharge of indebtedness under title 11 of the United States
> Code (bankruptcy);
>
> (B) A cancellation or extinguishment of an indebtedness that renders a
> debt unenforceable in a receivership, foreclosure, or similar proceeding

- 7 -

in a federal or State court, as described in section 368(a)(3)(A)(ii) (other than a discharge described in paragraph (b)(2)(i)(A) of this section);

(C) A <u>cancellation or extinguishment</u> of an indebtedness upon the expiration of the statute of limitations for collection of an indebtedness, subject to the limitations described in paragraph (b)(2)(ii) of this section, or upon the expiration of a statutory period for filing a claim or commencing a deficiency judgment proceeding;

(D) A <u>cancellation or extinguishment</u> of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the creditor's right to pursue collection of the indebtedness;

(E) A <u>cancellation or extinguishment</u> of an indebtedness that renders a debt unenforceable pursuant to a probate or similar proceeding;

(F) A <u>discharge</u> of indebtedness pursuant to an agreement between an applicable entity and a debtor to discharge indebtedness at less than full consideration; or

(G) A <u>discharge</u> of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt.

26 C.F.R. § 1.6050P-1(b)(2)(i) (emphasis added).  Whether the identifiable event refers to a "discharge" or "cancellation" or "extinguishment," courts uniformly recognize the distinction between the "discharge" as a reporting requirement and "actual discharge" of the underlying debt.

In *Wells Fargo Bank, N.A. v. Fraze*, the court interpreted the impact of a 1099-C issued, like here, under code "G."  No. 19-10499-GAO, 2020 WL 1615866, at *2 (D. Mass. Apr. 2, 2020) (a copy of this unpublished opinion has already been filed with the Court as *Exhibit 11* to the *Bettino Cert., DE 16-13*).  There, the United States

Attorneys' Office, on behalf of the Department of Housing and Urban Development

("HUD") argued, and the court agreed and held, that:

> [T]he Form 1099-C was filed to conform with IRS regulations, in satisfaction of <u>a reporting requirement for tax purposes that arose regardless of whether "an actual discharge of indebtedness [had] occurred."</u>  There is no other evidence offered that HUD "actually" cancelled or discharged Fraze's debt.  This view comports with a majority of courts that have considered the significance of the filing of Form 1099-C and have held that <u>the Form 1099-C itself does not operate to legally discharge or otherwise cancel the underlying debt, but rather is simply the fulfillment of a reporting requirement to the IRS.</u> *See F.D.I.C v. Cashion*, 720 F.3d 169, 178 (4th Cir. 2013) (finding that the "approach taken by a majority of the courts to consider the matter ultimately more persuasive.  That analysis relies principally on the language of the IRS regulations and the purpose of a Form 1099–C.").

*Id.* at \*2 (emphasis added).

In *Walker v. Ocwen Loan Servicing, LLC*, this Court interpreted the impact of a 1099-C issued pursuant to code "F," which covers "[a] discharge of indebtedness pursuant to an agreement between an applicable entity and a debtor to discharge indebtedness at less than full consideration."  No. 2:16-cv-9157-MCA-LDW, 2017 WL 2957933, at \*5 (D.N.J. July 11, 2017) (a copy of this unpublished opinion has already been filed with the Court as *Exhibit 13* to the *Bettino Cert., DE 16-15*). There, the Court held that the mere agreement to discharge between creditor and debtor satisfied 26 C.F.R. § 1.6050P-1(b)(2)(i)(F), and that an "actual discharge" was not required at that moment, even though the regulation calls for the filing of a 1099-C if, like code "G," there is "a discharge of indebtedness."  *Id.* at \*5-6.

- 9 -

For identifiable events that do not use the word "discharge," the Supreme Court of New York, Appellate Division's recent opinion in *Bank of America, N.A. v. Rolf*, 188 A.D.3d 770, 775-76 (2d Dep't 2020), is instructive.  There, the creditor filed a Form 1099-C for outright "cancellation" or "extinguishment" of the debt because the creditor sold the collateral for the debt through a foreclosure sale, thus the Form 1099-C indicated code "D" for "<u>cancellation or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the creditor's right to pursue collection of the indebtedness</u>."  *Id.* (emphasis added).  However, after the foreclosure sale, the creditor sought a deficiency judgment, which the debtor argued was impermissible because, with the issuance of the 1099-C, the remaining obligation should have been terminated by operation of law.  The Court rejected this argument, holding:

> Based upon the plain language of the applicable statute and regulation, "a creditor may be obligated to file a Form 1099-C even though an actual discharge of indebtedness has not yet occurred or is not contemplated."  The IRS "treats the Form 1099-C as a means for satisfying a reporting obligation and not as an instrument effectuating a discharge of debt or preventing a creditor from seeking payment on a debt" and the IRS has noted in certain information letters that "nothing in the relevant statute or regulations prohibits collection following the filing of a Form 1099-C."  Thus, "a Form 1099-C is not [, by itself,] evidence that a debt was discharged."  Moreover, here, it is clear from the actions of the plaintiff that it has not forgiven any part of the loan, and has no intention of doing so.

*Id.* at 774 (internal citations omitted).

As is clear from each of these cases, "actual discharge" is not a prerequisite for an identifiable event occurring under 26 C.F.R. § 1.6050P-1(b)(2)(i), and thus not a requirement for issuance of a Form 1099-C.  Routinely, identifiable events occur without an actual discharge, which is why the regulation explicitly distinguishes between "actual discharge" versus "discharge," "cancellation," or "extinguishment."  Accordingly, it is respectfully submitted that this Court's suggestion – "that 'discharge' must mean more than simply discontinuing collection activities, since Subsection G requires 'discharge' in addition to discontinuing collection activities – fails to consider that the "discharge" here is the decision to discontinue debt collection activities as part of a determination that the *in personam* obligation is unlikely to be repaid by Plaintiff, but is not intended or deemed to be an "actual discharge."

**B.    The IRS Instructions To Taxpayer Confirms That While A Creditor Has A Reporting Obligation From The Occurrence Of An Identifiable Event, A Taxpayer Must Indicate When An "Actual Discharge" Has Occurred As Part Of His Or Her Own Tax Situation**

The IRS's instructions make clear that an identifiable event can occur, resulting in the issuance of a Form 1099-C, even if "the debt has not <u>actually</u> been discharged."  *Supplemental Certification of Diane A. Bettino, Esq. ("Bettino Supp. Cert."), Ex. 21* (Instructions for Debtor for 2018, 2019, 2020, and 2021 Form 1099-C).  Plainly, the IRS is contemplating situations, even *after* the 36-month Rule had

been revoked, where a Form 1099-C is issued, but an "actual discharge" has not

occurred.  Specifically, the 2018, 2019, 2020, and 2021 IRS instructions to a debtor

provide, in relevant part:

> You received this form because a Federal Government agency or an applicable financial entity (a creditor) has discharged (canceled or forgiven) a debt you owed, <u>or because an identifiable event has occurred that either is or is deemed to be a discharge of a debt of $600 or more</u>. If a creditor has discharged a debt you owed, you are required to include the discharged amount in your income, even if it is less than $600, on the "Other income" line of your Form 1040.  However, you may not have to include all of the canceled debt in your income.  There are exceptions and exclusions, such as bankruptcy and insolvency.  See Pub. 4681, available at IRS.gov, for more details.  <u>If an identifiable event has occurred but the debt has not actually been discharged, then include any discharged debt in your income in the year that it is actually discharged, unless an exception or exclusion applies to you in that year</u>.

*Id.* (emphasis added).

These instructions are consistent with the Tax Court's definition of

"discharge" and a creditor's reporting obligations under the Internal Revenue Code,

without consideration to a debtor's tax situation.  *See Dimas v. JPMorgan Chase*

*Bank, N.A.*, No. 17-cv-5205-LHK, 2018 WL 809508, at *4 (N.D. Cal. Feb. 9, 2018)

(interpreting the same instructions from the Form 1099-C for 2015, prior to the

revocation of the 36-month rule) (unpublished opinion attached to *Bettino Supp.*

*Cert.* as *Exhibit 22*).  The IRS requires the filing of the Form 1099-C when an

identifiable event occurs, and creditors (like Truist Bank) lack the discretion to

account for Plaintiff's individual tax situation, *i.e.*, whether Plaintiff would be able

to avail himself of various exceptions to a determination of whether he has incurred income, per 26 U.S.C. §108.  *See Gierbolini v. Banco Popular de Puerto Rico*, 930 F. Supp. 712, 716 (D.P.R. 1996), *aff'd*, 121 F.3d 695 (1st Cir. 1997).  A creditor, like Truist Bank, has "no discretion, and should not evaluate the taxpayer's tax obligation," because its "only duty is to report, leaving it to the government and the taxpayer to sort out their differences as to the taxable status of any income in any particular tax year."  *Id*.

Plainly, as per the instructions provided directly by the IRS to taxpayers, it is their obligation (and not a creditor's obligation) to notify the IRS when a Form 1099-C is issued in connection with a discharge that is not an "actual discharge."  It is impossible for the IRS's instructions to be reconciled without there being a difference between a "discharge" resulting in an identifiable event for issuance of a Form 1099-C, and an "actual discharge" for a taxpayer to discuss with the IRS *after* a Form 1099-C has been issued.  For the IRS's plain language instructions to taxpayers to even make sense, there must be a situation, like here, where an identifiable event has occurred (the decision to discontinue collection activity), but the underlying obligation (the Judgment) remains fully in force and there has not been an "actual discharge."

- 13 -

**C.     As Defined By The United States Tax Court, "Discharge" Occurs When There Is Certainty That The Debt Will Not Be Repaid**

As provided above, in the context of taxable events, "[d]ischarge of a debt occurs when it becomes clear that the debt will never be repaid," and the Tax Court will "look for any identifiable event which fixes the loss with certainty." *Cozzi*, 88 T.C. at 445 (citing *S.S. White Dental Mfg.*, 274 U.S. 398). "The determination of whether a discharge of indebtedness has occurred for tax purposes is extremely fact specific, often turning on the subjective intent of the creditor as manifested by an objectively identifiable event," *Owens*, 84 T.C.M. at 422. Consistent with the distinction between "discharge" and "actual discharge" provided for in 26 C.F.R. § 1.6050P-1(b)(2)(i) and § 1.6050P-1(a)(1), "[c]ertainty" for loss does not mean that discharge occurs only when repayment is mathematically or legally impossible – "[t]he test for determining [discharge] requires a practical assessment of the facts and circumstances relating to the <u>likelihood</u> of payment." *Cozzi*, 88 T.C. at 445 (citing *Brountas v. Comm'nr*, 74 T.C. 1062, 1074 (1980) (subsequent history omitted)) (emphasis added).

From this definition, it is clear that for a "discharge" to occur, the underlying obligation does not need to simultaneously vanish. In *Owens*, the FDIC wrote off a debt because it determined that the borrower was unlikely to repay the balance owed. 84 T.C.M. at 421-22. The Tax Court held that "the FDIC's issuance and filing of

- 14 -

the Form 1099-C with respect to the loan . . . [is] not dispositive" that the loan was actually discharged, though it considered it "evidence of an intention to cancel the loan," along with the "FDIC's reclassification of the loan as a 'dormant account' pursuant to established internal procedures." *Id.* at 422.

In this case, "discharge" has nothing to do with whether the underlying debt continues to exist, but whether, from the perspective of the creditor, repayment is very unlikely. *Id.* at 448. Truist Bank determined that the Judgment, as *in personam* obligation, was not likely to be collected, because, as Plaintiff admits, he was not going to repay it, and he had been attempting to settle the Judgment for *de minimis* amounts. In making the determination that payment was unlikely, like the FDIC did in *Owens*, a "discharge" occurred, even though there was no intent to actually cancel Plaintiff's obligations under the Judgment, as confirmed by the fact that Truist Bank maintains a lien on Plaintiff's property and advised Plaintiff in a letter that the Judgment would not be canceled.

Thus, within the meaning of 26 C.F.R. § 1.6050P-1(b)(2)(i)(G), all criterion for an identifiable event occurred once Truist, pursuant to its internal policies, decided to cease collection activities with respect to the Judgment, even though the Judgment, itself, remained (and still remains) a valid and enforceable obligation.

- 15 -

## <u>CONCLUSION</u>

For all of the reasons stated herein, and in Truist Bank's initial brief and reply brief, Truist Bank respectfully requests that the Court grant its Motion to Dismiss the Complaint with Prejudice.

*/s/ Diane A. Bettino*

Dated:  March 12, 2021                     Diane A. Bettino, Esquire