# EXHIBIT 22

Case 1:20-cv-03053-RMB-AMD  Document 23-3  Filed 03/12/21  Page 2 of 10 PageID: 489

Dimas v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2018)

2018 WL 809508
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

Anival DIMAS, et al., Plaintiffs,
v.
JPMORGAN CHASE
BANK, N.A., Defendant.

Case No. 17-CV-05205-LHK
|
Signed 02/09/2018

**Attorneys and Law Firms**

Aliah A. Abdo, Rattan Dev S. Dhaliwal, Dhaliwal Law Group, Inc., Santa Clara, CA, for Plaintiffs.

David Ming Liu, Parker Ibrahim & Berg LLC, Costa Mesa, CA, for Defendant.

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. No. 15

LUCY H. KOH, United States District Judge

*1 Plaintiffs Anival Dimas and Julia Lopez ("Plaintiffs") sued Defendant JPMorgan Chase Bank, N.A. ("Defendant") for negligence, fraud, and unfair business practices based on Defendant's issuance in 2016 of two Tax Year 2015 1099-C Cancellation of Debt forms that Plaintiffs contend should never have been issued. Before the Court is Defendant's motion to dismiss the amended complaint. Having considered the parties' briefs, the relevant law, and the record in this case, the Court GRANTS the motion to dismiss with leave to amend.

**I. BACKGROUND**
The facts underlying Plaintiffs' claims relate to two properties that Plaintiffs owned: 475 Pocatello Drive in San Jose ("the Pocatello Property"), and 3142 Woods Way in San Jose ("the Woods Way Property"). After about eight years of Plaintiffs' nonpayment on two loans associated with these properties, Defendant issued two Tax Year 2015 1099-C Cancellation of Debt forms, as Defendant contends it was required to do by IRS regulation. Plaintiffs argue that Defendant should never have issued the 1099-C forms. The Court first provides a brief overview of the regulation governing issuance of 1099-Cs. The Court then recounts the facts and procedural history of this case.

**A. Regulation Governing the Issuance of 1099-C Forms**
26 U.S.C. § 6050P requires certain creditors to file an information return with the IRS when the creditor discharges more than $600 of indebtedness of any person in a calendar year. 26 U.S.C. § 6050P(a)-(c). The IRS regulation implementing § 6050P is 26 C.F.R. § 1.6050P-1.[1] Section 1.6050P-1(b)(2) lists eight "identifiable event[s]" that trigger the Form 1099-C reporting requirement. The following identifiable events are listed in § 1.6050P-1(b)(2):

(A) A discharge of indebtedness under title 11 of the United States Code (bankruptcy);

(B) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable in a receivership, foreclosure, or similar proceeding in a federal or State Court...

(C) A cancellation or extinguishment of an indebtedness upon the expiration of the statute of limitations for collection of an indebtedness, subject to the limitations described in paragraph (b)(2)(ii) of this section, or upon the expiration of a statutory period for filing a claim or commencing a deficiency judgment proceeding;

(D) A cancellation or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the creditor's right to pursue collection of the indebtedness;

(D) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable pursuant to a probate or similar proceeding;

(F) A discharge of indebtedness pursuant to an agreement between an applicable entity and a debtor to discharge indebtedness at less than full consideration;

(G) A discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt; or

Case 1:20-cv-03053-RMB-AMD Document 23-3 Filed 03/12/21 Page 3 of 10 PageID: 490

Dimas v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2018)

**\*2** (H) In the case of an entity described in section 6050P(c)(2)(A) through (C), the expiration of the non-payment testing period, as described in § 1.6050P-1(b)(2)(iv).

"In sum, under 26 C.F.R. § 1.6050P-1, any one of eight 'identifiable events' can trigger a duty to issue a Form 1099-C. While seven of those 'identifiable events' appear to be actual discharges, cancellations, or extinguishments of indebtedness, one event—expiration of a 'non-payment testing period'—does not appear to necessarily involve any cancellation of debt." *Kunwar v. Capital One, N.A.*, No. 17-CV-4849-LHK, 2017 WL 5991864, at \*4 (N.D. Cal. Dec. 4, 2017) (emphasis removed).

The Court now turns to the facts of the instant case.

**B. Factual Background**

**1. The Pocatello Property**

In November 2005, Plaintiffs obtained a loan from Countrywide Bank for $340,000 that was secured by a deed of trust encumbering the Pocatello Property ("Pocatello First DOT"). Request for Judicial Notice, ECF No. 15-1 ("RJN"), Exh. 7;[2] First Amended Complaint ("FAC"), ECF No. 13 ¶ 10. In April 2007, Plaintiffs obtained a home equity line of credit ("HELOC") from Washington Mutual Bank ("WaMu") for $220,000. The HELOC was secured by a second deed of trust encumbering the Pocatello Property ("Pocatello Second DOT"). RJN, Exh. 8; FAC ¶ 10.

Under the terms of the HELOC, Plaintiffs could "borrow, repay and re-borrow from time to time, up to the maximum credit limit" of $130,000, "and all such advances [were] secured by the lien" of the Pocatello Second DOT. Exh. 8, ¶ 2. The Pocatello Second DOT required Plaintiffs to "perform on time all terms, covenants and conditions of any prior mortgage or deed of trust covering the Property ... and pay all amounts due and owing thereunder in a timely manner." *Id.* ¶ 4(d).

The Pocatello Second DOT contained several provisions governing the timing of repayment of any money borrowed pursuant to the HELOC. First, the Pocatello Second DOT provided that "unless sooner repaid, all amounts due under [the HELOC agreement] are due and payable in full thirty (30) years from the date of" the Pocatello Second DOT. *Id.* Second, the Pocatello Second DOT provided that "the entire Debt shall become immediately due and payable in full upon sale or other transfer of the Property or any interest therein by contract of sale or otherwise." *Id.* ¶ 5. Third, the Pocatello Second DOT contained an acceleration clause that provided that if Plaintiffs defaulted on the Pocatello First DOT or the Pocatello Second DOT, "the Debt and any other money whose repayment is secured by this Deed of Trust shall immediately become due and payable in full, at the option of Beneficiary." *Id.* ¶ 7.

WaMu failed in 2008, and the Federal Deposit Insurance Corporation was appointed its receiver. Defendant then acquired some of WaMu's assets from the FDIC-Receiver, including WaMu's interest in the Pocatello Second DOT. This transaction was memorialized in the September 2008 Purchase and Assumption Agreement ("P&A Agreement"). RJN, Exh. 4.

**\*3** Plaintiffs defaulted on both their original loan and their HELOC on the Pocatello Property in or around 2008. FAC ¶ 13. On February 3, 2010, the Pocatello Property was sold through a non-judicial foreclosure sale through foreclosure on the Pocatello First DOT. RJN, Exh. 9; FAC ¶ 14.

**2. The Woods Way Property**

In September 2006, Plaintiffs obtained a loan from Countrywide Bank for $564,000 that was secured by a deed of trust encumbering the Woods Way Property ("Woods Way First DOT"). RJN, Exh. 1; FAC ¶ 9. On September 15, 2010, the Woods Way First DOT was assigned to the Bank of New York Mellon as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-OA17, Mortgage Pass-Through Certificates, Series 2006-OA17. RJN, Exh. 2.

In November 2006, Plaintiffs obtained a HELOC from WaMu for $130,000. The HELOC was secured by a second deed of trust encumbering the Woods Way Property ("Woods Way Second DOT"). RJN, Exh. 3; FAC ¶ 9. Under the terms of the HELOC Plaintiffs could "borrow, repay and re-borrow from time to time, up to the maximum credit limit" of $130,000, "and all such advances [were] secured by the lien" of the Woods Way Second DOT. Exh. 3, ¶ 2. The Woods Way Second DOT required Plaintiffs to "perform on time all terms, covenants and conditions of any prior mortgage or deed of trust covering the Property ... and pay all amounts due and owing thereunder in a timely manner." *Id.* ¶ 4(d).

The Woods Way Second DOT contained several provisions governing the timing of repayment of any money borrowed

Case 1:20-cv-03053-RMB-AMD Document 23-3 Filed 03/12/21 Page 4 of 10 PageID: 491

Dimas v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2018)

pursuant to the HELOC. These provisions were identical to those in the Pocatello Second DOT. Namely, the Woods Way Second DOT provided that "unless sooner repaid, all amounts due under [the HELOC agreement] are due and payable in full thirty (30) years from the date of" the Woods Way Second DOT. *Id.* Second, the Woods Way Second DOT provided that "the entire Debt shall become immediately due and payable in full upon sale or other transfer of the Property or any interest therein by contract of sale or otherwise." *Id.* ¶ 5. Third, the Woods Way Second DOT contained an acceleration clause that provided that if Plaintiffs defaulted on the Woods Way First DOT or the Woods Way Second DOT, "the Debt and any other money whose repayment is secured by this Deed of Trust shall immediately become due and payable in full, at the option of Beneficiary." *Id.* ¶ 7.

As explained above, WaMu failed in 2008. Chase acquired some of WaMu's assets from the FDIC-Receiver, including WaMu's interest in the Woods Way Second DOT. *See* RJN Exh. 4.

Plaintiffs defaulted on both their original loan and their HELOC on the Woods Way Property in or around 2008. FAC ¶ 13. On November 1, 2011, the Woods Way Property was sold at a non-judicial foreclosure sale through foreclosure on the Woods Way First DOT. RJN, Exh. 5.

### 3. Defendant Issues Two 1099-Cs in 2016

Plaintiffs made no payments on either of the HELOCs since 2008. FAC ¶¶ 13, 15. Defendant sent two Tax Year 2015 Form 1099-Cs to Plaintiffs in early 2016. FAC ¶ 15. The 1099-C for the Pocatello Property stated that Plaintiffs received discharged and forgiven debt in the amount of $123,976.19. FAC ¶ 17. The 1099-C for the Woods Way Property stated that Plaintiffs received discharged and forgiven debt in the amount of $126.280.80. FAC ¶ 16. The "identifiable event date" was marked as July 9, 2015 on both forms, and the "identifiable event code" on both forms was marked as "F," which signifies that there was an agreement between the creditor and the debtor to cancel the debt at less than full consideration. FAC ¶¶ 16-17. Plaintiffs contend that they had no such agreement with Defendant. FAC ¶¶ 16-17. Plaintiffs also contend that because the applicable limitations period for collecting the underlying debt had already expired, there was no underlying debt left to collect. As a result, Plaintiffs contend that Defendant erred in issuing the 1099-Cs. FAC ¶¶ 16-17, 35-36.

**\*4** The 1099-Cs stated that Plaintiffs received the 1099-C forms "because a Federal Government agency or applicable financial entity (a creditor) has discharged (canceled or forgiven) a debt you owed, or because an identifiable event has occurred that either is or is deemed to be a discharge of a debt of $600 or more. If a creditor has discharged a debt you owed, you are required to include the discharge amount in your income." FAC ¶ 18. Plaintiffs allege that they relied on this statement and, as a result, included the 1099-C forms in their taxes for the year 2015, which resulted in about $92,000 in additional taxes and the loss of a $20,000 refund, in addition to continuing penalties and interest. FAC ¶¶ 34, 45.

However, Plaintiffs fail to mention the next part of the standard instructions on the 1099-C, which states, "However, you may not have to include all of the canceled debt in your income. There are exceptions and exclusions, such as bankruptcy and insolvency." *See* Tax Year 2015 1099-C Cancellation of Debt Form, Informational Copy, https://www.irs.gov/pub/irs-prior/f1099c-2015.pdf.[3] The instructions go on, "If an identifiable event has occurred but the debt has not actually been discharged, then include any discharged debt in your income in the year that it is actually discharged, unless an exception or exclusion applies to you in that year." *Id.*

On or about February 11, 2017, and February 13, 2017, Plaintiffs' counsel contacted Defendant's Vice President and Assistant General Counsel Mark Kaplowitz to inquire about the issuance of the 1099-Cs. FAC ¶ 38. Mr. Kaplowitz requested additional information, which Plaintiffs provided. *Id.* On or about March 29, 2017, Defendant's Mortgage Banking Executive Office responded and refused to withdraw the 1099-C forms. FAC ¶ 39. Defendant contended that in 2015 it "made a decision to no longer collect on [Plaintiffs'] accounts and to cancel [Plaintiffs'] debt." *Id.* On April 20, 2017, Plaintiffs' counsel requested an explanation of Defendant's position. FAC ¶ 40. On May 1, 2017, Defendant's Mortgage Banking Executive Office responded that its "position has not changed and [it] maintain[s] the statements were correctly issued based on [its] actions in 2015." FAC ¶ 41.

### C. Procedural History

Plaintiffs filed a complaint in state court on July 7, 2017. ECF No. 1-2 at 5. Defendant removed the case to federal court on September 8, 2017. ECF No. 1. On September 15, 2017, Defendant filed a motion to dismiss the complaint. ECF

Case 1:20-cv-03053-RMB-AMD   Document 23-3   Filed 03/12/21   Page 5 of 10 PageID: 492

Dimas v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2018)

No. 6. On September 29, 2017, Plaintiffs filed an amended complaint. ECF No. 13. As a result, the Court denied as moot Defendant's motion to dismiss. ECF No. 14.

Defendant filed the instant motion to dismiss the amended complaint on October 16, 2017, ECF No. 15 ("Mot."), as well as a request for judicial notice of a range of documents related to the case, ECF No. 15-1 ("RJN"). Plaintiffs filed an opposition on October 30, 2017. ECF No. 16 ("Opp'n"). Plaintiffs also filed objections to Defendant's request for judicial notice. ECF No. 16-2. Defendant filed replies to the opposition, ECF No. 17 ("Reply"), and to the objections, ECF No. 18.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe [s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

 *5  The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. REQUEST FOR JUDICIAL NOTICE

The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records, including judgments and other publicly filed documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

### A. Deeds of Trust and Related Documents

Defendant has requested judicial notice of a range of documents related to the transactions underlying the dispute in this case. *See* RJN. Specifically, Defendant has requested judicial notice of the Pocatello First DOT, Pocatello Second DOT, Woods Way First DOT, Woods Way Second DOT, and the Substitution of Trustee and Assignment of Deed of Trust

Case 1:20-cv-03053-RMB-AMD   Document 23-3   Filed 03/12/21   Page 6 of 10 PageID: 493

Dimas v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2018)

for the Woods Way Property. *See* RJN at 2. Defendant has also requested judicial notice of the Trustee's Deeds Upon Sale for the Pocatello and Woods Way Properties. *Id.*

Judicial notice of these documents is appropriate for two reasons. First, all of these documents are recorded in the official records of Santa Clara County, and as such these documents are matters of public record. Courts routinely take judicial notice of documents officially recorded in county public records, including deeds of trust. *See, e.g.*, *Petrovich v. Ocwen Loan Servicing, LLC*, No. 15-cv-33-EMC, 2016 WL 555959, at *3 (N.D. Cal. Feb. 12, 2016) (collecting cases that take judicial notice of deeds of trust, substitutions of trustee, and documents related to default and foreclosure as matters in the public record); *Quinto v. JP Morgan Chase Bank*, No. CV-10-5845-JF, 2011 WL 809314, at *2 (N.D. Cal. Mar. 2, 2011) (taking judicial notice of deeds of trust and foreclosure-related documents); *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1121 (N.D. Cal. 2009) (taking judicial notice of officially recorded documents including deeds of trust).

**\*6** Additionally, under the incorporation by reference doctrine, a court "may take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.' " *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (quoting *Kneivel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original)). Here, Plaintiffs reference in the FAC the deeds of trust and related documents identified above by (1) alleging that Plaintiffs owned the Pocatello and Woods Way Properties, FAC ¶¶ 9-10; (2) alleging that Plaintiffs had second loans on the Pocatello and Woods Way Properties with Defendant, FAC ¶¶ 9-10; (3) alleging that the Pocatello and Woods Way properties were both foreclosed upon, FAC ¶ 14. Accordingly, the Court may consider these documents because the FAC incorporated them by reference. *See Quinto*, 2011 WL 809314 at *2 (taking judicial notice of deeds of trust under the incorporation by reference doctrine).

Plaintiffs object to judicial notice of the documents because they claim to "dispute[ ] many of the facts contained in the documents." ECF No. 16-2 at 1. However, Plaintiffs do not actually identify any facts that they dispute. Rather, Plaintiffs highlight several alleged "discrepancies" in the documents, such as "[r]andom out of place signatures and crossed out dates," "[n]ame misspellings throughout the documents," and unspecified "[m]issing documents." *Id.* Notably, Plaintiffs do not contend that the documents are factually inaccurate, nor do they dispute that they signed these documents, nor do they dispute that they took out these loans and defaulted on these loans. As such, the Court finds that Plaintiffs have not raised a reasonable question as to the accuracy of the deeds of trust and related documents. *See* Fed. R. Evid. 201(b); *Allen v. United Financial Mortg. Corp.*, 660 F. Supp. 2d 1089, 1093 (N.D. Cal. 2009) (finding that "perfunctory challenges" to documents in the county recorder's office, including that documents are missing official stamps and are missing riders, did not raise a reasonable dispute as to authenticity).

Plaintiffs also broadly contend that "judicial notice is not proper for documents in the county recorder's office." ECF No. 16-2 at 2. For this proposition, Plaintiffs rely on decisions from the Supreme Court of New Mexico from 1919, the Supreme Court of Arizona from 1958, and the Supreme Court of Utah from 1967. *Id.* (citing *Blake v. Cavins*, 185 P. 374 (N.M. 1919); *Murphey v. Gray*, 327 P.2d 751 (Ariz. 1958); and *Holbrook v. Carter*, 19 Utah 2d 288 (1967)). None of these decisions are binding on this Court, and Plaintiffs make no effort to distinguish the great weight of authority from federal courts recognizing that judicial notice of documents in the county recorder's office is appropriate. Accordingly, Plaintiffs' objections are OVERRULED, and Defendant's request for judicial notice of the publicly recorded documents is GRANTED.

### B. P&A Agreement

Defendant also requests judicial notice of the P&A Agreement between itself and the FDIC. *See* RJN ¶ 4. Plaintiffs object because the P&A Agreement "is not recorded, nor is it authenticated," and "[n]o evidence [ ] shows it as the operative agreement." ECF No. 16-2 at 1. Defendant argues that the P&A Agreement is nonetheless judicially noticeable because it is a government document and is publicly available on the FDIC's website.[4] ECF No. 18 at 3. Defendant is correct that government documents and documents available on government websites are generally judicially noticeable. *See Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." (internal quotation marks and alterations omitted)). Moreover, with respect to the P&A Agreement in particular, numerous federal courts have taken judicial notice of this specific agreement. *See, e.g.*, *Quinta*, 2011 WL 809314 at *2; *Allen*, 660 F. Supp. 2d at 1093-94.

Case 1:20-cv-03053-RMB-AMD   Document 23-3   Filed 03/12/21   Page 7 of 10 PageID: 494

Dimas v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2018)

Indeed, the Ninth Circuit has held that judicial notice of the P&A Agreement was proper. *See Carmichael v. Wash. Mut. Bank, F.A.*, 508 Fed.Appx. 666, 666-67 (9th Cir. 2013) (unpublished); *Carswell v. JP Morgan Chase Bank N.A.*, 500 Fed.Appx. 580, 583 (9th Cir. 2012) (unpublished). Because Plaintiffs have not raised a reasonable question as to the P&A Agreement's authenticity, Plaintiffs' objection is OVERRULED, and Defendant's request for judicial notice of the P&A Agreement is GRANTED.

### C. PACER Search Results

**\*7** Defendant also requests that the Court take judicial notice of the lack of any bankruptcy filings made by either Plaintiff. RJN at ¶ 6. Defendant does so by submitting printouts of PACER search results. Plaintiffs object to this request for judicial notice on the ground that the PACER search results lack a supporting declaration. ECF No. 16-2 at 1. Defendant counters that it is simply asking the Court to take notice of the lack of any bankruptcy court filings by either Plaintiff. ECF No. 18 at 4.

Courts "may take judicial notice of court filings." *Reyn's Pasta Bella LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). The Court has confirmed through its own search that neither Plaintiff has filed for bankruptcy in the Northern District of California. The Court thus takes judicial notice of this fact and OVERRULES Plaintiffs' objection.

### IV. DISCUSSION

Plaintiffs do not dispute that they defaulted on both the Pocatello and Woods Way HELOCs. *See* Opp'n at 1. Nor do Plaintiffs contend that their debt on the HELOCs was satisfied through foreclosure or discharged through bankruptcy. Rather, Plaintiffs' theory of the case is that the limitations period for Defendant to collect on the HELOC debt had expired and left "no valid or timely debt left to forgive" at the time that Defendant issued the 1099-Cs. *Id.* at 1-2; *see also* FAC ¶ 36 ("[A]t the time Defendants issued the 1099-C forms to Plaintiffs, there was no debt to discharge."). As a result, Plaintiffs contend that "[n]o such 1099-Cs should have been issued, and there was nothing left to forgive." Opp'n at 2. Plaintiffs misstate the legal effect of an expiration of the limitations period on an underlying debt in a way that is fatal to all of their claims. Accordingly, the Court first explains the error in Plaintiffs' statute of limitations analysis. Then the Court then explains why Plaintiffs have failed to state a claim for negligence, fraud, or unfair competition under their current theory.

### A. Legal Effect of Expiration of Limitations Period

" 'Statute of limitations' is the 'collective term ... commonly applied to a great number of acts,' or parts of acts, that 'prescribe the periods beyond which' a plaintiff may not bring a cause of action." *Norgart v. Upjohn Co.*, 981 P.2d 79, 86 (Cal. 1999) (quoting 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 405). "It has as a purpose to protect defendants from the stale claims of dilatory plaintiffs. It has as a related purpose to stimulate plaintiffs to assert fresh claims against defendants in a diligent fashion." *Id.* at 86-87 (citations omitted).

The "statute of limitations is procedural; it affects the remedy only, not the substantive right or obligation." 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 432; *see also Mitchell v. Automobile Owners Indem. Underwriters*, 118 P.2d 815, 817 (Cal. 1941) (stating, in the context of Cal. Civ. Code § 2911, which provides that expiration of the limitations period on the principal obligation extinguishes a lien, that "[t]he bar of the statute of limitations, however, affects the remedy only and does not impair the obligation"). Specifically, "[t]he statute of limitations operates in an action as an affirmative defense." *Norgart*, 981 P.2d at 87. Defendants can waive or forfeit a statute of limitations defense either by contract or by failure to affirmatively invoke the defense. *See Minton v. Cavaney*, 364 P.2d 473, 476 (Cal. 1961); Cal. *First Bank v. Braden*, 264 Cal. Rptr. 820, 822 (Ct. App. 1989). Defendants can also be estopped from asserting a statute of limitations defense. *See Vu v. Prudential Property & Casualty Ins. Co.*, 33 P.3d 487, 493 (Cal. 2001).

**\*8** In order for these rules to make sense, it must be true that "the underlying debts are not substantively affected" by the expiration of the limitations period for bringing an action to collect on the debts. *See Abels v. JBC Legal Grp., P.C.*, 428 F. Supp. 2d 1023, 1027 (N.D. Cal. 2005) (interpreting California law); *Asset Acceptance, LLC v. Hanson*, 2009 WL 840047 at \*4-6 (Cal. Ct. App. Apr. 1, 2009) (adopting analysis in *Abels*). Indeed, Plaintiffs' theory—that the expiration of the limitations period eliminated their underlying debt—makes no sense in light of these rules, which clearly contemplate circumstances in which an untimely action to collect on a debt would be allowed to proceed. Plaintiffs cite no authority for their assertion that there was "no debt to discharge" due to the expiration of the limitations period, and the Court is aware of none. Accordingly, while Defendant may have been precluded from collecting the debt underlying the HELOCs if the applicable statute of limitations had run, that underlying

Case 1:20-cv-03053-RMB-AMD  Document 23-3  Filed 03/12/21  Page 8 of 10 PageID: 495

Dimas v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2018)

debt still existed as a matter of law at the time that Defendant issued the 1099-Cs.[5]

**B. Because Debt Still Existed as a Matter of Law, Plaintiffs' Claims Fail**

This conclusion—that Plaintiffs' debt still existed as a matter of law when Defendant issued the 1099-Cs—is fatal to all of Plaintiffs' claims as they are currently alleged in the FAC. Specifically, all of Plaintiffs' claims are based on the premise that Defendant erroneously issued 1099-Cs that should never have been issued. *See* FAC ¶¶ 46-69. The only reason Plaintiffs offer for why the 1099-Cs should never have been issued is that there was "no valid or timely debt left to forgive" because the statute of limitations had run on the debt. Opp'n at 1-2; *see also* FAC ¶ 36. As explained above, however, there *was* debt left to forgive because any expiration of the limitations period would not have extinguished the debt as a matter of law. Such an expiration of the limitations period would only have affected Defendant's ability to collect on the debt.

As what appears to be the only other court to have considered a similar argument explained, "[t]he fact that [Defendant] cannot legally collect any remaining debt does not preclude a finding that a 'discharge of indebtedness' has occurred." *Higgins v. I.R.S.*, 403 B.R. 537, 541 (E.D. Tenn. 2009). Indeed, § 1.6050P-1(b)(2)(C) specifically requires that a creditor issue a 1099-C if the creditor cancels a debt "upon the expiration of the statute of limitations for collection of an indebtedness." *See also Higgins*, 403 B.R. at 541 ("[I]ndeed, [the expiration of the limitations period] is the very reason that the 'discharge of indebtedness' at issue here operates as to the Appellants."). Accordingly, Plaintiffs fail to allege a legally sufficient theory as to why the 1099-Cs should not have been issued. This failure is fatal to each of their claims, as the Court explains below.

**1. Negligence**

"The elements of a cause of action for negligence are (1) the existence of a duty to exercise due care, (2) breach of that duty, (3) causation, and (4) damages." *Rossetta v. CitiMortgage, Inc.*, 18 Cal. App. 5th 628, 2017 WL 6422567, at *5 (Ct. App. 2017) (citing *Merrill v. Navegar, Inc.*, 28 P.3d 116 (Cal. 2001)). Even assuming that Defendant owed Plaintiffs a duty of care—a point that Defendant disputes —Plaintiffs fail to adequately plead breach, causation, or damages. Plaintiffs assert that Defendant breached its duty by misrepresenting on the 1099-Cs that Plaintiffs received discharged and forgiven debt. *See* Opp'n at 5-6. Plaintiffs argue that this was a misrepresentation because there was no debt left to forgive because the statute of limitations had run. As explained above, there was debt left to forgive, so this theory of misrepresentation fails as a matter of law.

**\*9** Plaintiffs also allege that Defendant used the wrong event code on the 1099-Cs when it marked event code "F," which indicates a discharge pursuant to an agreement between Plaintiffs and Defendant to discharge the debt at less than full consideration. Plaintiffs contend that they had no such agreement with Defendant. FAC ¶¶ 16-17. However, even assuming that use of the wrong event code was a misrepresentation that constituted a breach in the duty of care, Plaintiffs still fail to state a negligence claim because Plaintiffs do not allege that Defendant's use of the wrong code injured Plaintiffs. Specifically, Plaintiffs do not argue that issuance of the 1099-Cs would have been improper under all other event codes. To the contrary, Plaintiffs allege that Defendant told Plaintiffs' counsel that Defendant issued the 1099-Cs because Defendant "made a decision to no longer collect on [Plaintiffs'] accounts and to cancel [Plaintiffs'] debt." FAC ¶ 38. Plaintiffs' own allegations thus suggest that Defendant could have used event code "G," which indicates a decision by the creditor to discontinue collection activity. *See* § 1.6050P-1(b)(2)(G). Thus, at most, Plaintiffs' allegations support a conclusion that Defendant issued the 1099-Cs using the wrong event code, not that Defendant should not have issued the 1099-Cs at all. Plaintiffs only allege damages based on the assumption that no 1099-Cs should have issued. Plaintiffs do not allege they would have had lower or no tax liability if the 1099-Cs had borne the code "G" rather than "F." Accordingly, even assuming duty and breach, Plaintiffs have failed to plead causation or damages based on their only legally viable misrepresentation allegation.

Defendant's motion to dismiss the negligence count is therefore GRANTED. Because it is conceivable that Plaintiffs could amend their complaint to allege a negligence claim under a different theory, the Court grants Plaintiffs leave to amend.

**2. Fraud**

"The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting

Case 1:20-cv-03053-RMB-AMD   Document 23-3   Filed 03/12/21   Page 9 of 10 PageID: 496

Dimas v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2018)

*Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903 (Cal. 1997)). The fraud claim fails for the same reasons that the negligence claim does. Specifically, Plaintiffs' primary theory of misrepresentation relies on the incorrect conclusion that there was no debt left to forgive when Defendant issued the 1099-Cs. As explained above, this theory fails as a matter of law. Moreover, the alleged incorrect use of event code "F" cannot be the sole basis for a fraud claim because Plaintiffs fail to allege that they suffered damage from the incorrect use of event code "F" that they would not have suffered if Defendant had issued the 1099-C using an acceptable code, as explained above.

Defendant's motion to dismiss the fraud count is therefore GRANTED. Because it is conceivable that Plaintiffs could amend their complaint to allege a fraud claim under a different theory, the Court grants Plaintiffs leave to amend.

### 3. Unfair Competition

California's Unfair Competition Law ("UCL") requires a plaintiff to demonstrate statutory standing. To establish statutory standing under the UCL, a plaintiff must demonstrate that she "suffered injury in fact and [ ] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. California courts have held that when the "unfair competition" underlying a plaintiff's UCL claim consists of a defendant's misrepresentation, a plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, in order to have standing to sue. *See In re Tobacco II Cases,* 207 P.3d 20, 39 (Cal. 2009) (concluding that Proposition 64 added "an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong"); *Durell v. Sharp Healthcare,* 108 Cal. Rptr. 3d 682, 687-88 (Ct. App. 2010) ("[W]e conclude that to have standing to bring a claim under the 'unlawful' prong of the UCL, in which the predicate unlawful conduct is based on misrepresentations, as here, the reasoning of *Tobacco II* is equally applicable and actual reliance is an element of the claim."); *accord Kwikset Corp. v. Superior Court,* 246 P.3d 877, 887 (Cal. 2011) (stating that "Proposition 64 requires that a plaintiff's economic injury come 'as a result of' the unfair competition or a violation of the false advertising law" and explaining that *Tobacco II* held that actual reliance was required). In line with this authority, this Court has consistently required allegations of actual reliance and injury at the pleading stage for claims under all three prongs of the UCL where such claims are premised on misrepresentations. *See Doe v. SuccessfulMatch.com,* 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014) (observing that in *Kwikset,* 246 P.3d 877, the "California Supreme Court suggested the actual reliance requirement applies whenever the underlying misconduct in a UCL action is fraudulent conduct"); *Kane v. Chobani, Inc.,* 973 F. Supp. 2d 1120, 1129 (2014) (requiring actual reliance under all three prongs of the UCL based on *Tobacco II*, *Durell*, and *Kwikset*). The "causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law." *Daro v. Superior Court,* 151 Cal. App. 4th 1079, 1099 (2007).

**\*10** Once again, Plaintiffs' theory underpinning their UCL claim is that Defendant wrongfully issued 1099-Cs even though there was no underlying debt to forgive. Opp'n at 14. As explained above, this theory fails as a matter of law because the underlying debt still existed. Plaintiffs offer no other reason for why Defendant could not have issued the 1099-Cs using some other event code. Nor do Plaintiffs assert that they suffered damages as a result of the allegedly incorrect use of event code "F" that they would not have suffered if Defendant had issued the 1099-Cs using another event code. As such, Plaintiffs have failed to establish statutory standing under the UCL because they have not sufficiently alleged that they suffered economic injury as a result of Defendant's actions.

Defendant's motion to dismiss the unfair competition count is therefore GRANTED. Because it is conceivable that Plaintiffs could amend their complaint to allege an unfair competition claim under a different theory, the Court grants Plaintiffs leave to amend.

### V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss the First Amended Complaint with leave to amend. If Plaintiffs fail to file an amended complaint within 30 days or fail to cure the deficiencies identified in this order, the claims dismissed in this order will be dismissed with prejudice. Plaintiffs may not add new causes of action or new parties without a stipulation or leave of the Court.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 809508

Case 1:20-cv-03053-RMB-AMD   Document 23-3   Filed 03/12/21   Page 10 of 10 PageID: 497

Dimas v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2018)

## Footnotes

1. All references to 26 C.F.R. § 1.6050P-1 in this Order are to the version of that regulation that was in effect between July 15, 2014 and November 9, 2016 (when Defendant issued the Form 1099-Cs in this case), and not to the current version, which took effect on November 10, 2016.
2. The Court grants Defendant's request for judicial notice and overrules Plaintiffs' objections in Section III, below.
3. The Court takes judicial notice of the Informational Copy of the 2015 Tax Year 1099-C form available on the IRS's website. See Gerritsen v. Warner Bros. Entertainment Inc., 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." (internal quotation marks and alterations omitted)).
4. The P&A Agreement is available at https://www.fdic.gov/about/freedom/washington_mutual_p_and_a.pdf.
5. The fact that Defendant's liens on the properties had expired with the foreclosure sale of the properties pursuant to the senior deeds of trust is irrelevant to whether the underlying debt still existed. See Roseleaf Corp. v. Chierighino, 378 P.2d 97, 100 (Cal. 1963) (holding that a junior lienor can pursue a deficiency judgment even after the security is lost through a foreclosure sale under the senior lien).

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.