[Docket No. 16]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

JOHN GERICKE, individually and on behalf of all individuals similarly situated,

Plaintiff,

v.

TRUIST, et al.,

Defendants.

Civil No. 20-3053 (RMB/AMD)

**OPINION**

**APPEARANCES:**

LEWIS G. ADLER
LAW OFFICE OF LEWIS ADLER
26 NEWTON AVENUE
WOODBURY, NEW JERSEY 08096

*On behalf of Plaintiff*

DAVID G. MURPHY & DIANE A. BETTINO
REED SMITH, LLP
136 MAIN STREET, SUITE 250
PRINCETON, NEW JERSEY 08540

*On behalf of Defendant*

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court on the Motion to Dismiss brought by Defendant Truist Bank ("Truist"). [Docket No. 16.] For the reasons expressed below, the Court will grant Truist's Motion.

## I. FACTUAL BACKGROUND[1]

This putative class action stems from a consumer installment loan taken out by Plaintiff John Gericke ("Gericke") sometime prior to 2012. In early 2012, Susquehanna Bank obtained a judgment in the amount of $244,248.49 against Gericke and his wife Barbara Gericke ("Mrs. Gericke").[2] The judgment (number J-062680-12) was levied against the personal and real property of the Gerickes. This real property included Gericke's property at 248 Hampshire Drive, Deptford, New Jersey (the "Property").

Over the next several years, Gericke failed to satisfy the judgment. He attempted to reach a settlement with Truist, but negotiations proved unsuccessful. Therefore, on or about January 10, 2018, Truist issued a 2018 Form 1099-C to Gericke. This 1099-C indicated that $199,427.80 was the "[a]mount of debt discharged" due under "[i]dentifiable event code G." [Docket No. 1-2, Exhibit 1.] Code G represents a "[d]ecision or policy to discontinue collection." [Id.]

---

[1] This factual background is taken from the Complaint, exhibits attached thereto, and matters of public record. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (stating that a court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record") (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

[2] Susquehanna Bank merged with Branch Banking and Trust Company ("BB&T") effective August 1, 2015. Thereafter, on December 7, 2019, SunTrust Bank merged into BB&T to form Truist Bank, the Defendant here.

Gericke alleges that the issuance of the Form 1099-C should have resulted in the debt being forgiven and/or the judgment being voided. Truist, on the other hand, argues that the debt was not forgiven, nor the judgment voided, by the Form 1099-C because the "1099-C was filed in accordance with IRS regulations (IRS code section 6050P) to report unpaid debt as income. The bank's filing of the 1099-C in compliance with IRS regulations does not release [Truist Bank's] judgment as it has not been settled or paid." [Id., Exhibit 4.] This dispute is the crux of this matter.

**II. PROCEDURAL HISTORY**

On January 27, 2020, Gericke filed the Complaint against Truist in the Superior Court of New Jersey, Gloucester County, under docket number L-112-20. [See id., Exhibit A.] The Complaint alleges a putative class of "New Jersey citizens who have received loans held by defendants that were the subject of judgments entered against those citizens and who received from defendants a 1099-c [sic] form regarding the judgment." [Id., ¶ 84.] It alleges that Truist violated the New Jersey Consumer Fraud Act ("CFA") and the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA") by issuing 1099-Cs while taking "the position that plaintiffs still owe defendants a substantial debt, failing to confirm for plaintiffs that the debt is forgiven and failing to rescind the 1099-C form." [Id., ¶ 40.] The Complaint lists three Counts under the CFA and the TCCWNA.

Truist removed this action to this Court on March 19, 2020. [Docket No. 1.] The parties exchanged pre-motion letters, consistent with the Court's Individual Rules and Procedures, in June 2020. [Docket Nos. 12, 14.] Thereafter, Truist filed the pending Motion to Dismiss on July 13, 2020. [Docket No. 16.] Gericke timely filed his brief in opposition on July 23, 2020. [Docket No. 17.] Truist timely replied on August 10, 2020. [Docket No. 18.] Thereafter, the Court ordered the parties to file supplemental briefs, [Docket No. 21], which they did, [Docket Nos. 22-23]. The Court held oral argument on March 17, 2021.

**III. JURISDICTION**

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Truist is citizen of North Carolina because it is a North Carolina State-Chartered Bank with its principal place of business in Charlotte, North Carolina. [See Docket No. 1, ¶ 9.] Gericke is a citizen of New Jersey. [Id., ¶ 10.] Therefore, the parties are completely diverse for purposes of subject matter jurisdiction. Moreover, the amount in controversy exceeds $75,000. [Id., ¶ 11.] Subject matter jurisdiction exists on the basis of diversity jurisdiction.

**IV. STANDARD**

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of

Civil Procedure 12(b)(6),[3] a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. Of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

[3] The parties agreed at oral argument that the motion to dismiss standard applies here and that the Motion would not need to be converted to a Motion for Summary Judgment.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt, 770 F.3d at 249 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

**V. ANALYSIS**

As noted above, this case alleges violations of the CFA and Section 15 of the TCCWNA. First, to state a claim under the CFA, a plaintiff must allege "(1) an unlawful practice, (2) an

'ascertainable loss,' and (3) 'a causal relationship between the unlawful conduct and the ascertainable loss.'" Gonzalez v. Wilshire Credit Corp., 25 A.3d 1103, 1115 (N.J. 2011) (quoting N.J.S.A. § 56:8-19). The CFA defines an "unlawful practice" as the

> use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby.

N.J.S.A. § 56:8-2.

Second, to state a claim under the TCCWNA, the plaintiff is required to establish four elements:

> [F]irst that the defendant was a "seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid"; second, that the defendant offered or entered into a "written consumer contract or [gave] or display[ed] any written consumer warranty, notice or sign"; third, that at the time that the written consumer contract is signed or the written consumer warranty, notice or sign is displayed, that writing contains a provision that "violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee" as established by State or Federal law; and finally, that the plaintiff is an "aggrieved consumer."

Spade v. Select Comfort Corp., 181 A.3d 969, 976 (N.J. 2018) (quoting N.J.S.A. §§ 56:12-15, 17); see also Patterson v. Forever 21, Inc., 2018 WL 5313920, at *4 (D.N.J. Oct. 26, 2018) (quoting Spade, 181 A.3d at 976).

Critical to this Motion, both the CFA and the TCCWNA, therefore, require that the defendant engage in an "unlawful practice" or "violate[] any clearly established legal right."

Here, Gericke alleges that Truist acted unlawfully by, in essence, issuing a Form 1099-C without actually cancelling the debt or judgment in question. Therefore, the crux of this matter is whether or not the issuance of a Form 1099-C automatically means that the underlying debt is in fact forgiven or the underlying judgment is in fact voided. All of Gericke's claims depend on this issue. Gericke rests his case on the proposition that

> [c]reditors such as defendant[] should not send borrowers such as plaintiff[] a 1099-C form unless the debt is really canceled by defendants. If, after issuing a 1099-C form, creditors such as defendant[] fail to confirm for debtors such as plaintiff[] that the debt is forgiven, they should rescind the 1099-C form. Otherwise, the unrescinded [1]099-C form violates applicable federal regulations

such as 26 C.F.R. Part 1 and 26 U.S.C. § 6050P. [Docket No. 1-2, ¶ 16.][4]

Gericke, however, fundamentally misunderstands the ramifications of the issuance of a Form 1099-C. Pursuant to 26 U.S.C. § 6050P, "[a]ny applicable entity which discharges (in

---

[4] Gericke also argues that the fact that the IRS amended one of its regulations, known as the 36-month rule, in 2017 is somehow relevant. However, the 36-month rule would apply to Forms 1099-C coded with the letter "H." This case involves a Form 1099-C coded with the letter "G." Therefore, this aspect of Gericke's argument is irrelevant. [See Docket No. 16-1, at 12-14.]

whole or in part) the indebtedness of any person during any calendar year shall" file a 1099-C that "set[s] forth" "(1) the name, address, and TIN of each person whose indebtedness was discharged during such calendar year, (2) the date of the discharge and the amount of the indebtedness discharged, and (3) other such information as the Secretary may prescribe." 26 U.S.C. § 6050P(a); see also Lewis v. Synchrony Bank, Civil Action No. 20-cv-3090, 2021 WL 307546, at *2 (D.N.J. Jan. 28, 2021) (quoting 26 U.S.C. § 6050P). Although "discharge" is not defined explicitly by the statute, the term must be afforded its meaning in context. Creatures of tax law, "discharge" and "actual discharge" are distinct terms. As Truist has argued, "discharge" is a nuanced term in the context of tax law. The Tax Court has held that "[d]ischarge of a debt occurs when it becomes clear that the debt will never be repaid." Cozzi v. Comm'nr, 88 T.C. 435, 445 (1987) (citing United States v. S.S. White Dental Mfg. Co., 274 U.S. 398 (1927)). "The determination of whether a discharge of indebtedness has occurred for tax purposes is extremely fact sensitive, often turning on the subjective intent of the creditor as manifested by an objectively identifiable event." Owens v. Comm'nr, 84 T.C.M. (CCH) 419, 422 T.C. Memo. 2002-253 (2002), aff'd in part, rev'd in part and remanded, 67 F. App'x 253 (5th Cir. 2003). This realization that a debt will not be repaid, however, is distinct from the cancellation or actual discharge of the debt. Indeed, the

Tax Code contemplates the multiplicity of the meaning of "discharge" in the tax context. For instance, Section 108, like Section 6050P, repeatedly modifies "discharge" with the phrase "in whole or in part." See 26 U.S.C. § 108(a)(1), (f)(1). The Court agrees with Truist's conclusion that "[i]mplicit within the term 'discharge' itself under the Tax Code . . . is the notion that there are varying degrees; i.e., in whole or in part, as well as 'discharge' and 'actual discharge.'" [Docket No. 23, at 5.]

The Court further finds that the regulations that implement 26 U.S.C. 6050P are consistent with the statute. They, too, distinguish "discharge" and "actual discharge." Under 26 C.F.R. § 1.6050P-1(b)(2)(i)(G), "[t]here are eight delineated events that can trigger the filing and issuance of a Form 1099-C," including, relevant here, the "discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt." Lewis, 2021 WL 307546, at *2 (quoting 26 C.F.R. § 1.6050P-1(b)(2)(i)(G)). To "most" courts, "the issuance of a Form 1099-C does not automatically discharge a debt." Id. (quoting Johnson v. Branch Banking & Tr. Co., No. 3:18-CV-150-CRS, 2018 WL 4492478, at *2 (W.D. Ky. Sept. 19, 2018); see, e.g., FDIC v. Cashion, 720 F.3d 169, 176-81 (4th Cir. 2013); Cadle v. Neubauer, 562 F.3d 369, 374 (5th Cir. 2009); Wells Fargo Advisors, LLC v. Mercer, 735 F. App'x 23 (7th Cir. 2018). Conversely, a small minority of courts has

found that "the issuance of a Form 1099-C may be prima facie evidence of cancellation of debt, [which] the lender may rebut [with] evidence . . . showing that when it issued the form it did not intend to forgive the obligation." See, e.g., Amtrust Bank v. Fossett, 224 P.3d 935, 937 (Ariz. Ct. App. 2009) (emphasis added).[5]

Hence, while a Form 1099-C contemplates the "discharge" of a debt, it does not dictate an "actual discharge." The regulation makes clear the distinction between "discharge" and "actual discharge":

> [A]ny applicable entity (as defined in section 6050P(c)(1)) that discharges an indebtedness of any person (within the meaning of section 7701(a)(1)) of at least $600 during a calendar year must file an information return on Form 1099-C with the Internal Revenue Service. Solely for the purposes of the reporting requirements of section 6050P and this section, a discharge of indebtedness is deemed to have occurred, except as provided in paragraph (b)(3) of this section, if and only if there has occurred an identifiable event described in paragraph (b)(2) of this section, whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred.

26 C.F.R. § 1.6050P-1(a)(1) (emphasis added). Every "identifiable event" requires either a "discharge," "cancellation," or "extinguishment." Id. § 1.6050P-1(b)(2). Yet, the regulation itself indicates that each of those can occur without an "actual discharge" occurring. Id. § 1.6050P-1(a)(1).

---

[5] As set forth infra, even if the Court adopted the minority rule, Gericke concedes that Truist did not intend to forgive the debt.

This distinction is also supported by the IRS's own instructions for taxpayers who receive a Form 1099-C:

> You received this form because a Federal Government agency or an applicable financial entity (a creditor) has discharged (canceled or forgiven) a debt you owed, or because an identifiable event has occurred that either is or is deemed to be a discharge of a debt of $600 or more. If a creditor has discharged a debt you owed, you are required to include the discharged amount in your income, even if it is less than $6000, on the "Other income" line of your Form 1040. However, you may not have to include all of the canceled debt in your income. There are exceptions and exclusions, such as bankruptcy and insolvency. See Pub. 4681, available at IRS.gov, for more details. If an identifiable event has occurred but the debt has not actually been discharged, then include any discharged debt in your income in the year that it is actually discharged, unless an exception or exclusion applies to you in that year.

[See Docket No. 1-2, Complaint Exhibit 1 (PDF page 38).]

Case law supports this conclusion, as well. For instance, the court in Wells Fargo Bank, N.A. v. Fraze, like here, analyzed the impact of a Form 1099-C issued pursuant to subsection "G." No. 19-10499-GAO, 2020 WL 1615866, at *2 (D. Mass. Apr. 2, 2020). The court wrote that

> the Form 1099-C was filed to conform with IRS regulations, in satisfaction of a reporting requirement for tax purposes that arose regardless of whether "an actual discharge of indebtedness [had] occurred." There is no other evidence offered that [the defendant] "actually" cancelled or discharged [the plaintiff's] debt. This view comports with a majority of courts that have considered the significance of the filing of Form 1099-C and have held that the Form 1099-C itself does not operate to legally discharge or otherwise cancel the underlying debt, but rather is simply the fulfillment of a reporting requirement to the IRS.

Id. (emphasis added) (citing F.D.I.C. v. Cashion, 720 F.3d 169, 178 (4th Cir. 2013)).

A court in this District was faced with a similar CFA claim recently in Walker v. Ocwen Loan Servicing, LLC, Civil Action No. 16-9157, 2017 WL 2957933 (D.N.J. July 11, 2017). In that case, the plaintiff argued "that it was an unlawful practice" under the CFA "for [the defendant] to report cancellations of debt on the Form 1099-Cs . . . because [the defendant] did not actually cancel the debt and the amount is still due." Id. at *2. The Court rejected this argument, noting that the defendant "was required by law to file" the Form 1099-C, which inherently meant that such filing could not constitute an "unlawful practice." Id. The Walker court supported its interpretation by referring to the Fourth Circuit decision in F.D.I.C. v. Cashion, 720 F.3d 169, 178 (4th Cir. 2013).

As both of those courts explained, "[t]he Code sets forth certain reporting requirements to the IRS, which the IRS regulations have implemented through the Form 1099-C filing requirement." Id. (citing Cashion, 720 F.3d at 178; 26 U.S.C. § 6050P). As the Cashion court reasoned, the "plain language" of Section 1.6050P-1(a) indicates that "a creditor," such as Truist here,

> may be obligated to file a Form 1099-C even though an actual discharge of indebtedness has not yet occurred or is not contemplated. Moreover, the identifiable event triggering the obligation may not involve an actual discharge of the debt; rather, the event may be deemed

> to constitute a "discharge" "[s]olely for purposes of" determining the Form 1099-C reporting obligation.

Cashion, 720 F.3d at 178-79. The Cashion court continued,

> The plain language of the regulation leads us to conclude that filing a Form 1099–C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of debt, nor is it required only where an actual discharge has already occurred.

Id. at 179.

With respect to the case at hand, the relevant triggering event was Truist's "decision," or the "application of [its] defined policy, to discontinue collection activity and discharge debt." 26 C.F.R. § 1.6050P-1(b)(2)(G). This was indicated by the code "G" indicated on the Form 1099-C. As the IRS's own instructions explain, "[a] creditor's defined policy can be in writing or an established business practice of the creditor." 2018 INSTRUCTIONS FOR FORMS 1099-A AND 1099-C, at 4, IRS (2018), https://www.irs.gov/pub/irs-prior/i1099ac--2018.pdf. Moreover, "[a] creditor's established practice to stop collection activity and abandon a debt when a particular nonpayment period expires is a defined policy." Id.

In this case, the parties attempted to settle the debt, but were ultimately unsuccessful in doing so. Eventually, Truist determined that "the Judgment was . . . inappropriate for continued pursuit for active collection within its collection process." [Docket No. 16-1, at 17-18.] Truist was therefore required to issue

the Form 1099-C to Gericke since the triggering event contemplated by 26 C.F.R. § 1.6050P-1(b)(2)(G) had occurred. However, as Gericke concedes, Truist made clear to Gericke that the Form 1099-C "does not release the client's judgment as it has not been settled or paid." [Docket No. 16-9, Complaint Exhibit 4.] Similar to the facts in Walker, "there does not appear to be any surrounding circumstances that could have misled [Gericke] into thinking [his] debt was actually discharged and no longer owed."[6] Walker, 2017 WL 2957933, at *4. Gericke admitted as much at oral argument. Here, it is clear that Truist was "required . . . to file the Form 1099-C to report the event, even though the debt was not discharged at that moment." See id. at *3.

Finally, the Court notes that "[a] basic principle of statutory construction is that [the Court] should avoid a statutory interpretation that leads to absurd results." In re Kaiser Aluminum Corp., 456 F.3d 328, 330 (3d Cir. 2006). Here, Gericke's position that Truist simply should not issue a Form 1099-C without actually discharging the debt would lead to absurd results. While this statute could have been drafted more clearly by Congress, the statute gives some sense of repose to debt disputes that otherwise, such as in this case, would persist for decades on end. At oral argument, Counsel for Gericke argued that, instead, Truist should

---

[6] Therefore, even if the Court applied the minority rule here, Truist would still prevail.

be forced to wait the full twenty years before issuing the Form 1099-C, during which time Truist would, Counsel conceded, continue to pursue Gericke over a debt that all parties seem to recognize is unlikely to ever be repaid in full. The definition of discharge, a creature of the Tax Code, as the regulations explain, provides a semblance of repose and finality to such disputes as between debtors and creditors. Gericke's interpretation would lead to an absurd result.

Therefore, this Court agrees with Truist's argument in support of its Motion to Dismiss. As noted above, this decision is in line with the majority of courts in the country. See Cashion, 720 F.3d at 179. The Court appreciates "that these technical rules are [not] easily understood by the common consumer." Walker, 2017 WL 2957933, at *3. But in that respect, Gericke's issue is with Congress. The fact of the matter is that the issuance of a Form 1099-C is not the end of the road in terms of the actual discharge of a debt. Frustrating though that may be, it is clear that Truist was required by law to issue the Form 1099-C in this case. Doing so did not result in the actual discharge of Gericke's debt. Truist made this clear to Gericke in their negotiations after the filing of the Form 1099-C. Therefore, there is no basis to find that Truist committed an "unlawful practice" as required by the CFA or

"violated any clearly established legal right" as required by the TCCWNA. As such, Gericke's claims fail as a matter of law.[7]

**VI. CONCLUSION**

For the reasons expressed above, the Court will grant Truist's Motion to Dismiss. An accompanying Order shall issue.

March 26, 2021
Date

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

[7] Because the Court rests its decision on the above analysis, it is unnecessary to address Truist's remaining arguments.